Paul A. Cardinale, SBN 8394
Melanie B. Chapman SBN 6223
MEDICAL DEFENSE LAW GROUP
3800 Watt Ave., Suite 245
Sacramento, CA 95821
Paul.Cardinale@med-defenselaw.com
Melanie.Chapman@med-defenselaw.com

**Southern Nevada Office:**
2460 Professional Court, Suite 110
Las Vegas, NV 89128
Tel: (702) 342-1914
Attorneys for Defendant WELLPATH LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CHARLES HOFFMAN,<br><br>            Plaintiff,<br>vs.<br><br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; WELLPATH LLC, a Tennessee limited liability company; DOES I through XX, inclusive; DOE OFFICERS I through XX, inclusive,; DOE DOCTORS I through XX, inclusive; DOE NURSES I through XX, inclusive; and ROE BUSINESS ENTITIES I through XX, inclusive;<br><br>            Defendants. | CASE NO.: 2:25-cv-00577-RFB-EJY<br><br><br>**JOINT STATUS REPORT AND STIPULATION AND ORDER DISMISSING WELLPATH LLC AND SUBSTITUTING IN THE WELLPATH LIQUIDATING TRUST** |

All Parties, by and through their counsel of record, stipulate and hereby move this Court to dismiss Wellpath LLC and allow Plaintiff to substitute in the Wellpath Liquidating Trust ("Trust") as a nominal defendant in this matter. Good cause exists to grant the dismissal and substitution:

1.      As to Wellpath, this is a civil rights action arising from Plaintiff's allegations that following physical injuries and emotional distress suffered   during his arrest on or about March

-1-

30, 2023, he was denied medical treatment by Defendant Wellpath LLC while he was an inmate at the Clark County Detention Center.

2.      On November 11, 2024, (the "Petition Date"), Debtors Wellpath Holdings, Inc. and its affiliated companies, including Wellpath LLC ("Wellpath"), each filed petitions in the Bankruptcy Court pursuant to Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Cases"). The Bankruptcy Cases were jointly administered by the United State Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), under case number 24-90533.

3.      On May 1, 2025, the Bankruptcy Court entered *Findings of Fact, Conclusions of Law, and Order (I) Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis* [Case No. 24-90533, ECF No. 2596] (the "Confirmation Order"), which included a Plan of Reorganization (the "Plan"), attached hereto as **Exhibit A**. On May 9, 2025 (the "Effective Date"), the Debtors filed a Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Administrative Claims Bar Date [ECF No. 2680, Case No. 24-90533] giving notice that the Plan was effective.

4.      On June 4, 2025, the Bankruptcy Court issued the *General Form of Order Regarding Lift Stay Motions* [Case No. 24-90533, ECF No. 2907] (the "Stay Order"), attached hereto as **Exhibit B.** The Stay Order was entered for the purpose of providing guidance regarding the impact of the Chapter 11 cases, including the Plan's discharge and injunction. The Stay Order specifically notes that the Plan applies to all cases that "arose prior to the Petition Date (i.e., before November 11, 2024)."

5.      Pursuant to the Plan, all Claims and Causes of Action against the Debtors, including

-2-

STIPULATION AND ORDER DISMISSING WELLPATH LLC  AND
SUBSTITUTING IN THE WELLPATH LIQUIDATING TRUST

Wellpath LLC (the "Debtors")[1] are discharged, and holders of such Claims and Causes of Action are permanently enjoined from, among other things, commencing or continuing any proceeding of any kind, including the instant proceeding, in connection with such claims, or enforcing recovery from the Debtors, the Debtors' estates, or the Post-Restructuring Debtors. See 11 U.S.C. § 524 (a) ("A discharge in a case under this title - … (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . .").

6.    Pursuant to Article IX.A. of the Plan and Paragraph 3 of the Stay Order, all Claims and Causes of Action against the Debtors are discharged as a result of the Plan becoming effective. The Plan states in relevant part:

> the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties

Plan, Article IX.A, p. 72.

7.    Pursuant to Article IX.F of the Plan, holders of Claims and Causes of Action that are discharged or released are permanently enjoined from among other things,

> (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the

---

[1] "Debtors" include Wellpath Holdings, Inc.; Physicians Network Association, Inc.; Alpine CA Behavioral Health HoldCo, LLC; CCS-CMGC Intermediate Holdings 2, Inc.; CCS-CMGC Intermediate Holdings, Inc.; CHC Companies, LLC; Conmed Healthcare Management, LLC; Correct Care Holdings, LLC; Correctional Healthcare Companies, LLC; Correctional Healthcare Holding Company, LLC; HCS Correctional Management, LLC; Healthcare Professionals, LLC; Jessamine Healthcare, LLC; Justice Served Health Holdings, LLC; Missouri JSH Holdco; Missouri JSH Manager, Inc.; Perimeter Hill RPA, LLC; Wellpath CFMG, Inc.; Wellpath Community Care Holdings, LLC; Wellpath Community Care Management, LLC; Wellpath Community Care Centers of Virginia, LLC; Wellpath Education, LLC; Wellpath Group Holdings, LLC; Wellpath Hospital Holding Company, LLC; **Wellpath LLC**; Wellpath Management, Inc.; Wellpath SF Holdco, LLC; WHC, LLC; WPMed, LLC; Zenova Management, LLC; and Zenova Telehealth, LLC.

-3-

property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

Plan, Article IX.F, p. 77 (the "Injunction").

8.      Any attempt by Enjoined Parties to proceed with their Claims or Causes of Action against the Debtors, including Wellpath, violates the Injunction and such Claims or Causes of Action must be dismissed against the Wellpath Defendants pursuant to the Confirmation Order and Stay Order.

9.      A Liquidating Trust has assumed the Debtors' liability for all General Unsecured Claims, including personal injury claims that arose before the Petition Date.  Plan, Articles IV.N., VII; Confirmation Order at 2–3.  The Liquidating Trust is funded solely by assets transferred to it under the Plan, and recoveries on such claims are limited to the Claim Resolution Procedures outlined in the Liquidating Trust's Distribution Procedures, as clarified by the Bankruptcy Court's January 26, 2026 "Clarifying Order." *See,* Trust Distribution Procedures, Exhibit 3 to Liquidating Trust Documents, Docket no. 2679 at pp. 344-374; attached **Exhibit C**.  Enjoined Parties may not seek payment for this liability from the Debtors, the Post-Restructuring Debtors, or the property of either entity beyond this distribution.  *See* Plan, Article IV.N.; Stay Order, ¶ 4.  Holders of Claims against the Debtors are subject to the Trust Distribution Procedures ("TDPs"), including the non-binding alternative dispute resolution process set forth therein to determine, if necessary, the allowed amount for their Claim.  *Id.*

10.    On September 23, 2025, the Wellpath Liquidating Trust ("Trust") filed the *Wellpath Liquidating Trust's Motion for Clarifying Order Enforcing (A) the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates (With Technical Modifications), and (B) the Trust Distribution Procedures* [Docket No. 690]. (the "Motion").

11.    On or about May 5, 2025, Plaintiff filed his First Amended Complaint ("FAC"), wherein Wellpath LLC was named, for the first time, as defendant. [ECF No. 8.] Wellpath was served with the FAC on or about September 9, 2025.

12.    On October 16, 2025, Wellpath filed its Motion to Dismiss Plaintiff's FAC. [ECF No. 25.] The Motion to Dismiss is based upon, among other things, the Plan's discharge of all claims and causes of action against Wellpath and its employees, and the Plan's injunction against the commencement or continuation of any proceedings in connection with such claims as described herein. On November 14, 2025, Plaintiff filed an Opposition to Wellpath's Motion to Dismiss [ECF No. 35] and a Motion for Leave to File a Second Amended Complaint [ECF No. 36].

13.    Based upon pending motions before the Bankruptcy Court, including those motions that resulted in the Clarification Order discussed below, the Parties herein agreed to stay this matter as to Wellpath pending the Bankruptcy Court's determination of the issues before it that were substantially similar to the issues presented by Wellpath's Motion to Dismiss, Plaintiff's Opposition, and Plaintiff's Motion for Leave to Amend. [ECF No. 37.] The Court thereafter issued an Order granting the Parties' Stipulation and ordering the Parties to file a Joint Status Report within thirty (30) days of the entry of an order by the Bankruptcy Court regarding the motions pending therein. [ECF No. 42.]

14.    On January 25, 2026, the Bankruptcy Court issued the *Revised and Amended Clarifying Order Enforcing (A) The First Amended Joint Chapter 11 Plan of Reorganization of*

-5-

*Wellpath Holdings, Inc. And Certain of Its Debtor Affiliates, and (B) The Trust Distribution Procedures.* (the "Clarification Order"), attached hereto as **Exhibit C**.

15.    Pursuant to the Clarification Order, ¶ 2, the Bankruptcy Court clarified that the "Plan does not permit any party to proceed against the Post-Restructuring Debtors or any Debtor, including but not limited to Wellpath LLC, in any capacity, including as a nominal defendant."

16.    Further pursuant to the Clarification Order, the Liquidating Trust is the proper nominal defendant in matters brought by Holders of General Unsecured Claims arising from alleged personal injury tort or wrongful death.

17.    Any attempts by a Holder of General Unsecured Claims to pursue pre-petition claims against any Debtor, including but not limited to Wellpath LLC or to pursue claims against the Trust other than as a nominal defendant are contrary to the Plan and barred by the injunction set for in the Plan and/or the discharge injunction under Bankruptcy Code § 524(a)(2) and the Clarification Order. *See* Plan, Docket No. 2596, Exhibit A, Article IX.F; 11 U.S.C. § 524(a)(2); Exhibit C.

18.    A party that proceeds in violation of the Plan as clarified and enforced by this Order, shall be subject to the jurisdiction of the Bankruptcy Court, and the Trust or the Post-Restructuring Debtors may seek any and all remedies available under the Bankruptcy Code, including but not limited to monetary sanctions. *See* Ex. C, ¶ 5.

19.    The Parties herein agree that, based upon the Clarification Order, dismissal of Wellpath from this action is appropriate.

20.    Therefore, the Parties stipulate that Debtor Defendant Wellpath LLC be dismissed from this action.

21.    Additionally, the Parties stipulate to allow Plaintiff to substitute in the Wellpath Liquidating Trust as a nominal defendant, pursuant to the Clarification Order, for the liquidation of

all claims pending against the Wellpath Defendants through the Trust in the present court or other appropriate forum.

22.    The Parties further stipulate that, pursuant to the terms of this Stipulation, Wellpath's pending Motion to Dismiss shall be granted with prejudice as to Wellpath, but without prejudice to Plaintiff's ability to pursue his claims against the Trust as a nominal defendant.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated:  March 27, 2026                    **MEDICAL DEFENSE LAW GROUP**

                                          */s/ Melanie B. Chapman*

                                          MELANIE B. CHAPMAN, ESQ.
                                          Attorneys for Defendant WELLPATH LLC

Dated: March 27, 2026                     **MUELLER AND ASSOCIATES, INC.**

                                          */s/ Craig A. Mueller*

                                          CRAIG A. MUELLER, ESQ.
                                          Attorneys for Plaintiff

Dated:  March 27, 2026                    **LEWIS BRISBOIS BIGAARD & SMITH LLP**

                                          */s/ E. Matthew Freeman*

                                          E. MATTHEW FREEMAN, ESQ
                                          Attorneys for Defendant LVMPD

-7-

## ORDER

With good cause appearing, **IT IS HEREBY ORDERED** the Parties' foregoing stipulation (ECF No. 51) is **GRANTED**.

**IT IS FURTHER ORDERED** Defendant Wellpath LLC's Motion to Dismiss (ECF No. 25) is **GRANTED**. Wellpath LLC is **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** Wellpath Liquidating Trust is **SUBSTITUED** for Wellpath LLC as a nominal defendant in this action for the purpose of liquidating all claims pending against Wellpath LLC through the Trust.

The Clerk of Court is kindly instructed to update the docket accordingly.

**DATED:** April 1, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

-8-

# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-90533 (ARP) |
| Debtors. | Jointly Administered<br>**Re: Docket Nos. 567, 1832-1, 1835-1,<br>2039, 2498, 2551, 2376-1, 2552-1** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
(I) CONFIRMING THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION OF WELLPATH HOLDINGS, INC.
AND CERTAIN OF ITS DEBTOR AFFILIATES AND
(II) APPROVING THE DISCLOSURE STATEMENT ON A FINAL BASIS**

The Debtors[2] having:

a. commenced the Chapter 11 Cases on the Petition Date by filing voluntary petitions in the Bankruptcy Court for relief under chapter 11 of the Bankruptcy Code;

b. obtained on the Petition Date entry of the *Order (I) Directing Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 27];

c. continued to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

d. Filed the *Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates* [Docket No. 1832-1] on March 17, 2025;

e. Filed the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates* [Docket No. 1835-1] (as amended, modified, or supplemented from time to time in accordance with the terms thereof (including all appendices, exhibits, schedules, and supplements thereto), the "Disclosure Statement") on March 17, 2025;

---

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Claims and Solicitation Agent at https://dm.epiq11.com/Wellpath. The Debtors' service address for the Chapter 11 Cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

[2] Capitalized terms used but not otherwise defined in this order (this "Order") shall have the meanings ascribed to such terms in the Disclosure Statement, the Plan, or the Solicitation Order (each as defined herein), as applicable. The rules of interpretation set forth in Article I.B shall apply hereto. For the avoidance of doubt, unless otherwise specified, all references herein to "Articles" refer to articles of the Plan.

f.  Filed the *Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 567] (the "Solicitation Motion"), dated December 20, 2024;

the Bankruptcy Court having:

a.  entered the *Order (I) Approving the Adequacy of the Disclosure Statement on a Conditional Basis, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 1867] (the "Solicitation Order") on March 18, 2025;

b.  pursuant to the Solicitation Order, conditionally approved the Disclosure Statement and, on a final basis, (i) approved the Solicitation and Voting Procedures, (ii) approved the forms of Ballots, Solicitation Package, and related notices, (iii) authorized the Debtors to solicit votes to accept or reject the Plan in accordance with the Solicitation and Voting Procedures in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the *Procedures for Complex Cases In the Southern District of Texas* (the "Complex Procedures"), and (iv) set the (A) Voting Record Date, (B) deadline to File a Rule 3018 Motion, (C) Voting Deadline, and (D) Plan Objection Deadline; and

c.  set, in accordance with the Solicitation Order, April 30, 2025 at 8:30 a.m. (prevailing Central Time), as the date and time for the commencement of the hearing to consider final approval of the Disclosure Statement and confirmation of the Plan (the "Confirmation Hearing");

the Debtors having:

a.  caused, after entry of the Solicitation Order, the Disclosure Statement, the Plan, the Solicitation Packages, and other related notices to be distributed in accordance with the Solicitation Order and, to the extent applicable, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Procedures, to Holders of Claims and Interests, as described in the Solicitation Affidavits (as defined below);

b.  caused notice of the Confirmation Hearing [Docket No. 1876] (the "Confirmation Hearing Notice") to be published in the in the national editions of (i) *The New York Times*, dated March 26, 2025, as set forth in the *Verification of Publication* Filed by the Claims and Solicitation Agent on March 28, 2025, (ii) *USA Today*, dated March 27, 2025, as set forth in the *Verification of Publication* Filed by the Claims and Solicitation Agent on March 28, 2025 [Docket No. 2013], and (iii) *Prison Legal Notice* in the April 2025 edition, as set forth in the Verification of Publication, dated April 15, 2025 [Docket No. 2258] (the foregoing (i) through (iii), collectively, the "Publication Verifications");

-2-

c. Filed and properly served on each applicable counterparty the *Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* [Docket No. 194], dated November 27, 2024, providing notice of the Cure Costs associated with each contract and lease set forth therein;

d. Filed and properly served on each applicable counterparty the *First Notice of Rejection of Certain Executory Contracts* [Docket No. 2039], dated March 31, 2025, the *Second Notice of Rejection of Certain Executory Contracts* [Docket No. 2189], dated April 10, 2025, the *Third Notice of Rejection of Certain Executory Contracts* [Docket No. 2498], dated April 25, 2025, and the *Fourth Notice of Rejection of Certain Executory Contracts,* dated April 29, 2025 [Docket No. 2551];

e. properly Filed and served the Plan Supplement documents contained in Docket Nos. 2321 and 2555;

f. Filed the *First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates* [Docket No. 2376-1] and the *First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. And Certain of Its Debtor Affiliates (with Technical Modifications)* [Docket No. 2552-1] (as amended, modified, or supplemented from time to time in accordance with the terms thereof (including all appendices, exhibits, schedules, and supplements (including any Plan Supplements) thereto), the "Plan");

g. submitted the (i) *Declaration of Timothy J. Dragelin in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates* [Docket No. 2525] and (ii) *Declaration of Christian Tempke in Support of Confirmation of the First Amended Plan of Reorganization* [Docket No. 2526] (collectively, the "Confirmation Declarations");

h. submitted the *Declaration of Emily Young, on Behalf of Epiq Corporate Restructuring, LLC, Regarding Solicitation and Tabulation of Ballots Cast in Connection with Its First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates* [Docket No. 2497] (the "Voting Report") setting forth, among other things, the voting results with respect to the Plan; and

i. Filed the *Debtors' Reply and Memorandum of Law in Support of Final Approval of the Disclosure Statement and Confirmation of the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates* [Docket No. 2528] (the "Confirmation Brief");

the Committee having filed the *Statement of the Statutory Unsecured Creditors' Committee in Support of the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates* [Docket No. 2334]; and

the Bankruptcy Court having:

a. found that the notice provided regarding the Confirmation Hearing, and the opportunity for any party in interest to object to final approval of the Disclosure Statement and

Confirmation of the Plan, having been adequate and appropriate under the circumstances and no further notice being required;

b.  held the Confirmation Hearing;

c.  considered, and having taken judicial notice of, the entire record of the Chapter 11 Cases (including the First Day Declaration, the Recovery Solutions Sale Declarations,[3] and the NBH Sale Declaration[4]) and the Confirmation Hearing (collectively, the "Record"), including the following:

    i.  all pleadings and other documents Filed, all orders entered, and all evidence, statements, and arguments made, proffered, adduced, or presented at the various hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases (including the Confirmation Hearing);

    ii.  the Disclosure Statement, the Plan (including the Plan Supplement), the Solicitation Motion, and the Solicitation Order;

    iii.  the Voting Report;

---

[3]  "Recovery Solutions Sale Declarations" means, collectively, the (a) *Declaration of Christian Tempke in* Support of *Debtors' Emergency Motion for Entry of Orders (I)(A) Approving the Bidding Procedures for the Sale of the Debtors' Assets, (B) Approving Entry into a Stalking Horse Purchase Agreement for the Recovery Solutions Assets, (C) Authorizing the Recovery Solutions Expense Reimbursement, (D) Authorizing Potential Selection of Stalking Horse Bidders for the Corrections Assets and Approving Related Corrections Asset(s) Bid Protections, (E) Establishing Related Dates and Deadlines, (F) Approving the Form and Manner of Notice Thereof, and (G) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 21-1], (b) *Declaration of Jason Schoenholtz in Support of Debtors' Emergency Motion for Entry of Orders (I)(A) Approving the Bidding Procedures for the Sale of the Debtors' Assets, (B) Approving Entry into a Stalking Horse Purchase Agreement for the Recovery Solutions Assets, (C) Authorizing the Recovery Solutions Expense Reimbursement, (D) Authorizing Potential Selection of Stalking Horse Bidders for the Corrections Assets and Approving Related Corrections Asset(s) Bid Protections, (E) Establishing Related Dates and Deadlines, (F) Approving the Form and Manner of Notice Thereof, and (G) Approving the Assumption and Assignment Procedures, (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 21-2], and (c) *Supplemental Declaration of Jason Schoenholtz in Support of Order (A) Approving the Sale of Certain of the Debtors' Assets and Certain Equity Interests Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, (C) Dismissing the Chapter 11 Cases of the Acquired Recovery Solutions Debtors, and (D) Granting Related Relief* [Docket No. 850].

[4]  "NBH Sale Declaration" means the *Declaration of Katie Liogier Weyback in Support of Debtors' Motion for Entry of an Order (I) Approving the Private Sale of Certain of the Debtors' Assets and Equity Interests Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (III) Dismissing the Chapter 11 Cases of the NBH Sellers, and (IV) Granting Related Relief* [Docket No. 1837-1].

-4-

    iv.    the Publication Verifications and the affidavits of service Filed by the Claims and Solicitation Agent with respect to solicitation [Docket Nos. 1993, 2037, 2121, 2315] (collectively, the "Solicitation Affidavits");

    v.    the objections and other responses submitted, raised, or asserted with respect to the Disclosure Statement or the Plan, as applicable (collectively, the "DS/Confirmation Objections");

    vi.    the statements or reservations of rights submitted, raised, or asserted with respect to the Disclosure Statement or the Plan, as applicable;

    vii.    the Confirmation Declarations; and

    viii.    the Confirmation Brief;

d.    overruled any and all unwithdrawn and unresolved DS/Confirmation Objections, except as otherwise expressly provided herein;

e.    found that the evidence contained in the Record in support of the relief granted herein (i) is reasonable, persuasive, credible, and accurate as of the date each such evidence was proffered, adduced, or presented, (ii) utilizes reasonable and appropriate methodologies and assumptions, (iii) has not been controverted by other evidence in the Record; and

f.    found that the legal and factual bases set forth in the Record establish just cause for the relief granted herein; and

after due deliberation thereon and sufficient cause appearing therefor, and based on the Record and the decision set forth at the Confirmation Hearing,

**IT IS HEREBY FOUND, ORDERED, AND ADJUDGED THAT:**

A.    The findings and conclusions set forth herein and in the Record constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to rule 52 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7052 and 9014. To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such. Any requirement under the Bankruptcy Rules that the Bankruptcy Court state its conclusions of law separate from its findings of fact is hereby waived.

## FINDINGS OF FACT

### Jurisdiction and Venue

B.      The Bankruptcy Court has jurisdiction over the Chapter 11 Cases, approval of the Disclosure Statement on a final basis, and Confirmation of the Plan pursuant to 28 U.S.C. § 1334. Approval of the Disclosure Statement on a final basis and Confirmation of the Plan are each a core proceeding pursuant to 28 U.S.C. § 157(b), and the Bankruptcy Court has jurisdiction to enter a Final Order with respect thereto consistent with Article III of the United States Constitution.

C.      Each of the Debtors was and continues to be an eligible debtor under section 109 of the Bankruptcy Code.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

D.      Venue of the Chapter 11 Cases and related proceedings was proper in the Southern District of Texas as of the Petition Date, and continues to be proper, pursuant to 28 U.S.C. §§ 1408 and 1409.

### The Chapter 11 Cases

E.      On the Petition Date each of the Debtors Filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  By order of the Bankruptcy Court [Docket No. 27], entered on November 12, 2024 in each of the Chapter 11 Cases, the Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015.

F.      The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

G.      On November 25, 2024, the U.S. Trustee appointed the Committee.  *See* Docket No. 169.  No trustee or examiner has been appointed in the Chapter 11 Cases.

**Solicitation Order, Solicitation, and Notice**[5]

H.      Promptly following entry of the Solicitation Order, in compliance therewith and, to the extent applicable, with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Procedures, and as evidenced by the Solicitation Affidavits, the Debtors (including through the Claims and Solicitation Agent) effectuated the timely and proper:

1.  Filing and service of the Confirmation Hearing Notice (which included the Voting Deadline, the Plan Objection Deadline, the date, time, and location of the Confirmation Hearing, the Plan's release, exculpation, and injunction provisions, and various procedures regarding Plan solicitation, objecting to Confirmation of the Plan, and opting out of the Third-Party Release) on the 2002 List as of the Voting Record Date;

2.  service of (a) the Solicitation Packages on each Holder of a Claim in a Voting Class (*i.e.*, Class 3 (First Lien Secured Claims), Class 4 (First Lien Deficiency Claims), Class 5 (Second Lien Deficiency Claims), and Class 6 (General Unsecured Claims)), which included (i) the conditionally-approved Disclosure Statement, (ii) the Solicitation Order (excluding exhibits, other than the Solicitation and Tabulation Procedures), (iii) the Confirmation Hearing Notice, (iv) a Ballot (which included the ability to opt out of the Third-Party Release and pertinent information and instructions), (v) solely with respect to any Holder of a Claim in Class 6 (General Unsecured Claims), a copy of the Committee Letter, and (vi) a pre-addressed, postage prepaid reply envelope and (b) the Non-Voting Status Notices (each of which included an Opt Out Form and pertinent information and instructions) and a Confirmation Hearing Notice on each non-Debtor Holder of a Claim or Interest in a Non-Voting Class (*i.e.*, Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 9 (Existing Parent Interests), and Class 10 (Section 510(b) Claims)); and

3.  publication of the Confirmation Hearing Notice in the national editions of *The New York Times*, dated March 26, 2025, and *USA Today*, dated March 27, 2025, and in the *Prison Legal Notice* in the April 2025 edition.

I.      Pursuant to the Solicitation Order, the Debtors were not required to solicit votes from, or send Non-Voting Status Notices or any other type of notice in connection with the Plan to, the Holders of Claims and Interests in Class 7 (Intercompany Claims) or Class 8 (Intercompany

---

[5]    Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to such terms in the Solicitation Motion or Solicitation Order, as applicable.

Interests), as each such Claim or Interest is held by a Debtor or a Debtor's affiliate and either (1) will receive no distribution under the Plan and is deemed to reject the Plan or (2) will be Unimpaired and is presumed to Accept the Plan. Additionally, Class 10 (Section 510(b) Claims) contained no Claims and was ultimately deemed eliminated by the Debtors in accordance with the Solicitation Order.

J.       As described in the Solicitation Order, and as evidenced by the Solicitation Affidavits, service of the Solicitation Packages was adequate and sufficient under the circumstances of the Chapter 11 Cases, and adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Solicitation Order (1) was timely and properly provided in compliance with the Solicitation Order and, to the extent applicable, with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Procedures and (2) provided due process, including an opportunity to appear and to be heard, to all parties in interest.

K.       Because the foregoing transmittals, notices, and service were adequate and sufficient, no other or further notice or service of the Solicitation Packages or the Confirmation Hearing is or shall be required. All parties have had a fair opportunity to litigate all issues (including those raised by the DS/Confirmation Objections), and the DS/Confirmation Objections have been fully and fairly litigated.

**Voting**

L.       Votes on the Plan were solicited after or together with disclosure of "adequate information," as defined in section 1125 of the Bankruptcy Code. As evidenced by the Solicitation Affidavits and Voting Report, votes on the Plan were solicited and tabulated fairly, in good faith,

-8-

and in a manner consistent with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Procedures.

## Plan Supplement

M.     The contents, Filing, and notice of the Plan Supplement (including the Schedule of Retained Causes of Action and Schedule of Liquidating Trust Causes of Action) (and any subsequent amendments, modifications, and supplements thereto Filed with the Bankruptcy Court) are proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Procedures, the Solicitation Order, and applicable law, and no other or further notice is or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan (including certain consent and approval rights to the extent provided in the Plan), the Debtors may amend, update, supplement, or otherwise modify the Plan Supplement at any time before the Effective Date.  Holders of Claims and Interests were provided due, adequate, and sufficient notice of the Plan Supplement.

## Plan Modifications

N.     Any modifications to the Plan since the commencement of solicitation and prior to the entry of this Order comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Complex Procedures, the Solicitation Order, and Article XI.  Such modifications (1) constitute material improvements of the recoveries to Holders of Claims in Class 6 (General Unsecured Claims), (2) were approved by the Ad Hoc Group and, therefore, accepted by Holders of Claims in Class 3 (First Lien Secured Claims), Class 4 (First Lien Deficiency Claims), and Class 5 (Second Lien Deficiency Claims), and (3) do not adversely affect the treatment of any other Classes of Claims or Interests.  Notice of these modifications by

Filing revised documents on the docket was adequate and appropriate under the facts and circumstances of the Chapter 11 Cases. Pursuant to Bankruptcy Rule 3019, the modifications do not require either (1) any additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code or (2) that the Holders of Claims be afforded an opportunity to (a) change previously cast acceptances or rejections of the Plan or (b) withdraw or submit previously submitted or withheld Opt Out Forms. Accordingly, the Plan is properly before the Bankruptcy Court, and all votes cast with respect to the Plan prior to any such modifications shall be binding and shall apply with respect to the Plan.

### Burden of Proof

O. The Debtors, as proponents of the Plan, have met their burden of proving the satisfaction of the requirements for Confirmation of the Plan set forth in section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard. Further, each witness who testified (by declaration or otherwise) on behalf of the Debtors at the Confirmation Hearing or otherwise in connection with the Plan was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

### Voting Results

P. As more fully set forth in the Voting Report, (1) Class 3 (First Lien Secured Claims) fully and unanimously voted to accept the Plan, (2) Class 5 (Second Lien Deficiency Claims) fully and unanimously voted to accept the Plan, and (3) Class 6 (General Unsecured Claims) voted to reject the Plan in both numerosity and in amount.

### Bankruptcy Rule 3016

Q. The Plan is dated and identifies the Debtors as the entities submitting the Plan, thereby satisfying Bankruptcy Rule 3016(a). The Filing of the Disclosure Statement satisfied

Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions in the Disclosure Statement and Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined by such injunction and identify the Entities that will be subject to such injunction, thereby satisfying Bankruptcy Rule 3016(c).

**Additional Findings Regarding the
Chapter 11 Cases, the Disclosure Statement, and the Plan**

R.      <u>Implementation</u>. All of the terms of the Plan (including any Reinstatement of Intercompany Claims or Intercompany Interests), and all documents and agreements deemed necessary or appropriate to implement the Plan, including any applicable Definitive Document, are essential elements of the Plan and have been negotiated in good faith and at arm's-length, and entry into and consummation of the transactions contemplated by each such Definitive Document is in the best interests of the Debtors, the Estates, and the Holders of Claims and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal, state, or local law. The Debtors have exercised reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The Debtors are authorized, without any further notice to, or action, order, or approval of, the Bankruptcy Court, to finalize, execute, and deliver all agreements, documents, instruments, and certificates relating to the Plan and to perform their obligations under such agreements, documents, instruments, and certificates in accordance with the Plan.

S.      <u>Administrative Consolidation</u>. <u>Article IV.C</u> provides for the administrative consolidation of the Debtors solely for the purposes of voting on the Plan, tabulating the votes to determine which Class or Classes have accepted the Plan, confirming the Plan, and the resulting treatment of all Claims and Interests and Plan Distributions, but shall not constitute a transfer of

-11-

assets or liabilities between Debtors for any other purpose. Therefore, the Plan serves as, and is deemed to be, a motion for entry of an order administratively consolidating Debtors. Based on the Record, (1) no Class of Claims or Interests is disadvantaged by such administrative consolidation of the Debtors and (2) such administrative consolidation of the Debtors is justified, appropriate, and in the best interests of the Debtors, their Estates, creditors, and all other parties in interest.

T.      <u>Takeback Facility</u>.

1. The cashless issuance of the Takeback Facility, as may be amended or modified without further approval from the Bankruptcy Court in accordance with its terms, is an essential element of the Plan, was proposed and negotiated in good faith and at arm's-length, is critical to the success and feasibility of the Plan, and is necessary and appropriate for the Consummation of the Plan.

2. Entry into the Takeback Facility and the Takeback Facility Documents is fair, reasonable, and in the best interests of the Post-Restructuring Debtors, the Debtors, their Estates, and all Holders of Claims.

3. The lenders under the Takeback Facility (the "<u>Takeback Facility Lenders</u>"), and each of their respective agents and Affiliates (together with the Takeback Facility Lenders and the Committee on behalf of the Liquidating Trustee, the "<u>Takeback Facility Parties</u>"), participated in good faith, arm's-length negotiations with respect to the Takeback Facility and the Takeback Facility Documents.

4. The Takeback Facility Parties and their respective Related Parties are entitled to the protections and indemnifications provided for, and to the extent set forth, in the Takeback Facility Documents.

5. The Debtors exercised reasonable business judgment in determining to enter into the Takeback Facility and the Takeback Facility Documents and have provided sufficient and adequate notice thereof.

6. The Takeback Facility Documents (when, and to the extent, entered into) and the obligations thereunder shall be, and are hereby deemed to be, valid, binding, and enforceable against the applicable Post-Restructuring Debtors and Takeback Facility Parties in accordance with their terms.

7. The mortgages, pledges, Liens, and other security interests, and all other consideration granted pursuant to, or in connection with, the Takeback Facility are, or shall be, as the case may be, and are hereby deemed to be, (i) valid, binding, enforceable, and fully and properly perfected and (ii) granted in good faith and for good and valuable consideration, and do not, and hereby are deemed not to,

constitute fraudulent conveyances, fraudulent transfers, or contributions of equity and shall not otherwise be subject to avoidance or recharacterization.

U. New Organizational Documents.

1. The New Organizational Documents, as may be amended or modified without further approval from the Bankruptcy Court in accordance with their terms, are essential elements of the Plan, were proposed and negotiated in good faith and at arm's-length, are critical to the success and feasibility of the Plan, and are necessary and appropriate for the Consummation of the Plan.

2. Entry into the New Organizational Documents is fair, reasonable, and in the best interests of the Post-Restructuring Debtors, the Debtors, their Estates, and all Holders of Claims.

3. The Debtors exercised reasonable business judgment in determining to enter into the New Organizational Documents and have provided sufficient and adequate notice thereof.

V. Injunction, Exculpation, Release, Indemnification, Discharge, Settlement, and Compromise.

1. The Bankruptcy Court has jurisdiction under 28 U.S.C. § 1334, and authority under 28 U.S.C. § 157, to approve the injunctions, exculpations, releases, indemnifications, discharges, settlements, and compromises set forth in the Plan (including those set forth in Article IX). Sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code and Bankruptcy Rule 9019 permit issuance of the injunctions and approval of the exculpations, releases, indemnifications, discharges, settlements, and compromises set forth in the Plan (including Article IX).

2. The Released Parties and Exculpated Parties have played a meaningful role in, and significantly and tangibly contributed to, the Chapter 11 Cases and their resolution, have participated in the Chapter 11 Cases and the Debtors' restructuring in good faith, and have acted in compliance with all provisions of the Bankruptcy Code, including in connection with the negotiation, preparation, and pursuit of Confirmation of the Plan. Specifically, each of the Exculpated Parties owed fiduciary duties to the Debtors and their Estates and fulfilled such fiduciary duties at all times.

3. The Debtors and their management, directors, employees, professionals, attorneys, advisors, and other Related Parties have worked diligently (both before and after the Petition Date) in connection with the Debtors' restructuring efforts, by exploring out-of-court restructuring options, preparing the Chapter 11 Cases, negotiating, formulating, and seeking and obtaining Court approval of the DIP Facility, the sale of the Recovery Solutions Business, the sale of the NBH

-13-

Business, the Disclosure Statement, the Plan (including the Plan Supplement and the applicable Definitive Documents). Furthermore, the non-Debtor Released Parties assisted the Debtors with negotiating and developing the Plan and the transactions and settlements contemplated thereby, agreed to settle disputes and Claims, facilitated the settlement or compromise of disputes and Claims with the Debtors and other major stakeholders, or have agreed to forgo certain rights, make certain concessions, or incur certain obligations (*e.g.*, entry into the Equity Financing) to permit recoveries for the Estates' creditors and other stakeholders set forth in the Plan which might not otherwise have been achievable.

4. Accordingly, and based on the Record before the Bankruptcy Court:

a. each of the injunction, exculpation, release, indemnification, discharge, settlement, and compromise provisions set forth in the Plan (including those set forth in Article IX) are (i) the product of extensive good faith and arm's-length negotiations, (ii) fair, equitable, reasonable, and appropriate under the circumstances, (iii) confers a material benefit on, and is in the best interests of, the Debtors, their Estates, and their creditors, (iv) essential, integral, and non-severable components of the Plan, Consummation, and resolution of the Chapter 11 Cases, (v) appropriately and narrowly tailored, (vi) supported by good and valuable consideration (including the Released Parties' contributions to facilitate the resolution of the Chapter 11 Cases and implementation of the Plan), (vii) granted after due notice and opportunity for hearing, (viii) consistent with the Bankruptcy Code and applicable law (including *Matter of Highland Cap. Mgmt., L.P.*, 48 F.4th 419 (5th Cir. 2022) and *In re Instant Brands Acquisition Holdings Inc.*, No. 23-90716, 2025 WL 685756 (Bankr. S.D. Tex. Mar. 3, 2025)), (ix) intended to promote finality and prevent parties from circumventing or attempting to circumvent the Plan, (x) supported by the Debtors and their key stakeholders, including the Ad Hoc Group, (xi) constitute good faith compromises and settlements of the matters covered thereby, (xii) with respect to the injunction provisions, necessary to preserve and enforce the Plan's discharge, release, and exculpation provisions, and (xiii) are the result of a fair and valid exercise of the Debtors' business judgment; and

b. The Third-Party Release is supported by good and valuable consideration, consensual as to all relevant parties, including all Releasing Parties, and such parties (i) were provided notice of the Chapter 11 Cases, the Plan, the deadline to object to Confirmation of the Plan, and the scheduled Confirmation Hearing, (ii) received the Confirmation Hearing Notice, a Ballot, and/or the Non-Voting Status Notice, and (iii) were properly informed that any Holder of a Claim against or Interest in the Debtors that did not check the "Opt Out" box on the applicable Ballot or Opt Out Form or otherwise objected to the Third-Party Release, returned in advance of the Voting Deadline (or within 60 days after the Confirmation Date for incarcerated individuals), would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the

-14-

Debtors and the Released Parties. Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, the Non-Voting Status Notice, the Confirmation Hearing Notice, and the Opt Out Form.

c. in consideration for the Plan Distributions and other benefits provided under the Plan and as a mechanism to effect a fair distribution of value to the Debtors' constituencies, the provisions of the Plan shall also constitute a good faith compromise and settlement of all Claims, Causes of Action, and controversies incorporated in the Plan; such compromises and settlements are fair, equitable, reasonable, and are in the best interests of the Debtors, their Estates, and the Holders of such Claims.

W. <u>Executory Contracts and Unexpired Leases</u>. The Debtors have exercised sound business judgment in determining whether to assume, assume and assign, or reject, as applicable, each Executory Contract and Unexpired Lease under the Plan (including the Plan Supplement) pursuant to section 365 of the Bankruptcy Code. Except as set forth herein or in a Final Order of the Bankruptcy Court, the Debtors have cured, or provided adequate assurance of future performance (as that term is used in section 365 of the Bankruptcy Code) that the Debtors will cure, defaults (if any) under or relating to each Executory Contract or Unexpired Lease assumed under the Plan.

X. <u>Likelihood of Satisfaction of Conditions Precedent</u>. Each of the conditions precedent to the occurrence of the Effective Date set forth in <u>Article X</u> is reasonably likely to be satisfied or waived in accordance with the provisions of the Plan.

Y. <u>Good Faith</u>. Throughout the Chapter 11 Cases, the Debtors and their Related Parties and the Committee have fulfilled any fiduciary duties or obligations owed to the Estates and protected the interests of all of the Debtors' constituents with an even hand. The Post-Restructuring Debtors, the Debtors, and their Related Parties have acted, and will enter into the documents effectuating the Plan (including the Plan Supplement and applicable Definitive Documents), in good faith and shall be deemed to continue to act in good faith if they (1) proceed

to consummate the Plan, the transactions contemplated thereby, and the Debtors' restructuring pursuant thereto and (2) take the actions authorized or directed by this Order. The Debtors and their Related Parties fairly and reasonably negotiated the transactions contemplated by the Plan in good faith and at arm's-length, and the resulting terms are in the best interests of the Debtors and the Estates.

## CONCLUSIONS OF LAW

### The Plan's Compliance with 11 U.S.C. § 1129(a)(1)

Z.       As further detailed below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

AA.      Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). Article III designates all Claims and Interests (other than Administrative Claims, Professional Fee Claims, DIP Claims, Priority Tax Claims, U.S. Trustee Fees, and Restructuring Expenses and Agent Fees) into 10 Classes. The Claims or Interests in each designated Class have the same or substantially similar rights as the other Claims or Interests in such Class. Valid business, legal, and factual reasons exist for separately classifying the various Classes of Claims and Interests under the Plan. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

BB.      Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan specifies that Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 7 (Intercompany Claims), and Class 8 (Intercompany Interests) are Unimpaired or potentially Unimpaired Classes, as the case may be, under the Plan, within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

CC.      Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan specifies that Class 3 (First Lien Secured Claims), Class 4 (First Lien Deficiency Claims), Class 5

(Second Lien Deficiency Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Interests), Class 8 (Intercompany Interests), Class 9 (Existing Parent Interests), and Class 10 (Section 510(b) Claims) are Impaired or potentially Impaired, as the case may be, under the Plan, within the meaning of section 1124 of the Bankruptcy Code, and specifies the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

DD. No Disparate Treatment (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to less favorable treatment on account of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

EE. Plan Implementation (11 U.S.C. § 1123(a)(5)). The Plan (including Article IV), the Plan Supplement, and this Order provide adequate and proper means for the implementation of the Plan and the transactions contemplated thereby. The Plan, therefore, satisfies section 1123(a)(5) of the Bankruptcy Code.

FF. Charter Provisions (11 U.S.C. § 1123(a)(6)). As set forth in Article IV.I, pursuant to, and only to the extent required by, section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will include a provision prohibiting the issuance of nonvoting equity securities. Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

GG. Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The identities and affiliations of any and all Persons proposed to serve as a director or officer of the Post-Restructuring Debtors, to the extent known and determined, were disclosed at, or before, the Confirmation Hearing in compliance with applicable law. The foregoing is consistent with the

interests of Holders of Claims and Interests and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

HH.     Additional Plan Provisions (11 U.S.C. §§ 1123(b), (d)).     The discretionary provisions of the Plan comply with sections 1123(b) and 1123(d) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.  Accordingly, sections 1123(b) and (d) of the Bankruptcy Code are satisfied.

## The Debtors' Compliance with 11 U.S.C. § 1129(a)(2)

II.     The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

1.  each Debtor is and has been a proper debtor under section 109 of the Bankruptcy Code;

2.  the Debtors complied with all applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court;

3.  the Debtors complied with the applicable provisions of the Solicitation Order and, to the extent applicable, the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Procedures, including sections 1125 and 1126(b) of the Bankruptcy Code, in (a) transmitting the Solicitation Packages, the Non-Voting Status Notices, and related documents and (b) soliciting and tabulating votes with respect to the Plan;

4.  the Debtors and their Related Parties have solicited votes on the Plan and, to the extent that they participate in the issuance or distribution of any securities and interests (including the beneficial interests in the Liquidating Trust, New Preferred Equity, and the New Common Equity) as provided under the Plan, have done so in good faith and in compliance with the applicable provisions of the Bankruptcy Code (including sections 1125(a) and 1125(e) of the Bankruptcy Code) and any applicable non-bankruptcy law, rule, or regulation, including those governing the adequacy of disclosure in connection with such solicitation;

5.  the Debtors (including through the Claims and Solicitation Agent) provided good, sufficient, and timely notice of the Confirmation Hearing to each Holder of a Claim or Interest (regardless of whether such Claim or Interest was in a Voting Class or Non-Voting Class) and to other parties in interest.

**Compliance with, or Inapplicability of, 11 U.S.C. §§ 1129(a)(3)–(16), (b)–(e)**

JJ.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).    The Plan and the settlements memorialized therein are the product of the open, honest, and good faith process through which the Debtors have conducted the Chapter 11 Cases and reflect extensive, good faith, arm's-length negotiations among the Debtors, the Ad Hoc Group, the Committee, and the Debtors' other key economic stakeholders (including the H.I.G. Releasees solely to the extent the H.I.G. Settlement Motion is approved by Final Order).    The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of Holders of Claims and Interests.    In addition to achieving a result consistent with the objectives of the Bankruptcy Code, the Plan allows the Debtors' economic stakeholders to realize the highest possible recoveries under the circumstances.    Consistent with the overriding purpose of the Bankruptcy Code, the Chapter 11 Cases were commenced and the Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates. Accordingly, the Plan is fair, reasonable, and consistent with sections 1122, 1123, and 1129 of the Bankruptcy Code.    Based on the foregoing, as well as the Record, the Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

KK.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).    All payments made or to be made by the Debtors or the Post-Restructuring Debtors, as applicable, for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been authorized by, approved by, or are subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

LL. <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The identities and affiliations of any and all Persons (including any "insiders" (as defined in section 101(31)(b) of the Bankruptcy Code) of the Debtors) proposed to serve as a director or officer of the Post-Restructuring Debtors, to the extent known and determined, were disclosed at, or before, the Confirmation Hearing in compliance with applicable law. Selection of members of the Post-Restructuring Debtors' boards (or similar governing bodies) was, and is, in compliance with the procedures set forth in the New Organizational Documents. The appointment to, or continuance in, such offices and roles of such Persons is consistent with the interests of Holders of Claims against the Debtors and with public policy. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

MM. <u>Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction, and, accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

NN. <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code because each Holder of a Claim or Interest either (1) has voted to accept the Plan, (2) is Unimpaired and deemed to have accepted the Plan, or (3) shall receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtors were to be liquidated under chapter 7 of the Bankruptcy Code on such date. In addition, the Liquidation Analysis attached as <u>Exhibit D</u> to the Disclosure Statement, as well as the other evidence related thereto in the Record, establish that, with respect to each Impaired Class of Claims or Interests, each Holder of an Allowed Claim or Interest in such Class shall receive under the Plan on account of such Allowed Claim or Interest property of a value, as of the Effective Date, that is

-20-

not less than the amount such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.   Accordingly, the Debtors have satisfied the requirements of section 1129(a)(7) of the Bankruptcy Code.

OO.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).   As reflected in the Voting Report, at least one voting Impaired Class of Claims affirmatively voted to accept the Plan.   Each of Class 3 (First Lien Secured Claims), and Class 5 (Second Lien Deficiency Claims) voted unanimously to accept the Plan.   Accordingly, the Debtors have satisfied the requirements of section 1129(a)(8) of the Bankruptcy Code with respect to such Impaired Classes of Claims. Although Class 4 (First Lien Deficiency Claims), Class 6 (General Unsecured Claims), Class 7 (Intercompany Claims), Class 8 (Intercompany Interests), and Class 9 (Existing Parent Interests) are rejecting or are potentially deemed as rejecting Classes for purposes of section 1129(a)(8) of the Bankruptcy Code, the Plan is confirmable pursuant to section 1129(b) of the Bankruptcy Code notwithstanding such rejections.

PP.    Treatment of Administrative Claims, Priority Tax Claims, Other Secured Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).   The treatment of Administrative Claims, Priority Tax Claims, Other Secured Claims, and Other Priority Claims under Articles II and III satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.   Except as otherwise provided herein or in the Plan, Holders of outstanding Administrative Claims and Priority Tax Claims that failed to object to the treatment of such Claims by the Plan Objection Deadline are deemed to have consented to such treatment.

QQ.    Acceptance by Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).   Class 3 (First Lien Secured Claims), and Class 5 (Second Lien Deficiency Claims, each of which is Impaired

-21-

under the Plan, have voted to accept the Plan, determined without including any vote to accept the Plan by any insider, thereby satisfying section 1129(a)(10) of the Bankruptcy Code.

RR.     Feasibility (11 U.S.C. § 1129(a)(11)).  All Allowed Claims shall be paid or otherwise satisfied in full in accordance with the terms of the Plan and the applicable Definitive Documents.  The Financial Projections attached as Exhibit E to the Disclosure Statement, as well as the other evidence related thereto in the Record, are not controverted by any evidence, establish that (1) the Plan is feasible, (2) the Post-Restructuring Debtors shall have sufficient liquidity to meet their financial obligations under the Plan and in the ordinary course of their businesses, and (3) Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Post-Restructuring Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

SS.     Payment of Fees (11 U.S.C. § 1129(a)(12)).  Article XIII.C provides that, on and after the Effective Date, the Post-Restructuring Debtors  and Liquidating Trust shall file all quarterly reports and pay all fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing or as agreed by the U.S. Trustee, for each quarter (including any fraction thereof) until the earlier of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The Liquidating Trust Assets disbursed to the Liquidating Trust will not be included in the calculation of the statutory fees payable to the U.S. Trustee by the Debtors and the Post-Restructuring Debtors for the quarter in which such disbursement occurs.

TT.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Article IV.G provides that all of the Debtors' retirement programs (among other employee-related obligations) shall be deemed assumed on the Effective Date.  On and after the Effective Date, the Post-Restructuring

Debtors will continue to abide by such programs and continue to honor the obligations in connection with retiree benefits (as defined in section 1114 of the Bankruptcy Code) thereunder, thereby satisfying section 1129(a)(13) of the Bankruptcy Code.

UU.     Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).   The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation and, accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable.

VV.     Plan of an Individual Debtor (11 U.S.C. § 1129(a)(15)).   None of the Debtors are individuals and, accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable.

WW.     Transfers in Accordance with Non-Bankruptcy Law (11 U.S.C. § 1129(a)(16)). None of the Debtors are nonprofit entities and, accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable.

XX.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).   Although Class 6 (General Unsecured Claims) voted to reject the Plan, Class 4 (First Lien Deficiency Claims) and Class 9 (Existing Parent Interests)—and, if applicable, Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests)—are deemed to reject the Plan for purposes of section 1129(a)(8) of the Bankruptcy Code, the Plan is confirmable pursuant to section 1129(b) of the Bankruptcy Code notwithstanding such rejection because, based upon the Record before the Bankruptcy Court and the treatment provided on account of such Claims and Interests, (1) the Plan does not discriminate unfairly against, and is fair and equitable with respect to, such Classes of Claims and Interests and (2) the Plan satisfies all the requirements for Confirmation set forth in section 1129(a) of the Bankruptcy Code, except for section 1129(a)(8) of the Bankruptcy Code. The evidence in the Record in support of Confirmation of the Plan regarding the Debtors' classification and treatment of Claims and Interests and the requirements for Confirmation of the

-23-

Plan under section 1129(b) of the Bankruptcy Code (1) is reasonable, persuasive, credible, and accurate, (2) utilizes reasonable and appropriate methodologies and assumptions, and (3) has not been controverted by other credible evidence.

YY.    Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan that has been Filed in the Chapter 11 Cases and meets the requirements of sections 1129(a) and (b) of the Bankruptcy Code, thereby satisfying the requirements of section 1129(c) of the Bankruptcy Code.

ZZ.    Principal Purpose of Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

AAA.  Not Small Business Cases (11 U.S.C. § 1129(e)).  The Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

BBB.  Satisfaction of Confirmation Requirements.  Based upon the foregoing ¶¶ AA–AAA and the Record, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**Additional Conclusions Regarding the
Chapter 11 Cases, the Disclosure Statement, and the Plan**

CCC.  Exemption from Securities Law.  Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Common Equity (other than the New Class A Common Equity offered in the Equity Financing, the Commitment Premium, and Backstop Premium) on account of the Allowed First Lien Secured Claims and to the Liquidating Trust on account of the Second Lien Deficiency Claims and the General Unsecured Claims, in each case in accordance with the terms of the Plan, shall be exempt from the registration and prospectus delivery requirements of the Securities Act and any other applicable federal, state, or local law requiring registration and/or delivery of prospectuses prior to the offering, issuance, distribution,

and sale of a security.  In addition, pursuant to section 4(a)(2) of the Securities Act, the offering, issuance, and distribution of Equity Financing Securities is exempt from the registration and prospectus delivery requirements of the Securities Act and any applicable federal, state, or local law requiring registration and/or delivery of prospectuses prior to the offering, issuance, distribution, and sale of a security.  Such Equity Financing Securities issued under section 4(a)(2) of the Securities Act will be considered "restricted securities," will bear customary legends and transfer restrictions, and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act.

DDD.  <u>Retention of Jurisdiction</u>.  The Bankruptcy Court may properly retain jurisdiction or exclusive jurisdiction, as applicable, over any matter arising under the Bankruptcy Code, or arising in, or related to, the Chapter 11 Cases, the Plan, any other matter or proceeding that is within the Bankruptcy Court's jurisdiction pursuant to 28 U.S.C. § 1334, and any other matter set forth in <u>Article XII</u>.

EEE.  <u>Notice of Confirmation Date</u>.  Service by the Debtors or the Post-Restructuring Debtors (including through the Claims and Solicitation Agent), as applicable, of the notice of Confirmation (the "<u>Notice of Confirmation</u>") in the manner set forth in <u>Article XIII.B</u> shall constitute good and sufficient notice pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c).

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.  <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

2.  <u>Confirmation</u>.  All requirements for the Confirmation of the Plan have been satisfied.  Accordingly, the Plan, in its entirety, is CONFIRMED pursuant to section 1129 of the Bankruptcy Code.  Each of the terms and conditions of the Plan (including the Plan Supplement)

and the applicable Definitive Documents (and any amendments, modifications, and supplements thereto), are integral parts of the Plan. The failure to specifically describe or include any particular provision of the Plan (including the Plan Supplement) or any applicable Definitive Document, each of which is incorporated by reference herein, in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan (including the Plan Supplement) and each applicable Definitive Document be approved and confirmed in their entirety. Subject to the terms of the Plan (including certain consent and approval rights to the extent provided in the Plan), the Debtors may amend, update, supplement, or otherwise modify the applicable Definitive Documents prior to the Effective Date. The Plan complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Procedures. A copy of the confirmed Plan (excluding the Plan Supplement) is attached hereto as **Exhibit A**. Once finalized and executed, the Plan Supplement and applicable Definitive Documents shall, as applicable, constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and the terms of the Plan and this Order.

3. _Objections_. All DS/Confirmation Objections, responses, statements, reservation of rights, and comments in opposition to the approval of the Disclosure Statement or Confirmation of the Plan, other than those withdrawn with prejudice in their entirety, waived, settled, or resolved prior to the Confirmation Hearing, or otherwise resolved on the Record of the Confirmation Hearing or herein, are hereby overruled and denied on the merits with prejudice. All objections to entry of this Order or to the relief granted herein that were not timely filed and served prior to the Objection Deadline are deemed waived and forever barred. All withdrawn objections are deemed withdrawn with prejudice. The record of the Confirmation Hearing is hereby closed.

4. Final Approval of the Disclosure Statement. The Disclosure Statement is hereby approved on a final basis as having adequate information as defined in section 1125(a)(1) of the Bankruptcy Code. The Disclosure Statement and the Confirmation Hearing Notice provided all parties set forth on the 2002 List (including Holders of Claims and Interests) with sufficient notice of the injunction, exculpation, and release provisions contained in Article IX, in satisfaction of the requirements of the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and Complex Procedures.

5. Effectiveness of All Actions. Except as set forth in the Plan or this Order, all actions authorized to be taken pursuant hereto or to the Plan shall be effective on, prior to, or after the Effective Date pursuant to the Plan and this Order, as applicable, without further notice to, or action, order, or approval of, the Bankruptcy Court or further action by the Debtors, the Post-Restructuring Debtors, or their Related Parties and with the effect that such actions had been taken by unanimous action of such Related Parties.

6. Compromise of Controversies. Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, in consideration for the Plan Distributions and other benefits provided under the Plan, and as a mechanism to effect a fair distribution of value to the Debtors' constituencies, the provisions of the Plan shall also constitute a good faith compromise and settlement of those Claims, Causes of Action, and controversies incorporated in the Plan and are hereby approved. The entry of this Order constitutes the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements, are (a) in the best interest of the Debtors, their Estates, and other parties in interest and (b) fair, equitable, and reasonable. Subject to Article VI, all Plan Distributions made to Holders of Allowed Claims are intended to

be and shall be final. The Debtors may also, with the prior written consent of the Committee and the Ad Hoc Group in connection with those Claims and Causes of Action that will constitute Liquidating Trust Causes of Action on the Effective Date, in their reasonable business judgment without any further notice or action, order, or approval of the Bankruptcy Court, compromise and settle any claims and Causes of Action they may hold or be able to assert against other Entities and, upon Consummation, such right shall pass to the Post-Restructuring Debtors, the Liquidating Trust, and the Liquidating Trustee, as applicable.

7. <u>Administrative Consolidation</u>. Pursuant to <u>Article IV.C,</u> and based on the Record, the terms of the Debtors' proposed administrative consolidation are approved. Specifically, the administrative consolidation of the Debtors solely for the purposes of voting on the Plan, tabulating the votes to determine which Class or Classes have accepted the Plan, confirming the Plan, and the resulting treatment of all Claims and Interests and Plan Distributions is approved.

8. <u>Preservation of Causes of Action</u>.

   a. In accordance with section 1123(b) of the Bankruptcy Code, but subject to <u>Article IX</u> or pursuant to a Final Order (including the Financing Order), each Post-Restructuring Debtor, as applicable, shall retain and may enforce all rights to commence, pursue, or settle as appropriate, any and all Retained Causes of Action.

   b. The Post-Restructuring Debtors may pursue the Retained Causes of Action, as appropriate, in accordance with the best interests of the Post-Restructuring Debtors. **No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Post-Restructuring Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. Except as specifically released or as assigned or transferred under the Plan or pursuant to a Final Order (including the Financing Order), the Debtors and the Post-Restructuring Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including <u>Article IX</u> or pursuant to a Final Order (including the Financing Order).** Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order (including the Financing Order), the Post-Restructuring Debtors expressly reserve all Retained Causes of Action, for later adjudication, and,

therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

c. The Post-Restructuring Debtors reserve and shall retain the Retained Causes of Action of the Debtors notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The Post-Restructuring Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Retained Cause of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

9. Preservation of Liquidating Trust Causes of Action.

a. In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX, any applicable Final Order (including the Financing Order), the Liquidating Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Liquidating Trust Causes of Action, whether arising before or after the Petition Date, including any actions identified on the Schedule of Liquidating Trust Causes of Action, and the Liquidating Trust's rights to commence, prosecute, or settle such Liquidating Trust Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than pursuant to a Final Order (including the Financing Order), which, in each case, shall be deemed released and waived by the Debtors, the Liquidating Trust, and the Post-Restructuring Debtors as of the Effective Date. Notwithstanding anything to the contrary in Article IX, the Debtors, the Post-Restructuring Debtors, Reorganized Wellpath, and their Estates shall not release the Liquidating Trust Causes of Action.

b. The Liquidating Trust may pursue the Liquidating Trust Causes of Action, as appropriate, in accordance with the best interests of the Liquidating Trust. **No Entity (other than the Persons or Entities provided releases by the Debtors under the Plan) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Liquidating Trust Cause of Action against it as any indication that the Liquidating Trust will not pursue any and all available Liquidating Trust Causes of Action of the Debtors against it. Except as specifically released under the Plan or pursuant to a Final Order (including the Financing Order), the Liquidating Trust expressly reserves all rights to prosecute any and all Liquidating Trust Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article IX, the Liquidating Trust Agreement, or pursuant to a Final Order (including the Financing Order).** Unless any Liquidating Trust Cause of Action held against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order (including the Financing

-29-

Order), the Liquidating Trust expressly reserves all Liquidating Trust Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Liquidating Trust Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

c.  The Liquidating Trust reserves and shall retain such Liquidating Trust Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order (including the Financing Order), any Liquidating Trust Cause of Action held against any Entity shall vest in the Liquidating Trust, except as otherwise expressly provided in the Plan, including Article IX.  The Liquidating Trust, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Liquidating Trust Causes of Action.  The Liquidating Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Liquidating Trust Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

d.  To the extent that it is ambiguous whether a Cause of Action that has not been released by the Debtors under the Plan is a Liquidating Trust Cause of Action or Retained Cause of Action, the parties shall engage in good faith negotiations to determine whether such action constitutes a Liquidating Trust Cause of Action.  If the parties cannot consensually resolve such dispute, the Liquidating Trust may seek a determination from the Bankruptcy Court as to whether such Cause of Action is a Liquidating Trust Cause of Action.

10.    General Authorizations; Restructuring Transactions.  All of the transactions contemplated by the Plan or in furtherance of Consummation are hereby approved.  Upon entry of this Order, pursuant to section 1142 of the Bankruptcy Code, section 303 of the Delaware General Corporation Law, and any comparable provisions in any applicable jurisdiction, the Debtors, the Post-Restructuring Debtors, the Liquidating Trustee, the Liquidating Trust, the Ad Hoc Group, the Takeback Facility Parties, the DIP Agent, each Prepetition Agent, any party to an applicable Definitive Document (including those included in the Plan Supplement), any other necessary parties, and their respective Related Parties are authorized to take all actions, and enter into and

perform under all agreements and transactions, as may be deemed necessary or appropriate to implement the Plan and the applicable Definitive Documents (including those included in the Plan Supplement) and comply with the terms and conditions thereof and this Order, including the following:

a. the continued existence of and vesting of Assets (including the Retained Causes of Action), in the Post-Restructuring Debtors (Articles IV.H, K);

b. the issuance and sale of the New Common Equity (Articles IV.D, E) and the reservation thereof in accordance with the Management Incentive Plan (Article IV.F);

c. the issuance and sale of the Equity Financing Securities (Articles IV.D, E);

d. the entry into the Takeback Facility and the Takeback Facility Documents and the incurrence of Liens in connection therewith (Article IV.B, D);

e. the establishment of the Post-Restructuring Debtors' boards of directors or managers (or similar governing entities) (Article IV.J);

f. the entry into and implementation of the New Organizational Documents (Article IV.I);

g. the creation of the Liquidating Trust (including entry into the Liquidating Trust Agreement) (Articles IV.N and VII.A and B), the appointment of the Liquidating Trustee (Articles IV.N.3 and VII.A and B), and the vesting of the Liquidating Trust Assets in the Liquidating Trust (Articles IV.N.1 and VII.A);

h. the cancellation of instruments, certificates, and other documents (Article IV.P);

i. the making of Plan Distributions (Article VI);

j. the payment of Cure Costs (Article V.C); and

k. the release of liens (Article IX.B).

11. Takeback Facility. The Takeback Facility Documents and the transactions contemplated thereby, all actions taken, to be taken, undertakings to be made, obligations to be incurred by the Post-Restructuring Debtors in connection therewith (including the payment of all fees, damages indemnities, and expenses provided for therein), and the grant of all guarantees, Liens, and other security interests contemplated thereby are approved. The Debtors or the Post-

Restructuring Debtors, as applicable, are authorized to enter into and execute the Takeback Facility Credit Agreement and such other documents, instruments, and certificates relating thereto as the agents and lenders thereunder may reasonably require, subject to such modifications as the Debtors or the Post-Restructuring Debtors, as applicable, may deem to be reasonably necessary to consummate the Takeback Facility without the need for any further corporate, limited liability company, or other similar action.

12.     <u>Transfers by the Debtors</u>.  All transfers of property of the Estates, including the transfers of the Liquidating Trust Assets to the Liquidating Trust, shall be free and clear of all Liens, Claims, charges, interests, and other encumbrances, in accordance with applicable law, except as expressly provided herein or in the Plan (including Liens granted to secure the obligations under the Takeback Facility Documents).

13.     <u>Liquidating Trustee</u>.  Subject to occurrence of the Effective Date, the Liquidating Trustee is authorized to carry out all rights and duties set forth in and consistent with the Plan (including the Liquidating Trust Agreement) and this Order.  On the Effective Date, the Liquidating Trustee (or its designee) shall be appointed to serve as the Distribution Agent solely with respect to the beneficial interests of the Liquidating Trust and all such interests shall be registered in the name of such Distribution Agent, for the benefit of the Holders of Second Lien Deficiency Claims in Class 5 and General Unsecured Claims in Class 6, to the extent that such General Unsecured Claims in Class 6 are Allowed or become Allowed after the Effective Date. From and after the Effective Date and continuing through the date of entry of a final decree, the Liquidating Trustee shall (a) possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Cases and, in connection therewith, shall (i) have the right to appear and be heard on matters brought

before the Bankruptcy Court or other courts, (ii) be entitled to notice and opportunity for hearing on all such issues, (iii) participate in all matters brought before the Bankruptcy Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Bankruptcy Court and (b) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate and compensate such personnel and professionals as it deems appropriate in accordance with the Plan, all without prior notice to or approval of the Bankruptcy Court. Professionals and personnel retained or employed by the Liquidating Trust or the Liquidating Trustee need not be disinterested as that term is defined in the Bankruptcy Code, and may include professionals who had been employed by the Committee or the Debtors. The powers of the Liquidating Trustee shall include any and all powers and authority necessary or helpful to implement and carry out the provisions of the Plan and any applicable orders of the Bankruptcy Court relating to the Liquidating Trust Assets. The Liquidating Trustee shall be the representative of the Debtors' Estates with respect to the Liquidating Trust Assets appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. Without limiting the foregoing, the Liquidating Trustee shall (t) hold, liquidate, invest, supervise, and protect the Liquidating Trust Assets, (u) effectuate the distributions contemplated by the Liquidating Trustee under the Plan, (v) investigate, prosecute, resolve, liquidate, or otherwise monetize the Liquidating Trust Causes of Action, as appropriate, (w) pay all reasonable fees, expenses, debts, charges, and liabilities of the Liquidating Trust, (x) file tax returns for, pay taxes of (if any), and represent the interests of the Liquidating Trust before any taxing authority in all matters, including any action, suit, proceeding, or audit, (y) take any action necessary to administer the Liquidating Trust, and (z) file appropriate certificates of dissolution of the Liquidating Trust, if any, pursuant to applicable state or provincial law.

14. <u>Executory Contracts and Unexpired Leases</u>. Pursuant to section 365 of the Bankruptcy Code, all assumptions, assumptions and assignments, and rejections of Executory Contracts and Unexpired Leases provided for under the Plan are hereby approved, shall vest in and be fully enforceable by the applicable Post-Restructuring Debtor (as applicable), and shall take effect on the date(s) set forth in the Plan in accordance with its terms (including <u>Article V</u>) without the need for any further notice to or action, order, or approval of the Bankruptcy Court. The rejection of those Executory Contracts and Unexpired Leases listed on the Rejected Executory Contracts and Unexpired Leases Schedule shall be deemed effective as of the "Rejection Effective Date" listed therein.

15. <u>Section 1146 Exemption</u>. To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, any transfers (whether from a Debtor to a Post-Restructuring Debtor, the Liquidating Trust, or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Liquidating Trust, Debtors or the Post-Restructuring Debtors including issuance of the New Class B Common Equity to the Liquidating Trust; (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales

or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the imposition or collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

16. <u>Cancellation of Existing Securities and Agreements</u>. Pursuant and subject to <u>Article IV.P</u>, on the Effective Date, except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise provided in the Plan and this Order, all notes, instruments, certificates, credit agreements, indentures, Securities and other documents evidencing or governing Claims or Interests (other than those Claims or Interests Reinstated under the Plan) shall be cancelled and the rights of the Holders thereof and obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to the Plan or this Order. Nothing contained herein shall be deemed to cancel, terminate, release or discharge the obligations of the Debtors or any of their counterparts under

any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to a Final Order or hereunder.  Notwithstanding the releases set forth in Article IX.D, Confirmation or the occurrence of the Effective Date, any such agreement that governs the rights, claims, or remedies of the Holder of a Claim or Interest shall continue in effect solely for purposes of (a) enabling Holders of Allowed Claims to receive Plan Distributions as provided herein and subject to the terms and conditions of the applicable governing document or instrument as set forth therein, (b) allowing and preserving the rights of each of the applicable agents to (i) make or direct the Plan Distributions as provided herein and (ii) assert or maintain any rights for indemnification or contribution the applicable agent may have against the Debtors or the applicable Lenders solely to the extent arising under, and due pursuant to the terms of, the applicable governing document or instrument, (c) preserving the Prepetition Agents' exercise of their rights, claims, causes of action, and interests as against any money or property distributable to the holders of Allowed Claims, (d) permitting the Prepetition Agents to enforce any obligation (if any) owed to them under the Plan, (e) permitting the Prepetition Agents to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court relating to the Prepetition Debt Documents in furtherance of the foregoing, and (f) permitting the Prepetition Agents to perform any functions that are necessary to effectuate the foregoing.

17.     Release of Liens.  Except as otherwise provided in the Plan, this Order, or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions or other treatment made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with the Plan, all mortgages, deeds of trust, Liens,

pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Restructuring Debtors and their successors and assigns, in each case without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Post-Restructuring Debtors. Any Holder of such Secured Claim (and the applicable agents for such Holder (including the First Lien Agent or Second Lien Agent)) shall be authorized and directed, at the sole cost and expense of the Post-Restructuring Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder (including the First Lien Agent or Second Lien Agent)), and to take such actions as may be reasonably requested by the Post-Restructuring Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of this Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens. To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Post-Restructuring Debtors, at the sole cost and expense of the Post-Restructuring Debtors, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and

the Post-Restructuring Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

18.     Plan Classification.  The categories listed in Article III classify Claims against, and Interests in, each of the Debtors, pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code, for all purposes, including voting, Confirmation of the Plan, and distributions pursuant to the Plan, and shall be controlling.  The Bankruptcy Court hereby holds that (a) the classifications of Claims and Interests under the Plan (i) are fair, reasonable, and appropriate and (ii) were not done for any improper purpose, (b) valid business, legal, and factual reasons exist for separately classifying the various Classes of Claims and Interests under, and as in fact so classified in, the Plan, and (c) the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.

19.     No Successors in Interest.  Except as to obligations expressly assumed pursuant to the Plan, neither the Post-Restructuring Debtors nor the Liquidating Trust shall be deemed to be successor to any of the Debtors and neither shall assume, nor be deemed to assume, or in any way be responsible for, any successor liability, products liability, or similar liability with respect to the Debtors or the Debtors' operations that are not expressly assumed or Reinstated in connection with, or expressly provided by, the Plan or this Order.

20.     Administrative Claims Bar Date.

a.  Except as otherwise provided in Article II.A, and except with respect to Administrative Claims that are Professional Fee Claims, Restructuring Expenses, or Agent Fees, requests for payment of Administrative Claims must be Filed with the Bankruptcy Court and served on the Debtors no later than the Administrative Claims Bar Date.

b.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Liquidating Trustee, as applicable, or their respective property and such Administrative Claims shall be deemed discharged as of

the Effective Date without the need for any objection from the Liquidating Trustee, Debtors, or Post-Restructuring Debtors or any notice to or action, order or approval of the Bankruptcy Court or any other Entity.

c. Objections to such requests, if any, must be Filed with the Bankruptcy Court and served on the Debtors and the requesting party no later than 60 days after the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

21. <u>Professional Fee Claims</u>. Except to the extent that an Allowed Professional Fee Claim has already been paid during the Chapter 11 Cases or except to the extent that a Holder of an Allowed Professional Fee Claim agrees to a less favorable treatment with the Debtors or the Post-Restructuring Debtors, as applicable, each Holder of a Professional Fee Claim shall be paid in full in Cash pursuant to the provisions of <u>Article II.C.1</u>.

22. <u>Post-Effective Date Fees and Expenses</u>. Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors and, to the extent applicable, the Committee. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

23. <u>Professional Fee Amount</u>. All Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors or Committee, as applicable, before and as of the Effective Date, and shall deliver such estimate to the Debtors as soon as reasonably practicable before the anticipated Effective Date, but

in no event later than five days before the Effective Date; *provided*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors or the Post-Restructuring Debtors, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional.

24. <u>Professional Fee Escrow Account</u>. On the Effective Date, the Post-Restructuring Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount, which shall be funded by the Post-Restructuring Debtors using Cash on hand. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Post-Restructuring Debtors. The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Post-Restructuring Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. When such Allowed Professional Fee Claims have been paid in full, any remaining amount held in the Professional Fee Escrow Account shall promptly be paid to the Post-Restructuring Debtors without any further action or order of the Bankruptcy Court.

25. On the Effective Date, the Debtors or the Post-Restructuring Debtors shall pay in full in Cash any outstanding Restructuring Expenses and Agent Fees without the requirement for (a) the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases or (b) further notice or Bankruptcy Court review or approval.

26. <u>Term of Injunctions or Stays</u>. Unless otherwise provided in this Order or the Plan, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date

(excluding any injunctions or stays contained in the Plan) shall remain in full force and effect until the later of (a) the Effective Date or (b) the date indicated in the order providing for such injunction or stay. All injunctions or stays contained in the Plan shall remain in full force and effect in accordance with their terms.

27. <u>Utility Deposits</u>. To the extent they have not already done so, all utilities or other Entities that received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases, whether pursuant to the Bankruptcy Court's *Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services, (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (IV) Granting Related Relief* [Docket No. 66] (the "<u>Utility Order</u>") or otherwise, are directed to return such deposits to the Post-Restructuring Debtors, either by setoff against post-petition indebtedness or by Cash refund, no later than 30 days after the Effective Date. Further, on or as reasonably practicable after the Effective Date, the Post-Restructuring Debtors (a) are authorized to withdraw the funds held in the Utility Deposit Account pursuant to the Utility Order and (b) shall have no further obligations to comply with the Utility Order.

28. <u>Reporting</u>. Prior to the Effective Date, the Debtors shall continue to file monthly operating reports for any periods prior to the Effective Date. Following the Effective Date, the Post-Restructuring Debtors shall File quarterly operating reports for each open Chapter 11 Case for each quarter (including any fraction thereof) until the first to occur of the Chapter 11 Cases being converted, dismissed, or closed.

29. <u>Dissolution of Committee</u>. On the Effective Date, and absent appeal of this Order or the H.I.G. Settlement Order, the Committee shall be dissolved in accordance with

Article XIII.D, subject in all cases to the rights set forth therein, and the engagement of each Professional retained by the Committee shall be terminated except with respect to respect to (a) final fee applications of the Professionals asserting Professional Fee Claims, including any appeals in connection therewith, or (b) for purposes of participating in any appeals of this Order or the H.I.G. Settlement Order as set forth in and in accordance with Article XIII.D.

30.     Caption for Chapter 11 Cases.  Notwithstanding any prior order entered in the Chapter 11 Cases to the contrary (*e.g.*, Docket No. 27), on or after the Confirmation Date, the Post-Restructuring Debtors or the Debtors, as applicable, are authorized, without further order of the Bankruptcy Court, to revise the consolidated case caption of the Chapter 11 Cases, thereby reflecting changes to any of the Post-Restructuring Debtors' or the Debtors', as applicable, legal names, by Filing a notice of such change with the Bankruptcy Court.  Upon the Filing of such notice of caption change, the Post-Restructuring Debtors or the Debtors, as applicable, and all other parties are directed to use such updated case caption in all further pleadings and other papers Filed in the jointly-administered Chapter 11 Cases and any adversary proceeding commenced thereunder.

31.     Challenge Period.  The Committee's Challenge Period under the Financing Orders, as extended pursuant to the *Stipulation and Agreed Order Between the Debtors, the Statutory Unsecured Claimholders' Committee, the Prepetition Agents, and the Requisite Prepetition Lenders Extending the Challenge Period* [Docket No. 1514], the *Stipulation and Agreed Order Between the Debtors, the Statutory Unsecured Claimholders' Committee, the Prepetition Agents, and the Requisite Prepetition Lenders Further Extending the Challenge Period* [Docket No. 2026], and the *Stipulation and Agreed Order Between the Debtors, the Statutory Unsecured Claimholders' Committee, the Prepetition Agents, and the Requisite Prepetition Lenders Further*

*Extending the Challenge Period* [Docket No. 2237], terminated on April 22, 2025 in accordance with the Global Settlement Term Sheet; *provided,* that, if the Plan is amended in a material and adverse manner to Class 6 (General Unsecured Claims) or the Effective Date does not occur within 60 days after entry of this Order, then the Challenge Period shall reopen, solely with respect to the Committee, such that the Committee shall have 30 days from the earlier of (a) amendment of the Plan in a material and adverse manner to Class 6 (General Unsecured Claims) or (b) the 60th day after entry of this Order, if the Effective Date has not occurred.

32.     <u>Texas Comptroller of Public Accounts and Texas Workforce Commission</u>.

    a.  Notwithstanding any term in the Plan or this Order to the contrary, (i) the Texas Comptroller of Public Accounts' (the "<u>Texas Comptroller</u>") and the Texas Workforce Commission's ("<u>TWC</u>") setoff rights shall be preserved under section 553 of the Bankruptcy Code, (ii) pursuant to section 503(b)(1)(D) of the Bankruptcy Code, neither the Texas Comptroller nor the TWC shall be required to File a request for payment of any post-petition amounts, as those amounts shall be paid timely under and in accordance with applicable state law, (iii) the Texas Comptroller and the TWC shall be deemed to have opted out of the Plan's Third-Party Release and shall not be considered a Releasing Party under the Plan, and (iv) the Chapter 11 Cases shall have no effect on the Texas Comptroller's or the TWC's rights, if any, to collect taxes against any non-Debtor third parties.

    b.  The Claims of the Texas Comptroller and the TWC shall be reconciled by the Post-Restructuring Debtors as soon as reasonably practicable following the Effective Date. Once any Claim by either the Texas Comptroller or the TWC becomes an Allowed Claim under the Plan, the Post-Restructuring Debtors shall pay such Allowed Claim as a Priority Tax Claim within ten days of becoming an Allowed Claim, with interest at the rate of 8.5% accruing from the Effective Date.

    c.  To the extent that a Disputed Claim of the Texas Comptroller or the TWC becomes an Allowed Claim, and the Allowed Claim is not paid in full within ten days of becoming an Allowed Claim, the Allowed Claim shall be paid with interest at the rate of 8.5% accruing from the Effective Date. In the event that the parties cannot resolve any dispute of the amount of such Allowed Claim, the Bankruptcy Court retains jurisdiction to adjudicate the dispute.

    d.  Should a Debtor or Post-Restructuring Debtor, as applicable, default on a payment to the Texas Comptroller or the TWC under the terms of the Plan or this Order, the Texas Comptroller or the TWC, as applicable, shall provide the Debtors or Post-Restructuring Debtors (and counsel of record) with written notice of default in accordance with <u>Article XIII.G</u>. The Debtors or Post-Restructuring Debtors, as

applicable, shall have fourteen (14) calendar days from the date of the notice of default to cure the default, with failure to do so to resulting in either the Texas Comptroller or the TWC being free to pursue its state law remedies under the Texas Property Tax Code to collect the full amount of taxes, penalties, and interest owed without further order of the Bankruptcy Court or notice to parties. The Debtors or Post-Restructuring Debtors, as applicable, may cure up to two defaults between the Texas Comptroller and the TWC. A third default may not be cured.

33. <u>Provisions Regarding Zurich and Chubb</u>. Notwithstanding anything to the contrary in the Definitive Documents, any bar date notice, claim objection, or notice of satisfaction, any notice of any Cure Cost or cure claim, any document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, confers Bankruptcy Court jurisdiction, grants an injunction, discharge or release, or requires a party to opt out of any releases):

a. nothing alters, modifies, or otherwise amends the terms and conditions of either of (i) any insurance policies issued by Zurich American Insurance Company or any of its U.S.-based affiliates and predecessors (collectively, and solely in their capacities as insurers, "<u>Zurich</u>") to, or which provide coverage to, any of the Debtors (or any of their predecessors) at any time and for any line of coverage (collectively and together with any agreements, documents or instruments related thereto and each as amended, modified or supplemented and including any exhibit or addenda thereto, either the "<u>Zurich Insurance Program</u>") (including any agreement to arbitrate disputes and any provisions regarding the provision, maintenance, use, nature, and priority of any letters of credit, loss funds, trusts, cash collateral, credits, return premium, unearned premium and any and all other collateral and/or security (including any proceeds of any of the foregoing) provided now or at any time prior or after hereto, by or on behalf of the Debtors to Zurich, the "<u>Zurich Collateral</u>"); or (ii) any insurance policies issued by ACE American Insurance Company or any of its U.S.-based affiliates and predecessors (collectively, and together with ESIS, Inc., solely in their capacities as insurers and third party administrators, "<u>Chubb</u>"), to, or which provide coverage to, any of the Debtors (or any of their predecessors) at any time and for any line of coverage (collectively and together with any agreements, documents or instruments related thereto and each as amended, modified or supplemented and including any exhibit or addenda thereto, the "<u>Chubb Insurance Program</u>") (including any agreement to arbitrate disputes and any provisions regarding the provision, maintenance, use, nature, and priority of any letters of credit, loss funds, trusts, cash collateral, credits, return premium, unearned premium and any and all other collateral and/or security (including any proceeds of any of the foregoing) provided now or at any time prior or after hereto, by or on behalf of the Debtors to Chubb, the "<u>Chubb Collateral</u>");

-44-

b. except that as of the Effective Date, the Post-Restructuring Debtors jointly and severally shall assume the Zurich Insurance Program and the Chubb Insurance Program in their entireties pursuant to sections 105 and 365 of the Bankruptcy Code, and the Zurich Insurance Program and the Chubb Insurance Program shall revest in the Post-Restructuring Debtors unaltered;

c. nothing releases or discharges (i) Zurich's security interests and liens on the Zurich Collateral or (ii) Chubb's security interests and liens on the Chubb Collateral;

d. nothing releases or discharges the claims of either Zurich or Chubb (including, without limitation any Cure Costs, or claims for reimbursement of any deductible or self-insured retention that Zurich or Chubb pays on behalf of the Debtors or Post-Restructuring Debtors, as applicable) arising under the Zurich Insurance Program or the Chubb Insurance Program, as applicable (regardless of whether all or any part of such claims arise or become liquidated before, on, or after the Petition Date, effectiveness of the Plan or conversion of one or more of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, respectively, either the "Zurich Claims" or the "Chubb Claims"), and further, the Zurich Claims and the Chubb Claims are actual and necessary expenses of the Debtors' estates (or the Post-Restructuring Debtors, as applicable) and shall be paid in full in the ordinary course of business, whether as an Allowed Administrative Claim under section 503(b)(1)(A) of the Bankruptcy Code or otherwise, without the need or requirement for either Zurich or Chubb to file or serve a request, motion, or application for payment of or proof of any Proof of Claim, Cure Costs (or any objection to cure amounts/notices), or Administrative Claim (and further and for the avoidance of doubt, any claim bar date shall not be applicable to either Zurich or Chubb);

e. the Debtors or the Post-Restructuring Debtors, as applicable, shall not sell, assign, or otherwise transfer the Zurich Insurance Program or any portion thereof, or the Chubb Insurance Program or any portion thereof and/or any of the rights, benefits, interests, and proceeds under either the Zurich Insurance Program or the Chubb Insurance Program except with the express written permission of Zurich or Chubb, as applicable;

f. the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article IX, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (I) claimants with valid workers' compensation claims or direct action claims against Zurich and/or Chubb under applicable non-bankruptcy law to proceed with their claims; (II) Zurich and/or Chubb to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) all workers' compensation claims, claims against non-Debtors, or direct action claims covered by the Zurich Insurance Program or the Chubb Insurance Program, (B) all claims where an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article IX to proceed with its claim, (C) claims against non-Debtors who may be entitled to coverage under the

-45-

Zurich Insurance Program or the Chubb Insurance Program, and (D) all costs in relation to each of the foregoing; (III) Zurich or Chubb to draw against any or all of the Zurich Collateral or Chubb Collateral, as applicable, and to hold the proceeds thereof as security for the obligations of the Debtors (or the Post-Restructuring Debtors, as applicable) to Zurich or Chubb, as applicable, and/or apply such proceeds to the obligations of the Debtors (or the Post-Restructuring Debtors, as applicable) under the Zurich Insurance Program or Chubb Insurance Program, in such order as Zurich or Chubb, as applicable, may determine; and (IV) subject to the terms of the Zurich Insurance Program, the Chubb Insurance Program and/or applicable non-bankruptcy law, Zurich and Chubb to (i) cancel any policies under the Zurich Insurance Program or the Chubb Insurance Program, respectively, and (ii) take other actions relating to the Zurich Insurance Program or the Chubb Insurance Program, respectively (including effectuating a setoff or recoupment); and

g. neither Article IX.G nor any corresponding paragraph of this Order shall apply to any claims covered by and/or asserted under the Zurich Insurance Program or Chubb Insurance Program.

34. <u>Provisions Regarding the United States</u>. As to the United States, its agencies, or any instrumentalities thereof (collectively, the "<u>United States</u>"), notwithstanding anything contained in the Plan, Plan Supplement, or this Order to the contrary, nothing shall:

a. limit or be intended to or be construed to bar the United States from pursuing any police or regulatory action or any criminal action; *provided, however*, that the foregoing shall not limit, diminish, or otherwise alter the Debtors' defenses, claims, causes of action, or other rights under applicable non-bankruptcy law with respect to any liability that may exist in connection with the foregoing;

b. discharge, release, exculpate, impair, or otherwise preclude (i) any obligation or discharge, release, exculpate, impair, or otherwise preclude (i) any obligation or liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code, (ii) any liabilities owed to United States arising after the Effective Date, (iii) any liability of the Debtors under police or regulatory statutes or regulations to the United States as the owner, lessor, lessee, or operator of property that such Entity owns, operates, or leases after the Effective Date; *provided, however*, that the foregoing shall not limit, diminish, or otherwise alter the Debtors' defenses, claims, causes of action, or other rights under applicable non-bankruptcy law with respect to any liability that may exist in connection with the foregoing, or (iv) any liability owed to the United States, including, but not limited to, any liabilities arising under the federal environmental, criminal, civil, or common law, by any non-Debtor, including the Released Parties or the Releasing Parties; *provided, however*, that the foregoing shall not (A) diminish the scope of any exculpation to which any Person is entitled under section 1125(e) of the Bankruptcy Code or pursuant to Article IX.E. where the Exculpated Partes have

-46-

acted in good faith and complied with applicable laws, or (B) limit the scope of discharge granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code;

c.   enjoin or otherwise bar the United States from asserting or enforcing, outside the Bankruptcy Court, any obligation or liability described in the preceding clause (b); *provided*, *however*, that the non-bankruptcy rights and defenses of all Entities with respect to (i)–(iv) in clause (b) are likewise fully preserved;

d.   affect any valid setoff or recoupment rights of the United States against any of the Debtors or the Post-Restructuring Debtors; *provided*, *however*, that the rights and defenses (other than any rights or defenses based on language in the Plan or this Order that may extinguish or limit setoff or recoupment rights) of the Debtors or Post-Restructuring Debtors with respect thereto are fully preserved;

e.   confer exclusive jurisdiction to the Bankruptcy Court, except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

f.   authorize the assumption, assignment, sale, or other transfer of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) agreements, (v) awards, (vi) task orders, (vii) property, (viii) intellectual property, (ix) patents, (x) leases, (xi) certifications, (xii) applications, (xiii) registrations, (xiv) billing numbers, (xv) national provider identifiers, (xvi) provider transaction access numbers, (xvii) licenses, (xviii) permits, (xix) covenants, (xx) inventory, (xxi) guarantees, (xxii) indemnifications, (xxiii) data, (xxiv) records, or (xxv) any other interests belonging to the United States (collectively, "Federal Interests") without compliance with all terms of the Federal Interests and with all applicable non-bankruptcy law;

g.   be interpreted to set cure amounts related to any Federal Interests or to require the United States to novate, approve, or otherwise consent to the assumption, assignment, sale, or other transfer of any Federal Interests;

h.   constitute or be deemed an approval or consent by the United States;

i.   waive, alter, or otherwise limit the United States' property rights;

j.   be construed as a compromise or settlement of any liability, Claim, Cause of Action or interest of the United States;

k.   modify the scope of section 525 of the Bankruptcy Code; or

l.   cause Claims arising from the rejection of Executory Contracts or Unexpired Leases to have to be Filed before the Governmental Unit Bar Date or alter the priority and treatment of such Claims under the Bankruptcy Code.

For the avoidance of doubt, the United States opts out of any Third-Party Releases, as provided in

Article IX, and is not a Releasing Party, as defined in the Plan.  In the event of an inconsistency or

conflict between any provision of the Plan, Plan Supplement, and any provision of this Order, then,

as to the United States, the provisions of this Order and federal law shall control.

35.     Provisions Regarding the Texas Medical Board.

a.  As to the Texas Medical Board  the ("TMB"), nothing in this Order, the Plan, or any related documents shall (i) discharge, release, nullify, preclude, or enjoin (A) any liability to the TMB that is not a "claim" as defined in 11 U.S.C. §101(5) ("TMB Claim"), (B) any TMB Claim arising on or after the Effective Date, (C) any liability to  the TMB under police and regulatory statutes or regulations as the owner or operator of property on or after the Effective Date, or (D) any liability to the TMB on the part of any non-Debtor, (ii) relieve any entity from any obligation to address or comply with information requests or inquiries from the TMB, (iii) affect the exercise of any valid setoff or recoupment rights of the TMB, or (iv) enjoin or otherwise bar the TMB from asserting or enforcing, outside this Bankruptcy Court, any liability described herein.

b.  Nothing in the Plan, this Order, or related documents (i) authorizes the assumption, sale, transfer or assignment of any (A) license, (B) permit, (C) registration, (D) authorization or (E) approval, in each case issued by the TMB, or the discontinuation of any obligation thereunder (collectively, the "TMB Interests"), without compliance with all applicable legal requirements and approvals under police or regulatory law, (ii) shall be interpreted to require the TMB to approve or otherwise consent to the assumption, sale, assignment or transfer of any TMB Interests, or (iii) divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.  All respective rights are reserved, including all rights and defenses under nonbankruptcy law.

c.  Further, the TMB is deemed to have opted out of any and all releases set forth in the Plan.

36.     Provisions Regarding Sureties.

a.  Applied Surety Underwriters (for itself and for the benefit of Pennsylvania Insurance Company, California Insurance Company, Continental Indemnity Company, Illinois Insurance Company, Siriuspoint America Insurance Company, and AXIS Insurance Company), Atlantic Specialty Insurance Company, Argonaut Insurance Company, Westchester Fire Insurance Company, Ascot Insurance Company, Berkley Insurance Company, Indemnity National Insurance Company, and, as applicable, their subsidiaries, affiliates, parents, and/or successors (collectively, the "Sureties" and, each individually, a "Surety") issued certain surety

-48-

bonds on behalf of the Debtors pre- and post-Petition Date (collectively, the "Surety Bonds" and, each individually, a "Surety Bond"). The Sureties issued their respective Surety Bonds pursuant to certain indemnity agreements executed by one or more of the Debtors pre- and post-petition (collectively, the "Indemnity Agreements" and, each individually, an "Indemnity Agreement").

b. Notwithstanding anything to the contrary in this Order, the Plan, any Plan Supplement, and/or any documents, agreements, instruments, or amendments executed in connection with, contemplated by, or related to any of the foregoing shall alter, limit, modify, or impair any relief provided in the Recovery Solutions Sale Order. Moreover, nothing in this Order, the Plan, any Definitive Document, or any Financing Order shall bar, release, discharge, reject, impair, expand, alter, modify, amend, limit, enjoin, prime, encumber, or subordinate, nor shall permit or otherwise effectuate a sale, assumption and assignment, substitution, or any other transfer of, (i) the Surety Bonds, (ii) any Indemnity Agreements, (iii) any rights or interests of a Surety in any collateral of such Surety, including, without limitation, cash, cash equivalents, accounts, letters of credit, other collateral, or proceeds of any of the foregoing (collectively, the "Surety Collateral"), or (iv) any documents, agreements, instruments, or amendments related to the Surety Collateral (collectively with the Surety Bonds and Indemnity Agreements, the "Surety Agreements"). For the avoidance of doubt, no Surety Agreements or any claims and obligations related to the Surety Agreements and/or any Sureties' rights in any Surety Collateral shall be impaired, discharged, released, or otherwise affected by the Plan, this Order, Definitive Documents, Confirmation, or Consummation, and all Surety Agreements and any claims and obligations related to the Surety Agreements shall be deemed Reinstated, treated as assumed executory contracts, and shall be post-Confirmation, post-Effective Date continuing obligations of, as applicable, Reorganized Wellpath and/or the Post-Restructuring Debtors.

37. <u>Provision Regarding Cobb County</u>. For the avoidance of doubt, nothing in the Plan or this Order shall have the effect of (a) discharging any debt or Claim that is excepted from the Debtors' discharge pursuant to section 1141(d)(6) of the Bankruptcy Code or (b) assigning to the Liquidating Trust the liabilities, obligations, and responsibilities of any debt or Claim that is excepted from the Debtors' discharge pursuant to section 1141(d)(6) of the Bankruptcy Code.

38. <u>Provisions Regarding Texas Taxing Authorities</u>. Notwithstanding anything to the contrary in the Plan or this Order, the Debtors or Post-Restructuring Debtors, as applicable, shall pay all allowed 2023-2024 tax claims (the "<u>Delinquent Tax Claims</u>") of the Texas Taxing

-49-

Authorities,[6] in full within 15 days of Effective Date.  The Delinquent Tax Claims shall include post-petition interest properly charged under applicable non-bankruptcy law through the date of payment of such claims.  The Texas Taxing Authorities shall retain their liens (if any) that secure any Allowed Secured Tax Claim, in their pre-petition priority (to the extent the Texas Taxing Authorities' liens are valid, senior, perfected, binding, enforceable and non-avoidable), until the taxes due under this Order are fully paid.  The claims and liens of the Texas Taxing Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity, extent, or amount of such liens. The Post-Restructuring Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2025 and subsequent tax years) owing to the Texas Taxing Authorities in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of the Texas Taxing Authorities to file an administrative expense claim and/or request for payment.

39.    Provisions Regarding Diamond Drugs.  On the Effective Date (the "Assumption and Assignment Date"), and conditioned on payment of the Cure Costs, the assumption by the Debtors, and assignment to the Post-Restructuring Debtors of, (a) that certain Master Pharmacy Services Agreement by and between Diamond Drugs, Inc. ("Diamond") and Wellpath LLC, originally dated December 1, 2012, and together with all subsequent amendments thereto (the "MPSA") and (b) that certain Trade Agreement entered into by and between Diamond and the Debtors (as authorized by this Court pursuant to its final order dated December 11, 2024), is authorized and approved (the "Trade Agreement").  Further, on the Assumption and Assignment Date (or as soon as reasonably practicable thereafter), the Debtors and/or the Post-Restructuring

---

[6]    Texas Taxing Authorities consist of the following entities: Ellis County, San Marcos CISD, Harris County Emergency Service District #02, Harris County Emergency Service District #60 and Hays County.

Debtors are authorized and directed to pay to Diamond the Agreed Cure Amount (as defined in the Trade Agreement) as its Cure Costs as set forth in, and consistent with, the Trade Agreement.

40.     Resolution of Select Medical Corporation Limited Objection.    Select Medical Corporation ("Select") filed the *Limited Objection of Select Medical Corporation to Confirmation of Chapter 11 Plan* [Docket No. 2353] (the "Select Limited Objection").  The Debtors and Select settled the Select Limited Objection as per the following terms, which are approved by the Bankruptcy Court and incorporated into the terms of this Order.  Upon the occurrence of the Effective Date, (a) Select's filed proof of claim currently listed in the Claims Register as claim number 12440 ("Select Claim") shall be deemed an Allowed Class 6 General Unsecured Claim in the Chapter 11 Cases in the amount of $6,737,110.66, (b) all Avoidance Actions against Select and its affiliates listed in the Select Contract (as defined below) shall be deemed Retained Causes of Action under the Plan (notwithstanding the contents of any Schedule of Retained Causes of Action) and released by the Post-Restructuring Debtors, (c)the Debtors shall assume that certain Letter of Agreement, dated October 1, 2022, between Wellpath, LLC and/or its affiliates and subsidiary entities and Select Medical Corporation and its affiliates listed therein (as amended, the "Select Contract") for the agreed Cure Costs of $2,500,000, which shall be paid as soon as reasonably practicable after the Effective Date.  In addition to the foregoing, the Post-Restructuring Debtors shall pay all unpaid charges incurred under the Select Contract after the Petition Date in accordance with the terms set forth therein without the need for Select or any of its affiliates to file an Administrative Claim or any further order of the Bankruptcy Court.  Until the unpaid post-petition charges are paid in full, Select and its affiliates shall retain the right to file an Administrative Claim in any of the Chapter 11 Cases notwithstanding the occurrence of the Administrative Claims Bar Date.

41. Provisions Regarding El Paso County. Nothing provided in the Plan or this Order shall impair any and all defenses or counterclaims of the Board of County Commissioners of El Paso County, Colorado and the El Paso County Sheriff's Office (collectively, "El Paso County") premised upon any valid statutory or common law rights of setoff and recoupment, which are hereby preserved in accordance with section 553 of the Bankruptcy Code, with respect to Causes of Action that may be asserted by any of the Post-Restructuring Debtors or their successors or assigns, including the Liquidating Trust. Furthermore, the objection filed by El Paso County to the Plan shall not be deemed as any consent by El Paso County to the jurisdiction of this court to adjudicate any Cause of Action that may be asserted against El Paso County. Additionally, El Paso County has been deemed to opt-out of the third-party releases provided under the Plan.

42. Bell Ambulance Objection. Bell Ambulance, Inc. ("Bell Ambulance") filed the Bell Ambulance, Inc.'s Protective Objection to the Debtors' Plan [Docket No. 2362] (the "Bell Ambulance Objection"). The Debtors and Bell Ambulance have agreed to resolve the Bell Ambulance Objection by assuming the certain Transportation Services Agreement dated April 19, 2019, for the agreed Cure Costs of $175,000, which shall be paid on or as reasonably practicable after the occurrence of the Effective Date in accordance with the Plan.

43. Provision Regarding Opt-Out by Incarcerated Individuals That Have Personal Injury or Wrongful Death Claims. Reorganized Wellpath shall provide notice to all known personal injury and wrongful death claimants of the extended 90-day period to opt out from the Third-Party Release in Article IX.D and File a certificate of service with the Bankruptcy Court. In addition, to the extent that any personal injury or wrongful death claimant has not received constitutional due process in connection with the solicitation and/or the Bar Date Order, the Bankruptcy Court shall retain jurisdiction to address these issues.

44.     Notwithstanding anything to the contrary in the Plan, the Plan Supplement or this Order, nothing in the Plan, the Plan Supplement, or this Order abrogates or impairs the rights of holders of claims that have not filed a Proof of Claim to pursue their rights, if any, in a separate forum against third-party insurers; *provided*, *however*, notwithstanding anything to the contrary in this Order, in no event shall Reorganized Wellpath, the Post-Restructuring Debtors, or the Liquidating Trust have any obligation to satisfy or pay any deductible, retention, advancement, indemnification or other financial obligation under or in connection with insurance policies provided by such third-party insurers.

45.     <u>Notice of Confirmation Date and Effective Date</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), within 14 calendar days of the date of entry of this Order, the Debtors or the Post-Restructuring Debtors, as applicable, including through the Claims and Solicitation Agent, shall serve a Notice of Confirmation on the 2002 List.  On the Effective Date, or as soon as reasonably practicable thereafter, the Post-Restructuring Debtors shall File with the Bankruptcy Court a notice of Effective Date (the "<u>Notice of Effective Date</u>") and serve it on the 2002 List in the same manner that the Confirmation Hearing Notice was served.  For purposes of service under this paragraph, the Debtors or the Post-Restructuring Debtors, as applicable, including the Claims and Solicitation Agent, are authorized to rely on the mailing address or email address information used for serving the Confirmation Hearing Notice (or as updated by such party since service of the Confirmation Hearing Notice).  The Debtors or the Post-Restructuring Debtors, as applicable, and the Claims and Solicitation Agent are not required to conduct any additional research for updated mailing addresses or email addresses based on undeliverable Confirmation Hearing Notices, Notices of Confirmation Date, Notices of Effective Date, or any other Filing.

46.     Retention of Jurisdiction.  From the Confirmation Date and until the Effective Date, the Bankruptcy Court retains jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan.  Notwithstanding the entry of this Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court retains jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code in accordance with the Plan, including Article XII.

47.     Final Order.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

48.     Binding Effect.  Notwithstanding any Bankruptcy Rule (including Bankruptcy Rules 3020(e), 6003, and 6004(h)), Bankruptcy Local Rule, or rule 62(a) of the Federal Rules of Civil Procedure to the contrary, upon the date hereof, this Order shall be binding upon and inure to the benefit of the Debtors or the Post-Restructuring Debtors, as applicable, all present and former Holders of Claims or Interests (whether or not such Holders shall receive or retain any property or interest in property under the Plan and irrespective of whether such Claims or Interests are deemed to have accepted the Plan), the Liquidating Trust, the Liquidating Trustee, all Persons or other Entities that are parties to or are subject to the settlements, compromises, releases, or injunctions described in the Plan, each Person or other Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors, all other parties in interest in the Chapter 11 Cases, and their respective Related Parties.  The Debtors or the Post-Restructuring Debtors and the Liquidating Trust, as applicable, (including by directing the Claims and Solicitation Agent) are authorized to take all such actions as are deemed necessary or appropriate to adjust and update the Claims Register consistent with the Plan (including Article VIII) and this Order.

49. <u>Waiver of Stay</u>. The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived, and this Order shall be effective and enforceable after 11:59 p.m. (prevailing Central Time) on May 7, 2025.

50. <u>Non-Severability</u>. If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. This Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' or Post-Restructuring Debtors' consent, as applicable; and (c) except as otherwise provided in the Plan, nonseverable and mutually dependent.

51. <u>Reversal</u>. If any or all of the provisions of this Order are hereafter reversed, modified, or vacated by subsequent order of the Bankruptcy Court or any other court of competent jurisdiction, such reversal, modification, or vacatur shall not affect the validity or the enforceability of any act, obligations, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors or the Post-Restructuring Debtors, as applicable, under or in connection with the Plan (including pursuant to any other order of the Bankruptcy Court) prior to the date that the Debtors

or the Post-Restructuring Debtors, as applicable, received actual written notice of the effective date of any such reversal, modification, or vacatur. Notwithstanding any such reversal, modification, or vacatur of this Order, any act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, and any amendments or modifications thereto.

52.     Conflicts with This Order. The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided, however*, that if there is determined to be any inconsistency between any terms and provisions of this Order and any terms and provisions of the Plan (including the Plan Supplement) or any other applicable Definitive Document that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Order shall govern, and any provision of this Order shall be deemed a modification of the Plan or such other document and shall control and take precedence.

53.     Headings. The headings contained within this Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Order.

Signed: May 01, 2025

_____
Alfredo R Pérez
United States Bankruptcy Judge

-56-

**Exhibit A**

**Plan of Reorganization**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al.*,[1] | Case No. 24-90533 (ARP) |
| Debtors. | Jointly Administered |

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
## OF WELLPATH HOLDINGS, INC. AND CERTAIN OF ITS DEBTOR AFFILIATES
## (WITH TECHNICAL MODIFICATIONS)

**MCDERMOTT WILL & EMERY LLP**
Felicia Gerber Perlman (admitted *pro hac vice*)
Bradley Thomas Giordano (admitted *pro hac vice*)
Jake Jumbeck (admitted *pro hac vice*)
Carole Wurzelbacher (admitted *pro hac vice*)
Carmen Dingman (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606-0029
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
Email:    fperlman@mwe.com
        bgiordano@mwe.com
        jjumbeck@mwe.com
        cwurzelbacher@mwe.com
        cdingman@mwe.com

**MCDERMOTT WILL & EMERY LLP**
Marcus A. Helt (Texas Bar #24052187)
2501 N. Harwood Street, Suite 1900
Dallas, Texas 75201-1664
Telephone:  (214) 295-8000
Facsimile:   (972) 232-3098
Email:    mhelt@mwe.com

- and -

**MCDERMOTT WILL & EMERY LLP**
Steven Z. Szanzer (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
Email:    sszanzer@mwe.com

*Counsel to the Debtors and Debtors-in-Possession*

Dated: April 30, 2025

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Wellpath. The Debtors' service address for these chapter 11 cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

**TABLE OF CONTENTS**

**ARTICLE I.** DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF
TIME, AND GOVERNING LAW ..... 5
A. Defined Terms. ..... 5
B. Rules of Interpretation. ..... 29
C. Computation of Time. ..... 30
D. Governing Law. ..... 30
E. Reference to Monetary Figures. ..... 31
F. Reference to the Debtors or the Post-Restructuring Debtors. ..... 31
G. Controlling Document. ..... 31

**ARTICLE II.** ADMINISTRATIVE CLAIMS, DIP CLAIMS, PROFESSIONAL FEE CLAIMS,
AND PRIORITY CLAIMS, ..... 31
A. Administrative Claims. ..... 31
B. DIP Claims. ..... 32
C. Professional Fee Claims. ..... 33
D. Priority Tax Claims. ..... 34
E. Restructuring Expenses & Agent Fees. ..... 34

**ARTICLE III.** CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 34
A. Classification of Claims and Interests. ..... 34
B. Treatment of Claims and Interests. ..... 35
C. Special Provision Governing Unimpaired Claims. ..... 39
D. Elimination of Vacant Classes. ..... 39
E. Intercompany Interests. ..... 39
F. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
Code. ..... 39
G. Controversy Concerning Impairment. ..... 40
H. Subordinated Claims. ..... 40

**ARTICLE IV.** MEANS FOR IMPLEMENTATION OF THE PLAN ..... 40
A. General Settlement of Claims and Interests. ..... 40
B. Restructuring Transactions. ..... 40
C. Administrative Consolidation for Voting and Distribution Purposes Only. ..... 41
D. Sources of Consideration for Plan Distributions ..... 42
E. Equity Financing ..... 44
F. Management Incentive Plan ..... 45
G. Employee Matters ..... 45
H. Corporate Existence ..... 46
I. New Organizational Documents ..... 46
J. Directors and Officers of the Post-Restructuring Debtors. ..... 47
K. Vesting of Assets in the Post-Restructuring Debtors ..... 47
L. Preservation of Causes of Action. ..... 47
M. Effectuating Documents; Further Transactions. ..... 48
N. The Liquidating Trust. ..... 49
O. Tax Matters. ..... 53

2

P.      Cancellation of Existing Securities and Agreements..................................53
Q.      Corporate Action...........................................................................................54
R.      Indemnification Obligations. .......................................................................55
S.      Section 1146 Exemption. .............................................................................55
T.      Director and Officer Liability Insurance......................................................56

**ARTICLE V.** TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
                                                                                                        56
A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.56
B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases.57
C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.58
D.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired
        Leases...........................................................................................................59
E.      Insurance Policies. .......................................................................................59
F.      Modifications, Amendments, Supplements, Restatements, or Other Agreements.
        .......................................................................................................................60
G.      Reservation of Rights....................................................................................60
H.      Nonoccurrence of Effective Date.................................................................60
I.      Contracts and Leases Entered Into After the Petition Date. ........................60

**ARTICLE VI.** PROVISIONS GOVERNING DISTRIBUTIONS                                               60
A.      Distributions on Account of Claims Allowed as of the Effective Date.......60
B.      Distribution Agent. .......................................................................................61
C.      Rights and Powers of the Distribution Agent. ..............................................61
D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions.62
E.      Manner of Payment.......................................................................................63
F.      Compliance with Tax Requirements..............................................................64
G.      Allocations. ..................................................................................................64
H.      Foreign Currency Exchange Rate. ...............................................................64
I.      Setoffs and Recoupment. .............................................................................64
J.      Claims Paid or Payable by Third Parties. ....................................................65

**ARTICLE VII.** THE LIQUIDATING TRUSTEE                                                          66
A.      Creation and Governance of the Liquidating Trust. .....................................66
B.      Liquidating Trustee and Liquidating Trust Agreement. ...............................67
C.      Tax Treatment. .............................................................................................67
D.      Dissolution of Liquidating Trust..................................................................67

**ARTICLE VIII.** PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
                AND DISPUTED CLAIMS                                                               68
A.      Allowance of Claims.....................................................................................68
B.      Claims Administration Responsibilities. ......................................................68
C.      Disputed Claims Process...............................................................................69
D.      Estimation of Claims.....................................................................................69
E.      Adjustment to Claims or Interests without Objection....................................70
F.      Disallowance of Claims. ...............................................................................70
G.      No Distributions Pending Allowance. ..........................................................70

|   |   | H. | Distributions After Allowance. | 71 |
|---|---|---|---|---|
|   |   | I. | No Post-Petition Interest on Claims. | 71 |
|   |   | J. | Accrual of Dividends and Other Rights. | 71 |

**ARTICLE IX.** SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS 71

|   | A. | Discharge of Claims and Termination of Interests. | 71 |
|---|---|---|---|
|   | B. | **Release of Liens.** | 72 |
|   | C. | **Releases by the Debtors.** | 73 |
|   | D. | **Releases by the Releasing Parties.** | 75 |
|   | E. | **Exculpation.** | 76 |
|   | F. | **Injunction.** | 77 |
|   | G. | Gatekeeper Provision. | 78 |
|   | H. | Protections Against Discriminatory Treatment. | 78 |
|   | I. | Document Retention. | 78 |
|   | J. | Reimbursement or Contribution. | 78 |
|   | K. | Government Carve Out. | 79 |

**ARTICLE X.** CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN 79

|   | A. | Conditions Precedent to the Effective Date. | 79 |
|---|---|---|---|
|   | B. | Waiver of Conditions. | 81 |
|   | C. | Effect of Failure of Conditions. | 81 |
|   | D. | Substantial Consummation | 82 |

**ARTICLE XI.** MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN......82

|   | A. | Modification and Amendments. | 82 |
|---|---|---|---|
|   | B. | Effect of Confirmation on Modifications. | 82 |
|   | C. | Revocation or Withdrawal of Plan. | 82 |

**ARTICLE XII.** RETENTION OF JURISDICTION 83

**ARTICLE XIII.** MISCELLANEOUS PROVISIONS 85

|   | A. | Immediate Binding Effect. | 85 |
|---|---|---|---|
|   | B. | Additional Documents. | 85 |
|   | C. | Payment of Statutory Fees. | 85 |
|   | D. | Statutory Committee and Cessation of Fee and Expense Payment. | 86 |
|   | E. | Reservation of Rights. | 86 |
|   | F. | Successors and Assigns. | 86 |
|   | G. | Notices. | 86 |
|   | H. | Term of Injunctions or Stays. | 88 |
|   | I. | Entire Agreement. | 88 |
|   | J. | Plan Supplement. | 88 |
|   | K. | Nonseverability of Plan Provisions. | 89 |
|   | L. | Votes Solicited in Good Faith. | 89 |
|   | M. | Closing of Chapter 11 Cases. | 89 |
|   | N. | Waiver or Estoppel. | 89 |
|   | O. | Creditor Default. | 90 |

## <u>INTRODUCTION</u>

Wellpath Holdings, Inc. and certain of the above-captioned debtors and debtors in possession (collectively, the "Debtors"),[2] propose this joint chapter 11 plan of reorganization for the resolution of the outstanding claims against, and equity interests in, the Debtors. Holders of Claims or Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, risk factors, a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan provides for the administrative consolidation of all of the Debtors solely for the purposes of voting on the Plan, tabulating the votes to determine which Class or Classes have accepted the Plan, confirming the Plan, and the resulting treatment of all Claims and Interests and Plan Distributions.

ALL HOLDERS OF CLAIMS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.     *Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.     *"Ad Hoc Group"* means the informal ad hoc group of unaffiliated Consenting First Lien Lenders and Consenting Second Lien Lenders represented by the Ad Hoc Group Advisors.

2.     *"Ad Hoc Group Advisors"* means, collectively, Akin Gump Strauss Hauer & Feld LLP, as counsel to the Ad Hoc Group, Ankura Consulting Group, LLC, as financial advisor to the Ad Hoc Group, and Houlihan Lokey Capital, Inc., as investment banker to the Ad Hoc Group.

3.     *"Adequate Protection Claims"* means all adequate protection Claims arising in favor of the Prepetition Secured Parties (as defined in the Financing Orders) under applicable law or pursuant to the Financing Orders.

4.     *"Administrative Claim"* means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through and including the Effective Date; (b) Allowed Professional Fee Claims; (c) Adequate Protection Claims; (d) Restructuring Expenses; (e) Agent Fees; and (f) all fees and charges assessed against the Estates under chapter 123 of the Judicial Code.

---

[2]     As used herein, the term Debtors shall not include CCS-CMGC Parent GP, LLC, CCS-CMGC Parent Holdings, LP, Wellpath Recovery Solutions, LLC, Correct Care of South Carolina, LLC, Harborview Center, LLC, Behavioral Health Management Systems, LLC, 901 45th Street West Palm Beach Florida Behavioral Health Hospital Company, LLC, or Boynton Beach Florida Behavioral Health Hospital Company, LLC.

5

5.        "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which (a) with respect to Administrative Claims other than Professional Fee Claims, Adequate Protection Claims, Restructuring Expenses, or Agent Fees, shall be 30 days after the Effective Date and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date.  For the avoidance of doubt, there shall not be a Bar Date for the assertion of any Claim for alleged personal injury, wrongful death, or other similar Claim or Cause of Action against any Debtor arising out of, relating to, or in connection with, an injury or death that occurred on or after the Petition Date, but prior to the Effective Date.

6.        "*Affiliate*" means, with respect to any Person, any other Person controlled by, controlling or under common control with such Person and shall also include any Related Fund of such Person.  As used in this definition, "control" (including, with its correlative meanings, "controlling," "controlled by" and "under common control with") shall mean possession, directly or indirectly, of power to direct or cause the direction of management or policies of a Person (whether through ownership of securities, by contract or otherwise).

7.        "*Agent Fees*" means the Adequate Protection Fees, the DIP Professional Fees, the Agency Fee, and the Fronting Fee (all as defined in the Financing Order) relating to the Prepetition Agents, the DIP Agent, and/or the Fronting Lender that are required to be paid by the Debtors pursuant to the terms of the Financing Order, and, for the avoidance of doubt, which, without further order of, or application to, the Bankruptcy Court by such professionals, including the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases, shall be Allowed as an Administrative Claim upon occurrence and shall not be subject to any offset, defense, counter-claim, reduction, or credit.

8.        "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the applicable Claims Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or for which Claim a Proof of Claim is not required under the Plan, the Bankruptcy Code, or a Final Order, including the Financing Order); (b) a Claim that is scheduled by the Debtors as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed pursuant to the Plan or a Final Order, including the Financing Order; *provided*, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order.  Any Claim that has been or is hereafter listed on the Schedules as contingent, unliquidated, or disputed, and for which no contrary or superseding Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Post-Restructuring Debtor, as applicable.

For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "Allow" and "Allowing" shall have correlative meanings.

9. "*Assumption Notice*" means that certain Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount [Docket No. 194].

10. "*Automatic Stay Objection*" means any objection to the *Debtors' Emergency Motion for the Entry of Interim and Final Orders to Enforce the Automatic Stay or in the Alternative Extend the Automatic Stay to Non-Debtor Defendants* [Docket No. 17] Filed on or prior to the Plan Objection Deadline.

11. "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims and Causes of Action that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code, or other similar or related state, federal, or foreign statutes, common law, or other applicable Law.

12. "*Backstop Commitments*" means the several but not joint commitments by the Backstop Parties to backstop the DIP Facility and commit to the Equity Financing pursuant to the Commitment Letter.

13. "*Backstop Parties*" means the parties that, severally and not jointly, backstopped the DIP Facility and committed to the Equity Financing pursuant to the Commitment Letter.

14. "*Backstop Premium*" means the premium payable to (a) the Backstop Parties as consideration for the Backstop Parties providing the Backstop Commitment, in an amount equal to 10% of the principal amount of the New Money Term Loan Commitments (as defined in the DIP Credit Agreement), which was earned and paid in kind upon entry by the Bankruptcy Court of the Interim DIP Order and (b) all DIP Lenders as consideration for the DIP Lenders committing to the Equity Financing, in an amount equal to 10% of the Equity Financing Amount, which amounts shall be fully earned and nonrefundable upon entry by the Bankruptcy Court of the Final DIP Order and to be paid in New Class A Common Equity on the Effective Date.

15. "*Ballot*" means a ballot accompanying the Disclosure Statement upon which certain Holders of Impaired Claims entitled to vote to the Plan shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process.

16. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended, and as applicable to the Chapter 11 Cases.

17. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas.

18.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each, as amended from time to time, and as applicable to the Chapter 11 Cases.

19.      "*Bar Date(s)*" means the applicable date(s) designated by the Bankruptcy Court (or pursuant to the Bankruptcy Rules) as the last date for filing Proofs of Claims or Interests in the Chapter 11 Cases of the respective Debtors, including the Claims Bar Date, the Governmental Unit Bar Date, and the Administrative Claims Bar Date.

20.      "*Bar Date Order*" means the order of the Bankruptcy Court establishing the Bar Dates [Docket No. 491].

21.      "*Bidding Procedures*" means the *Bidding Procedures for the Sale of the Debtors' Assets*, attached as <u>Exhibit 1</u> to the *Stipulated and Agreed Amended Order (I) Approving the Bidding Procedures for the Sale of the Debtors' Assets, (II) Approving Entry Into a Stalking Horse Purchase Agreement for the Recovery Solutions Assets, (III) Authorizing the Recovery Solutions Expense Reimbursement, (IV) Authorizing Potential Selection of Stalking Horse Bidders for the Corrections Assets and Approving Related Corrections Asset(s) Bid Protections, (V) Establishing Related Dates and Deadline, (VI) Approving the Form and Manner of Notice Thereof, (VII) Approving the Assumption and Assignment Procedures, and (VIII) Granting Related Relief* [Docket No. 384].

22.      "*Business Day*" means any day other than a Saturday, Sunday, a "legal holiday" (as defined in section 9006(a) of the Bankruptcy Code), or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

23.      "*Cash*" means cash in legal tender of the United States of America and cash equivalents, including bank deposits, checks, and other similar items.

24.      "*Cash Collateral*" has the meaning ascribed to such term in section 363(a) of the Bankruptcy Code.

25.      "*Causes of Action*" means any claims, cross-claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, judgments, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) such claims and defenses as fraud,

mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any other Avoidance Action.

26.   "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

27.   "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors or any of the Estates.

28.   "*Claims and Solicitation Agent*" means Epiq Corporate Restructuring LLC, the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases.

29.   "*Claims Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim must be Filed with respect to Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding the Holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

30.   "*Claims Register*" means the official register of Claims maintained by the Claims and Solicitation Agent.

31.   "*Class*" means a class of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

32.   "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

33.   "*Commitment Letter*" means that certain *Amended and Restated Senior Secured Superpriority Debtor in Possession Credit Facility and Equity Financing Backstop Commitment Letter*, dated as of January 27, 2025, as may be amended or modified pursuant to its terms.

34.   "*Commitment Premium*" means the premium payable to the Equity Financing Participants in an amount equal to 5% of the committed Equity Financing Amount, to be paid in New Class A Common Equity on the Effective Date.

35.   "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

36.   "*Committee Professionals*" means the Professionals retained in connection with the Chapter 11 Cases to represent the Committee.

37.   "*Compensation and Benefit Programs*" means all employment, offer letter and severance agreements and policies, and all employment, wages, compensation, restrictive covenant, and benefit plans and policies, workers' compensation programs, savings plans, retirement plans, deferred compensation plans, supplemental executive retirement plans, healthcare plans, disability plans, severance benefit plans, incentive and retention plans, programs,

9

and payments, life and accidental death and dismemberment insurance plans and programs, for all employees of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and non-employee directors and managers, in each case existing with the Debtors immediately prior to the Effective Date.

38. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

39. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

40. "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

41. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Debtors, the Committee, and the Required Consenting First Lien Lenders.

42. "*Consenting First Lien Lenders*" means Holders of First Lien Claims that are or become parties to the Restructuring Support Agreement.

43. "*Consenting Second Lien Lenders*" means Holders of Second Lien Claims that are or become parties to the Restructuring Support Agreement.

44. "*Consenting Stakeholders*" means any party (other than the Debtors and the TopCo Debtors) to the Restructuring Support Agreement, including: (a) the Backstop Parties, (b) the Consenting First Lien Lenders, and (c) the Consenting Second Lien Lenders.

45. "*Consummation*" means the occurrence of the Effective Date as to the applicable Debtor.

46. "*Corrections Business*" means the Debtors' business and operations of providing health services to patients in state and federal correction facilities and local jail facilities and juvenile detention facilities.

47. "*Covered Claims*" means any claim or Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or filing of the Restructuring Support Agreement (including the Term Sheets) and related prepetition transactions, the DIP Facility, the Disclosure Statement, the Plan, the Plan Supplement or any contract, instrument, release or other agreement or document created or entered into in connection with the Restructuring Support Agreement (including the Term Sheets), the Bidding Procedures, the DIP Facility, the DIP Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Equity Financing Documents, the Definitive Documents, the Chapter 11 Cases, the commencement of the Chapter 11 Cases, the marketing process for the sale of any of the Debtors' assets, the Recovery Solutions Stalking Horse Agreement (as defined in the Recovery Solutions Sale Order), the Recovery Solutions Sale Order,

the solicitation of votes on the Plan, the prepetition negotiation and settlement of claims, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or after the Petition Date and on or before the Effective Date.

48. "*Cure Costs*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or, if applicable, such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

49. "*D&O Liability Insurance Policies*" means all insurance policies of any of the Debtors for directors', managers', and officers' liability existing as of the Petition Date (including any "tail policy") and all agreements, documents, or instruments relating thereto.

50. "*Debtor Professionals*" means the Professionals retained in connection with the Chapter 11 Cases to represent the Debtors.

51. "*Debtor Release*" means the release set forth in Article IX.C of the Plan.

52. "*Definitive Documents*" shall have the meaning set forth in the Restructuring Support Agreement.

53. "*DIP Agent*" means UBS, in its capacity as the administrative agent and collateral agent under the DIP Documents, and any successor agent thereunder.

54. "*DIP Claim*" means any and all Claims arising under, derived from, or based upon the DIP Documents, including claims for principal amounts outstanding, interest, fees, indemnification, expenses, costs and any other charges of the DIP Agent and the DIP Lenders arising under or related to the DIP Facility, including the DIP Roll-Up Claims and the DIP Fees (as defined in the Financing Order), in each case payable under and in accordance with the DIP Documents and the Financing Order.

55. "*DIP Credit Agreement*" means the definitive superpriority senior secured debtor-in-possession credit agreement, dated as of November 13, 2024, by and among the Debtors party thereto, the DIP Agent and the DIP Lenders, as amended, amended and restated, supplemented, or otherwise modified in accordance with its terms.

56. "*DIP Documents*" means the DIP Credit Agreement, the "Credit Documents" (as defined in and under the DIP Credit Agreement), and any other documentation governing the DIP Facility, including the Financing Orders, which shall be in form and substance acceptable to the Required Consenting First Lien Lenders.

57. "*DIP Facility*" means the credit facility provided for under the DIP Credit Agreement.

58.     "*DIP Lenders*" means the lenders party to the DIP Credit Agreement from time to time.

59.     "*DIP Loans*" means the loans under the DIP Facility.

60.     "*DIP Roll-Up Claim*" means any Claim arising under, or related to, the DIP Roll-Up Loans.

61.     "*DIP Roll-Up Loans*" means, collectively, the DIP Loans resulting from the "roll up" of First Lien Claims and Second Lien Claims into the DIP Facility pursuant to the Financing Order.

62.     "*Disclosure Statement*" means the related disclosure statement with respect to this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan, as may be amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

63.     "*Disclosure Statement Order*" means the *Order (I) Approving the Adequacy of the Disclosure Statement on a Conditional Basis, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 1867].

64.     "*Disputed*" means, as to a Claim or an Interest, any Claim or Interest: (a) that is not Allowed; (b) that is not disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable; (c) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law; (d) that is Filed in the Bankruptcy Court and not withdrawn, as to which an objection or request for estimation has been Filed; and (e) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

65.     "*Distribution Agent*" means (a) for the Trust Claims, the Liquidating Trust, or (b) for all other Claims, the Entity or Entities selected by the Debtors or the Post-Restructuring Debtors, as applicable, to make or facilitate distributions pursuant to the Plan.

66.     "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Post-Restructuring Debtors, on or after the Effective Date, with the first such date occurring on or as soon as is reasonably practicable after the Effective Date, upon which the Distribution Agent shall make distributions to Holders of Allowed Claims entitled to receive distributions under the Plan.

67.     "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims are eligible to receive distributions under the Plan on account of Allowed Claims, which date shall be on or as soon as is reasonably practicable after the Effective Date.

68.     "*Effective Date*" means, as to the applicable Debtor, the date that is the first Business Day on which (a) all conditions precedent to the occurrence of the Effective Date set

forth in Article X.A of the Plan have been satisfied or waived in accordance with Article X.B of the Plan and (b) no stay of the Confirmation Order is in effect. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

69. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

70. "*Equity Financing*" means the sale of New Class A Common Equity for the Equity Financing Amount, upon the terms and conditions set forth in the Commitment Letter.

71. "*Equity Financing Amount*" means an amount to be determined between $20,000,000 and $55,000,000, which shall be determined by the Required Consenting First Lien Lenders and shall be reasonably acceptable to the Debtors, it being understood that it shall be acceptable to the Debtors to the extent that the Equity Financing Amount is sufficient to ensure that there will be at least $35,000,000 of unrestricted cash on the balance sheet of Reorganized Wellpath on the first Business Day following the Effective Date, which $35,000,000 does not include an additional $4,600,000 that separately shall be available to Reorganized Wellpath for the payment to certain employees of the Post-Restructuring Debtors pursuant to the Post-Restructuring Debtors' key employee incentive plan.

72. "*Equity Financing Documents*" means any agreements and documents executed and delivered in connection with the Equity Financing, each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, which shall be in form and substance (a) consistent with the terms of the Plan and Global Settlement Term Sheet and (b) acceptable to the Required Consenting First Lien Lenders and the Debtors.

73. "*Equity Financing Participants*" means the Backstop Parties and any party that has executed and delivered a subscription form to the Debtors in connection with the Equity Financing that either are (a) a qualified institutional buyer, as such term is defined in Rule 144A under the Securities Act, or (b) an institutional "accredited investor" ("*IAI*") within the meaning of Rule 501(a)(1), (2), (3), or (7) under the Securities Act or an entity in which all of the equity investors are IAIs (which, in the case of (a) and (b), for the avoidance of doubt, may not include any natural person) who committed to purchase New Class A Common Equity being issued in the Equity Financing.

74. "*Equity Financing Securities*" means (a) the New Class A Common Equity (i) offered in the Equity Financing and (ii) issued on account of the Commitment Premium and the Backstop Premium, both in the form of shares of common equity in Reorganized Wellpath representing 97% of the issued and outstanding New Class A Common Equity, subject to dilution on account of any MIP Interests and (b) the New Preferred Equity.

75. "*Estate*" means as to each Debtor, the estate created for such Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of such Debtor's Chapter 11 Case and all property (as defined in section 541 of the Bankruptcy Code) acquired by such Debtor after the Petition Date and before the Effective Date.

76. "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) the Committee; and (c) the Independent Directors.

13

77.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

78.    "*Existing Parent Interests*" means, collectively, all Interests in Wellpath Parent outstanding immediately prior to the Effective Date.

79.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

80.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

81.    "*Final DIP Order*" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Use Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to the Prepetition Secured Parties; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 388].

82.    "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter that has not been reversed, stayed, modified, or amended, as entered on the docket in any Chapter 11 Case or the docket of any other court of competent jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order will not preclude such order from being a Final Order.

83.    "*Financing Order*" means any order entered in the Chapter 11 Cases approving the DIP Facility or the use of cash collateral, including the Interim DIP Order and the Final DIP Order.

84.    "*First Lien Agent*" means UBS, in its capacity as the administrative agent and the collateral agent for the First Lien Lenders under the First Lien Documents and any successor agents thereunder.

85.    "*First Lien Claim*" means any Claims on account of the First Lien Loans or related to, arising out of, or arising under or in connection with the First Lien Documents, including approximately $534,096,041 in principal amount, which consists of (a) approximately $472,500,000 in principal amount of term loans advanced under the First Lien Credit Agreement and (b) approximately $61,596,041 in principal amount of revolving loans advanced under the First Lien Credit Agreement, plus accrued and unpaid interest and all other fees, costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, additional interest, any other Obligations (as defined in the First Lien Credit Agreement), and all other

14

obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable under the First Lien Documents.

86.     "*First Lien Collateral*" means collateral securing the First Lien Claims pursuant to the First Lien Documents.

87.     "*First Lien Credit Agreement*" means that certain First Lien Credit Agreement, dated as of October 1, 2018 (as may be amended, restated, amended and restated, modified or supplemented from time to time), by and among Wellpath Holdings, Inc. (f/k/a CCS-CMGC Holdings, Inc.), as borrower, CCS-CMGC Intermediate Holdings, Inc., as holdings, the other Credit Parties (as defined in the First Lien Credit Agreement) from time to time party thereto, UBS (as successor to UBS AG, Cayman Islands Branch and Credit Suisse AG, Cayman Islands Branch), as the administrative agent and UBS (as successor to Credit Suisse AG, Cayman Islands Branch) as collateral agent, and the lenders from time to time party thereto.

88.     "*First Lien Deficiency Claim*" means any First Lien Claim that is not a Secured Claim.

89.     "*First Lien Documents*" means the First Lien Credit Agreement, collectively with any other agreements, documents, instruments, and amendments related thereto, including any guaranty agreements, pledge and collateral agreements, UCC financing statements, or other perfection documents, subordination agreements, fee letters, and any other security agreements executed or delivered in connection therewith, each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

90.     "*First Lien Lenders*" means the Holders of First Lien Loans.

91.     "*First Lien Secured Claim*" means any First Lien Claim that is a Secured Claim.

92.     "*First Lien Loans*" means the loans made pursuant to the First Lien Credit Agreement.

93.     "*Fronting Lender*" means UBS, in its capacity as fronting lender pursuant to the Commitment Letter.

94.     "*General Unsecured Claim*" means any Claim against any of the Debtors that is not:  (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) an Administrative Claim; (c) an Other Secured Claim; (d) an Other Priority Claim; (e) a First Lien Claim; (f) a DIP Claim; (g) a Second Lien Claim; (h) a First Lien Deficiency Claim; (i) a Second Lien Deficiency Claim; (j) an Intercompany Claim; or (k) a Section 510(b) Claim.

95.     "*Global Settlement Term Sheet*" means that certain term sheet entered into between the Debtors, Ad Hoc Group, and Committee settling the Committee's opposition to the Plan and the H.I.G Settlement Motion in exchange for, among other things, amendments to the Plan and Plan Supplement as specified therein.

96.     "*Go-Forward Causes of Action*" means any of the Debtors' or Estates' Causes of Action against a Person or an Entity that the Post-Restructuring Debtors, with the consent of the

15

Required Consenting First Lien Lenders, identify in writing to the Liquidating Trust, within 75 days of the Effective Date, as satisfying the following criteria: (a) those Persons and Entities that (i) have provided goods or services to the Corrections Business prior to the Petition Date, (ii) will provide goods or services to the Post-Restructuring Debtors after the Effective Date, and (b) if the Cause of Action is valued, or in a nominal amount, in excess of $74,999, solely with respect to such Cause(s) of Action, (i) prosecution of the Cause of Action would have a material adverse impact on the Reorganized Debtors and (ii) the goods or services provided by such Person or Entity could not be commercially reasonably substituted. The Liquidating Trust shall have the right to dispute whether any listed Person or Entity that is identified by the Post-Restructuring Debtors after the Effective Date satisfies the foregoing criteria by transmitting a written notice, in accordance with Article XIII.G hereof, to the Post-Restructuring Debtors of such dispute. To the extent that the Liquidating Trust and the Post-Restructuring Debtors are not able to resolve such dispute consensually within 30 days of transmission of such written notice, the parties agree that the Bankruptcy Court shall have jurisdiction to adjudicate such dispute.

97. "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, special committee, or such similar governing body of any of the Debtors or the Post-Restructuring Debtors, as applicable.

98. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

99. "*Governmental Unit Bar Date*" means the date by which Proofs of Claim must be Filed with respect to Claims held by Governmental Units.

100. "*H.I.G. Causes of Actions*" means any and all Debtors' or Estates' Claims and Causes of Action against the H.I.G. Releasees.

101. "*H.I.G. Final Settlement Funds*" means the final payment under the H.I.G. Settlement Agreement in the amount of $2,850,000, which will be placed into a designated trust account on April 28, 2025 and disbursed to the Liquidating Trust from the designated trust account upon the occurrence of each of the following: (a) entry of a Final Order approving the H.I.G. Settlement Motion; (b) entry of the Confirmation Order; and (c) the occurrence of the Effective Date.

102. "*H.I.G. Initial Payment*" means the non-refundable initial payment of $150,000 paid to the Debtors upon execution of the H.I.G. Settlement Agreement.

103. "*H.I.G. Releasees*" means H.I.G. Advantage Buyout Fund, L.P., H.I.G. CCS-CMGC, L.P., H.I.G. Capital, LLC, their respective affiliates who provided management or other services to the Debtors, and their respective personnel who have served as directors and/or officers of the Debtors.

104. "*H.I.G. Settlement Agreement*" means that certain settlement agreement among the Debtors and the H.I.G. Releasees, as may be amended, modified, or supplemented.

105. "*H.I.G. Settlement Motion*" means the *Motion of the Debtors for Entry of Order (I) Authorizing and Approving the Settlement Agreement with H.I.G. Capital, LLC Under*

16

*Bankruptcy Rule 9019, and (II) Granting Related Relief* [Docket No. 2157], as may be supplemented, modified, or amended, seeking approval of the H.I.G. Settlement Agreement.

106. "*H.I.G. Settlement Order*" means an order of the Bankruptcy Court granting the H.I.G. Settlement Motion.

107. "*Holder*" means an Entity holding a Claim against or an Interest in a Debtor, as applicable.

108. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

109. "*Independent Directors*" means, solely in their capacities as independent directors on the applicable board of directors or board of managers of the Debtors or TopCo Debtors, (a) Carol Flaton and (b) Patrick Bartels.

110. "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor arising before the Petition Date.

111. "*Intercompany Interest*" means any Interest held by a Debtor in another Debtor.

112. "*Interests*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, and including all common stock, preferred stock, limited partner interests, general partner interests, limited liability company interests, and any other equity, ownership, beneficial or profits interests in any of the Debtors, whether or not transferable, and options, warrants, rights, or other securities, agreements or interests to acquire or subscribe for, or which are exercisable, convertible or exchangeable into or for the shares (or any class thereof) of, common stock, preferred stock, limited partner interests, general partner interests, limited liability company interests, or other equity, ownership, beneficial or profits interests in or of any Debtor, contractual or otherwise, including equity or equity-based incentives, grants or other instruments issued, granted or promised to be granted to current or former employees, directors, officers or contractors of the Debtors (in each case whether or not arising under or in connection with any employment agreement).

113. "*Interim DIP Order*" means the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, and (B) Use Cash Collateral; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Granting Adequate Protection to the Prepetition Secured Parties; (IV) Modifying the Automatic Stay; (V) Scheduling Final Hearing; and (VI) Granting Related Relief* [Docket No. 244].

114. "*Internal Revenue Service*" means the United States Internal Revenue Service.

115. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time, and as applicable to the Chapter 11 Cases.

116. "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly

17

adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

117.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

118.    "*Lift Stay Motion*" means any motion seeking to lift or seeking relief from the automatic stay Filed in the Chapter 11 Cases to prosecute professional liability claims on or prior to the Plan Objection Deadline.

119.    "*Liquidating Trust*" means the trust established on the Effective Date, which shall be funded with the Liquidating Trust Assets to, among other things, hold the Liquidating Trust Assets and make Plan Distributions to Holders of Allowed Trust Claims as set forth in this Plan.

120.    "*Liquidating Trust Agreement*" means that certain trust agreement establishing the Liquidating Trust, by and among the Debtors and the Liquidating Trustee, in form and substance reasonably acceptable to the Required Consenting First Lien Lenders and the Committee, setting forth, among other things, the Liquidating Trustee's rights, powers, and obligations with respect to the administration of the Liquidating Trust Assets and making Plan Distributions, all of which shall be consistent with the applicable provisions of the Plan.

121.    "*Liquidating Trust Assets*" means all assets of the Estates to be distributed to Holders of Allowed Trust Claims by the Liquidating Trustee as set forth in this Plan, which shall consist of the Liquidating Trust Causes of Action, the Liquidating Trust Takeback Debt, the New Class B Common Equity, the Liquidating Trust Initial Funding, the Liquidating Trust H.I.G. Funding or H.I.G. Causes of Action (as applicable), the Liquidating Trust Subsequent Funding, and any other assets transferred to the Liquidating Trust, each solely as of the time that such assets are transferred to the Liquidating Trust.

122.    "*Liquidating Trust Advisory Board*" means the seven member board appointed to govern the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and shall be identified and disclosed in the Plan Supplement, whose members shall be appointed as follows: (a) five members by the Committee, with the consent (not to be unreasonably withheld) of the Ad Hoc Group and (b) two members by the Ad Hoc Group with consent (not to be unreasonably withheld) by the Committee.

123.    "*Liquidating Trust Causes of Action*" means all of the Debtors' or the Estates' Claims or Causes of Action that are not (a) released or waived pursuant to the Plan, (b) listed on the Schedule of the Retained Causes of Action, or (c) Go-Forward Causes of Action, which Liquidating Trust Causes of Action shall be transferred to, and vest in, the Liquidating Trust; *provided*, that, with respect to Liquidating Trust Causes of Action asserted against any Non-Continuing D&O, the Liquidating Trust's ability to seek to collect or recover from such Non-Continuing D&Os shall be governed by the terms of the Liquidating Trust Documents, including that (y) the Liquidating Trust shall first look to the proceeds of any D&O Liability Insurance Policies to satisfy any recovery on account of any Liquidating Trust Causes of Action against any Non-Continuing D&O and (z) such individuals shall have the full protections of any such policies to the extent provided by such policies. For the avoidance of doubt, the Liquidating Trust Causes of Action shall include at least those Claims and Causes of Action on the Schedule of Liquidating

18

Trust Causes of Action, but shall not include (a) any Cause of Action against an Exculpated Party, (b) if the H.I.G. Settlement Motion has been granted pursuant to a Final Order, the H.I.G. Causes of Action, (c) any Cause of Action against any officer, director, manager, or employee of any Debtor to the extent that such officer, director, manager, or employee serves as an officer, director, manager, or employee of a Post-Restructuring Debtor for a period of at least 60 days following the Effective Date, (d) any Cause of Action against any of the Independent Directors, (e) any Cause of Action that has been acquired by the Recovery Solutions Purchaser pursuant to the Recovery Solutions Stalking Horse Agreement, or (f) any Cause of Action that has been acquired by the NBH Purchaser pursuant to the NBH Purchase Agreement.

124. "*Liquidating Trust Documents*" means the Liquidating Trust Agreement and all exhibits thereto and any ancillary documents in connection therewith, including the Trust Distribution Procedures (as defined in the Liquidating Trust Agreement).

125. "*Liquidating Trust H.I.G. Funding*" means, in the event that the H.I.G. Settlement Motion is approved by the Bankruptcy Court, the Cash proceeds in the aggregate amount of $3,000,000 of the settlement received from the H.I.G. Releasees, comprised of the H.I.G. Initial Payment and H.I.G. Final Settlement Funds, to be contributed by the Post-Restructuring Debtors and/or H.I.G. Releasees, as applicable, to the Liquidating Trust.

126. "*Liquidating Trust Initial Funding*" means Cash in the amount of $7,500,000 to be contributed by the Post-Restructuring Debtors to the Liquidating Trust on the Effective Date, which shall be allocated for any purpose determined by the Liquidating Trustee in accordance with the Liquidating Trust Agreement, including distributions to Holders of Allowed Claims.

127. "*Liquidating Trust Subsequent Funding*" means Cash in the amount of $5,000,000, of which (a) $2,000,000 shall be contributed by the Post-Restructuring Debtors to the Liquidating Trust on the first Business Day on or after the first anniversary of the Effective Date, (b) $2,000,000 shall be contributed by the Post-Restructuring Debtors to the Liquidating Trust on the first Business Day on or after the second anniversary of the Effective Date, and (c) $1,000,000 shall be contributed by the Post-Restructuring Debtors to the Liquidating Trust on the first Business Day on or after the third anniversary of the Effective Date, which shall be allocated for any purpose determined by the Liquidating Trustee in accordance with the Liquidating Trust Agreement, including distributions to Holders of Allowed Claims.

128. "*Liquidating Trust Takeback Debt*" shall mean $10,000,000 in principal amount of the Takeback Facility, which shall be contributed to the Liquidating Trust.

129. "*Liquidating Trustee*" means the Person or Persons selected by the Committee, with the consent (not to be unreasonably withheld) of the Required Consenting First Lien Lenders, that is identified in the Plan Supplement to serve as the trustee(s) of the Liquidating Trust, and any successor thereto.

130. "*Management Incentive Plan*" means a management incentive plan to be adopted by the New Board as soon as reasonably practicable following the Effective Date with the terms and conditions (including any and all awards granted thereunder) determined by the New Board,

including, without limitation, with respect to the participants, allocation, timing, and the form, structure, and extent of issuance and vesting.

131. "*MIP Interests*" means up to ten percent (10%) of the New Common Equity (on a fully-diluted basis and assuming any MIP Interests granted pursuant to the Management Incentive Plan have been fully distributed and are outstanding), as of the Effective Date, reserved for issuance to participants under the Management Incentive Plan in accordance with the terms thereof.

132. "*NBH Business*" means the Debtors' business of treating neurobehavioral conditions, such as ADHD, anxiety, obsessive-compulsive disorder, and other neurologic, psychiatric, and mental disorders that was operated by the NBH Debtors.

133. "*NBH Debtors*" means (a) Debtor 901 45th Street West Palm Beach Florida Behavioral Health Hospital Company, LLC and (b) Debtor Boynton Beach Florida Behavioral Health Hospital Company, LLC.

134. "*NBH Purchaser*" means the purchaser of the NBH Business pursuant to the NBH Sale Order.

135. "*NBH Purchase Agreement*" means that certain Amended and Restated Asset and Equity Purchase Agreement, dated as of April 15, 2025, between Debtor Wellpath, LLC, the NBH Debtors, and the NBH Purchaser approved pursuant to NBH Sale Order.

136. "*NBH Sale Order*" means the Order (I) Approving the Private Sale of Certain of the Debtors' Assets and Equity Interests Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (III) Dismissing the Chapter 11 Cases of the NBH Sellers, and (IV) Granting Related Relief [Docket No. 2285].

137. "*New Board*" means the initial board of directors, board of managers, or comparable governing body of Reorganized Wellpath, on and after the Effective Date.

138. "*New Class A Common Equity*" means the common equity interests in Reorganized Wellpath issued to (a) the Equity Financing Participants and (b) Holders of Allowed First Lien Secured Claims, in each case, in accordance with the terms hereof, which shall represent 66.67% of the issued and outstanding New Common Equity as of the Effective Date, subject to dilution on account of any MIP Interests.

139. "*New Class B Common Equity*" means the common equity interests in Reorganized Wellpath issued to the Liquidating Trust in accordance with the terms hereof, which shall represent 33.33% of the issued and outstanding New Common Equity as of the Effective Date, subject to dilution on account of any MIP Interests.

140. "*New Common Equity*" means, collectively, the New Class A Common Equity and the New Class B Common Equity.

141. "*New Organizational Documents*" means the governance documents for each of the Post-Restructuring Debtors, which documents shall be acceptable to the Required Consenting First Lien Lenders and reasonably acceptable to the Committee and the Debtors.

142. "*New Preferred Equity*" means the series A preferred equity interests to be issued by Reorganized Wellpath on the Effective Date.

143. "*Non-Continuing D&O*" means, other than the Independent Directors, any current or former officer, director, or manager of any Debtor to the extent that such officer, director, or manager does not serve as an officer, director, manager, or employee of a Post-Restructuring Debtor for a period of at least 60 days following the Effective Date.

144. "*Opt Out Form*" means the form by which all Holders of Claims against the Debtors or Interests may voluntarily opt out from becoming a Releasing Party by checking the applicable box on such form.

145. "*Other Priority Claim*" means any Claim against any of the Debtors other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

146. "*Other Secured Claims*" means any Secured Claim other than a Secured Tax Claim, a First Lien Claim, or a Second Lien Claim.

147. "*Per Share Purchase Price*" means a price per share based on the number of units of New Class A Common Equity to be issued on the Effective Date divided by the Equity Financing Amount, which shall be determined by the Required Consenting First Lien Lenders and the Debtors prior to the Effective Date.

148. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

149. "*Petition Date*" means November 11, 2024.

150. "*Plan*" means this joint chapter 11 plan of reorganization, the Plan Supplement, and all exhibits and schedules annexed hereto or referenced herein, in each case, as may be amended, supplemented, or otherwise modified from time to time in accordance with the Bankruptcy Code, the Restructuring Support Agreement, and the terms hereof.

151. "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims under this Plan.

152. "*Plan Objection Deadline*" means the date established by the Bankruptcy Court for the deadline to File objections to the Confirmation of the Plan.

153. "*Plan Supplement*" means the compilation of documents and forms of documents, term sheets, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed prior to the Confirmation Hearing to the extent available, and any additional documents Filed prior to

the Effective Date as amendments to the Plan Supplement, including the following, as applicable: (a) the New Organizational Documents; (b) to the extent known, the identities of the members of the New Board and the officers of Reorganized Wellpath; (c) the Equity Financing Documents; (d) the Takeback Facility Credit Agreement; (e) the Rejected Executory Contracts and Unexpired Leases Schedule; (f) the Schedule of Retained Causes of Action; (g) the Schedule of Liquidating Trust Causes of Action; (h) the Restructuring Transactions Memorandum; (i) the Liquidating Trust Documents; and (j) to the extent known, the identities of the Liquidating Trustee and members of the Liquidating Trust Advisory Board. The Debtors shall have the right to alter, amend, modify, or supplement the documents contained in the Plan Supplement up to the Effective Date as set forth in this Plan, subject to the approval rights of the Required Consenting First Lien Lenders set forth in the Restructuring Support Agreement and the approval rights of the Committee as set forth herein.

154. "*Post-Restructuring Debtor*" means any Debtor, or any successor thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date, including Reorganized Wellpath.

155. "*Preferred Liquidation Preference*" means $63,250,000 *plus* the dollar value of the aggregate Preferred Return accrued and unpaid in respect of the Series A Preferred Interests, *minus* the aggregate amount distributed to the Members (as defined in the New Organizational Documents) on account of the New Preferred Equity pursuant to the New Organizational Documents.

156. "*Preferred Return*" means a cumulative annual return payable in cash or in kind, at the election of Reorganized Wellpath, accruing from and after the Effective Date at the rate of 13.0% per annum, on the then-current aggregate Preferred Liquidation Preference and all previously accrued and unpaid distributions thereon, compounded semi-annually on June 30 and December 31 of each year. The Preferred Return shall increase the Preferred Liquidation Preference with respect to each New Preferred Equity interest by the appropriate corresponding amount.

157. "*Prepetition Agents*" means the First Lien Agent and the Second Lien Agent.

158. "*Prepetition Debt Documents*" means the First Lien Debt Documents and the Second Lien Debt Documents.

159. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

160. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

161. "*Pro Se Objection*" means any letter or other document Filed by a *pro se* Person objecting to any aspect of the Chapter 11 Cases on or prior to the Plan Objection Deadline.

22

162. "*Professional*" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code. For the avoidance of doubt, "Professionals" does not include the Ad Hoc Group Advisors.

163. "*Professional Corporation*" shall have the meaning ascribed to such term in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Honor and Incur Obligations to Professional Corporations and (B) Obtain New Professional Corporation Contracts, (II) Extending Statutory Protections to Professional Corporations, and (III) Granting Related Relief* [Docket No. 15].

164. "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors as set forth in Article II.C of this Plan.

165. "*Professional Fee Claim*" any Claim by a Professional for compensation for services rendered or reimbursement of expenses incurred by such Professional on or after the Petition Date through and including the Confirmation Date under sections 328, 330, 331, 503(b)(2), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (including transaction and success fees) to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

166. "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

167. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the Claims Bar Date, the Governmental Unit Bar Date, or the Administrative Claims Bar Date, as applicable.

168. "*Recovery Solutions Business*" means the Debtors' business of (a) providing inpatient behavioral health services outside of correctional facilities, including inpatient and residential treatment, partial hospitalization and outpatient programs, and community-based services on behalf of Governmental Authorities, and (b) providing behavioral health and/or substance use disorder services inside correctional facilities to the extent such services are paid by or on behalf of local or state mental health departments and result solely from an involuntary treatment order related to a behavioral health and/or substance use disorder diagnosis.

169. "*Recovery Solutions Debtors*" means, collectively, (a) Wellpath Recovery Solutions, LLC, (b) Correct Care of South Carolina, LLC, (c) Harborview Center, LLC, and (d) Behavioral Health Management Systems, LLC.

170. "*Recovery Solutions Purchaser*" means the purchaser of the Recovery Solutions Business pursuant to the Recovery Solutions Sale Order.

23

171. "*Recovery Solutions Sale Order*" means the *Order (A) Approving the Sale of Certain of the Debtors' Assets and Certain Equity Interests Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, (C) Dismissing the Chapter 11 Cases of the Acquired Recovery Solutions Debtors, and (D) Granting Related Relief* [Docket No. 1040].

172. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall not be discharged hereunder and the holder's legal, equitable, and contractual rights on account of such Claim or Interest shall remain unaltered by Consummation in accordance with section 1124(1) of the Bankruptcy Code.

173. "*Rejected Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

174. "*Related Fund*" means, with respect to any Person, any fund, account or investment vehicle that is controlled, advised or managed by (a) such Person, (b) an Affiliate of such Person or (c) the same investment manager, advisor or subadvisor that controls, advises or manages such Person or an Affiliate of such investment manager, advisor or subadvisor.

175. "*Related Party*" means to the fullest extent permitted by law, with respect to any Entity, such Entity's predecessors, successors, assigns, and Affiliates (whether by operation of Law or otherwise) and subsidiaries, and each of their respective Related Funds, managed accounts or funds or investment vehicles, and each of, and in each case in their capacity as such, their respective current and former equity holders (regardless of whether such Interests are held directly or indirectly), officers, directors, managers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, equity sponsors, investment managers, fund advisors, direct and indirect parent Entities, direct and indirect investors, direct and indirect equity participants, "controlling persons" (within the meaning of the federal securities law), heirs, administrators and executors, and other professionals, in each case acting in such capacity whether current or former, including in their capacity as directors, as applicable; *provided*, that, for the avoidance of doubt, the Professional Corporations and their respective owners and employees shall not be deemed Related Parties.

176. "*Release Objectors*" means the Objectors, as defined in the *Objection of Kristin Allred, Victoria Klein, and Mike Doyle to Approval of the Disclosure Statement for the Joint Chapter 11 Plan of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates* [Docket No. 1411].

177. "*Released Parties*" means, each of, and in each case in its capacity as such: (a) each Debtor, (b) the TopCo Debtors, (c) each Post-Restructuring Debtor, (d) the Consenting Stakeholders, (e) Reorganized Wellpath, (f) the DIP Lenders, (g) the DIP Agent, (h) the First Lien Agent, (i) the Second Lien Agent, (j) the Fronting Lender, (k) each Holder of Interests, (l) each First Lien Lender that is not a Consenting First Lien Lender and that does not elect to opt out of the releases in the Plan, (m) each Second Lien Lender that is not a Consenting Second Lien Lender and that does not elect to opt out of the releases in the Plan, (n) solely for purposes of Article IX.D, each Holder of a Claim entitled to elect to opt out of the Third-Party Release that does not elect to

24

opt out of or object to the Third-Party Release, (o) the Related Parties of each of the foregoing Entities in clauses (a) through (n) of this definition to the fullest extent permitted by law other than any such Related Party that elects to opt out of the Releases in the Plan; *provided*, *however*, the Release Objectors and any other Person that either elects to opt out of or objects to the releases in Article IX hereof shall not be deemed Released Parties; *provided, further*, that, notwithstanding anything to the contrary in the Plan (i) the Professional Corporations shall not be Released Parties, and (ii) the H.I.G. Releasees shall not be Released Parties unless and until the H.I.G. Settlement Motion is approved by Final Order, in which case the H.I.G. Releasees shall be Released Parties.

178.    "*Releasing Parties*" means, each of, and in each case in its capacity as such:  (a) the Consenting Stakeholders, (b)  the DIP Lenders, (c) the DIP Agent, (d) the First Lien Agent, (e) the Second Lien Agent, (f) the Fronting Lender, (g) each Holder of Interests, (h) each First Lien Lender that is not a Consenting First Lien Lender and that does not elect to opt out of the releases in the Plan, (i) each Second Lien Lender that is not a Consenting Second Lien Lender and that does not elect to opt out of the releases in the Plan, (j) the H.I.G. Releasees (solely to the extent that the H.I.G. Settlement Motion is approved by Final Order), (k) each Holder of a Claim entitled to vote to accept or reject the Plan that does not affirmatively elect to opt out of being a Releasing Party by (i) checking the appropriate box on such Holder's timely and properly submitted Ballot to indicate that such Holder elects to opt out of the Plan's release provisions or (ii) timely filing an objection to the Plan's release provisions, (l)  each Holder of a Claim that is or was an incarcerated individual that does not affirmatively elect to opt out of being a Releasing Party by delivering such election (by checking the appropriate box on such incarcerated individual's Ballot, or by another means of written communication, to indicate that such incarcerated individual elects to opt out of the Plan's release provisions) to the Debtors, the Claims and Solicitation Agent, or the Bankruptcy Court by no later than 90 days after the Confirmation Date, (m) each Holder of a Claim or Interest in a nonvoting Class, or is otherwise not entitled to vote on the Plan, that does not affirmatively elect to opt out of being a Releasing Party by (i) checking the appropriate box on such Holder's timely and properly submitted Opt-Out Form to indicate that such Holder elects to opt out of the Plan's release provision or (ii) timely filing an objection to the Plan's release provisions, and (p) the Related Parties of each of the foregoing Entities in clauses (a) through (j) of this definition to the fullest extent permitted by law and solely to the extent that such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an entity in clauses (a) through (j) or would be obligated to grant a release under the principles of agency; *provided, however*, that the Release Objectors and any Holder of a Claim or Interest that Filed a Lift Stay Motion, an Automatic Stay Objection, or a Pro Se Objection in these Chapter 11 Cases shall not be deemed a Releasing Party; *provided*, *further*, that, for the avoidance of doubt, in no case shall a minor or an incompetent Person (each as defined under applicable state law) be deemed a Releasing Party; *provided, further*, *however*, that the Professional Corporations shall not be Releasing Parties.

179.    "*Reorganized Wellpath*" means (a) Wellpath Parent, as reorganized on the Effective Date pursuant to the Definitive Documents or (b) a newly formed entity that will, directly or indirectly, own 100% of the Interests in the Post-Restructuring Debtors upon the Effective Date.  For the avoidance of doubt, Reorganized Wellpath shall not include the Recovery Solutions Business or the NBH Business.

180. "*Required Consenting First Lien Lenders*" shall have the meaning set forth in the Restructuring Support Agreement.

181. "*Restructuring Expenses*" means the reasonable and documented prepetition and post-petition fees and out-of-pocket expenses incurred by the Ad Hoc Group Advisors in accordance with the Financing Order, the Restructuring Support Agreement, and the Recovery Solutions Sale Order, which, without further order of, or application to, the Bankruptcy Court by such professionals, including the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases, shall be Allowed as an Administrative Claim upon occurrence and shall not be subject to any offset, defense, counter-claim, reduction, or credit.

182. "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of November 11, 2024, by and among the Debtors, the Backstop Parties, the Consenting First Lien Lenders, and the Consenting Second Lien Lenders (as may be amended, supplemented, or modified from time to time in accordance with the terms thereof).

183. "*Restructuring Transactions*" means any transaction, reorganizations, restructurings, and actions as may be necessary or appropriate to effect a restructuring of the Debtors' respective businesses or a corporate restructuring of the overall corporate structure of the Debtors on the terms set forth in this Plan and in accordance with the Restructuring Transactions Memorandum, the issuance of all Securities, notes, instruments, certificates, and other documents required to be issued or executed pursuant to the Plan, one or more inter-company mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, or other corporate transactions, as described in Article IV.

184. "*Restructuring Transactions Memorandum*" means the summary of transaction steps to complete the Restructuring Transactions, which shall be included in the Plan Supplement.

185. "*Retained Causes of Action*" shall have the meaning given to such term in Article IV.L.

186. "*Schedule of Liquidating Trust Causes of Action*" means the schedule, which shall be in form and substance acceptable to the Required Consenting First Lien Lenders, the Debtors and the Committee, of certain, but not all, of the Liquidating Trust Causes of Action.

187. "*Schedule of Retained Causes of Action*" means the schedule, which shall be in form and substance acceptable to the Required Consenting First Lien Lenders, the Debtors, and the Committee, of the Retained Causes of Action as determined by the Required Consenting First Lien Lenders.

188. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto.

189. "*SEC*" means the U.S. Securities and Exchange Commission.

26

190. "*Second Lien Agent*" means UBS, in its capacity as the administrative agent and the collateral agent for the Second Lien Lenders under the Second Lien Documents and any successor agents thereunder.

191. "*Second Lien Claim*" means any Claims on account of the Second Lien Loans or related to, arising out of, or arising under or in connection with, the Second Lien Documents, including approximately $110,000,000 in principal amount, plus accrued and unpaid interest and all other fees, costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, additional interest, any other Obligations (as defined in the Second Lien Credit Agreement), and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable under the Second Lien Documents.

192. "*Second Lien Credit Agreement*" means that certain Second Lien Credit Agreement, dated as of October 1, 2018 (as may be amended, restated, amended and restated, modified or supplemented from time to time), by and among Wellpath Holdings, Inc. (f/k/a CCS-CMGC Holdings, Inc.), as borrower, CCS-CMGC Intermediate Holdings, Inc., as holdings, the other Credit Parties (as defined in the Second Lien Credit Agreement) party thereto, UBS (as successor to UBS AG, Cayman Islands Branch and Credit Suisse AG, Cayman Islands Branch), as the administrative agent and UBS (as successor to Credit Suisse AG, Cayman Islands Branch) as collateral agent, and the lenders from time to time party thereto.

193. "*Second Lien Deficiency Claim*" means any Second Lien Claim that is not a Secured Claim.

194. "*Second Lien Documents*" means the Second Lien Credit Agreement, collectively with any other agreements, documents, instruments, and amendments related thereto, including any guaranty agreements, pledge and collateral agreements, UCC financing statements, or other perfection documents, subordination agreements, fee letters, and any other security agreements executed or delivered in connection therewith, each as amended, restated, amended and restated, supplemented, or otherwise modified from time to time.

195. "*Second Lien Lenders*" means the Holders of Second Lien Loans.

196. "*Second Lien Loans*" means the loans made pursuant to the Second Lien Credit Agreement.

197. "*Section 510(b) Claim*" means any Claim against a Debtor subject to subordination under section 510(b) of the Bankruptcy Code, whether by operation of law or contract.

198. "*Secured Claim*" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of the amount subject to setoff.

199. "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

200. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

201. "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

202. "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax, privilege taxes, and other similar taxes imposed or assessed by any Governmental Unit.

203. "*Takeback Facility*" means the credit facility provided for under the Takeback Facility Credit Agreement.

204. "*Takeback Facility Credit Agreement*" means the definitive credit agreement governing the Takeback Facility.

205. "*Takeback Facility Documents*" means the Takeback Facility Credit Agreement and any and all security documents or other documents related thereto.

206. "*Term Sheets*" means the term sheets attached as exhibits to the Restructuring Support Agreement.

207. "*Third-Party Release*" means the release set forth in Article IX.D of the Plan.

208. "*TopCo Debtors*" means CCS-CMGC Parent GP, LLC and CCS-CMGC Parent Holdings, LP.

209. "*Trust Claims*" means Second Lien Deficiency Claims in Class 5 and General Unsecured Claims in Class 6.

210. "*UBS*" means UBS AG, Stamford Branch.

211. "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

212. "*Unimpaired*" means with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

213. "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

214. "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

215. "*Wellpath Parent*" means CCS-CMGC Intermediate Holdings 2, Inc., prior to the Effective Date.

B.    *Rules of Interpretation.*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan, Restructuring Support Agreement, or Confirmation Order, as applicable; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (15) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (16) any immaterial effectuating provisions may be interpreted by the Post-Restructuring Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (17) all references herein to consent, acceptance, or approval may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (18) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws.

Notwithstanding anything herein to the contrary, any and all information, notice, and consent rights of the Consenting Stakeholders set forth in the Restructuring Support Agreement (including the exhibits thereto) and the Financing Orders with respect to the form and substance of this Plan, all exhibits to the Plan, and the Plan Supplement, and all other Definitive Documents,

including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, are incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and fully enforceable as if stated in full herein. For the avoidance of doubt, and notwithstanding anything to the contrary set forth herein or in the Restructuring Support Agreement, such consent rights shall not apply following Consummation of this Plan.

The absence in this Plan of references to any and all information, notice, and consent rights of the Consenting Stakeholders set forth in the Restructuring Support Agreement (including the exhibits thereto) with respect to the form and substance of this Plan, all exhibits to the Plan, and the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents as such rights relate to any document referenced in the Restructuring Support Agreement shall not impair, modify, or negate such rights.

Solely with respect to any information, notice, or consent rights in the Plan, in the event of any inconsistency between the Plan and the Restructuring Support Agreement, the terms of the Restructuring Support Agreement shall control.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that governance matters relating to the Debtors or the Post-Restructuring Debtors, as applicable, not incorporated or formed under New York law

30

shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Post-Restructuring Debtor, as applicable.

E.     *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.     *Reference to the Debtors or the Post-Restructuring Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Post-Restructuring Debtors shall mean the Debtors and the Post-Restructuring Debtors, as applicable, to the extent the context requires.

G.     *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, including the Plan Supplement, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS,
## PROFESSIONAL FEE CLAIMS, AND PRIORITY CLAIMS,

In accordance with section 1123(a)(1) of the Bankruptcy Code, Allowed Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.     *Administrative Claims.*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Post-Restructuring Debtors, as applicable, and with respect to any non-ordinary course Allowed Administrative Claims, or as otherwise provided for under the Plan, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than holders of Professional Fee Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after

31

the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Post-Restructuring Debtors, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except as otherwise provided in this Article II.A of the Plan, and except with respect to Administrative Claims that are Professional Fee Claims, Restructuring Expenses, or Agent Fees, requests for payment of Administrative Claims must be Filed with the Bankruptcy Court and served on the Debtors pursuant to the procedures specified in the Confirmation Order and/or the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Liquidating Trustee, as applicable, or their respective property and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Liquidating Trustee, Debtors or Post-Restructuring Debtors or any notice to or action, order or approval of the Bankruptcy Court or any other Entity.** Objections to such requests, if any, must be Filed with the Bankruptcy Court and served on the Debtors and the requesting party no later than 60 days after the Effective Date. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

B.      *DIP Claims.*

In accordance with the Recovery Solutions Sale Order, (1) effective immediately upon the closing of the sale of the Recovery Solutions Business to the Recovery Solutions Purchaser, (a) the DIP Obligations (as defined in the Final DIP Order) (other than any accrued and unpaid DIP Obligations constituting amounts payable to the DIP Agent (or its advisors) solely for their account in their capacity as such, which were paid to the DIP Agent (or its advisors) in cash upon the closing of the sale of the Recovery Solutions Business or in the ordinary course pursuant to the terms of the Final DIP Order) were deemed satisfied by the consummation of the sale of the Recovery Solutions Business to the Recovery Solutions Purchaser, and (b) all security interests, pledges, and liens of any kind, nature, or description on all equity interests in, and assets and property of, each Debtor granted in favor of the DIP Agent under the DIP Documents were released and terminated, and each Debtor was released from its obligations from the DIP Documents (the "DIP Release"), (2) the DIP Agent and/or the Debtors were authorized, without any further notice to or action, order, or approval of the Bankruptcy Court, to file record, execute and/or deliver UCC termination statements and any further instruments, releases, terminations and documents evidencing the DIP Release, and (3) the Debtors were further authorized to cooperate with and provide general assistance to the DIP Agent, as reasonably requested by the DIP Agent, prior to and after the consummation of the sale of the Recovery Solutions Business with respect to any issues related to effectuating the transactions contemplated by the sale of the Recovery Solutions Business and the Recovery Solutions Sale Order.

C.      *Professional Fee Claims.*

        1.      <u>Final Fee Applications and Payment of Professional Claims.</u>

All final requests for payment of Professional Fee Claims must be Filed no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing (if necessary) in accordance with the procedures established by the Bankruptcy Court. The Post-Restructuring Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account. The Post-Restructuring Debtors will establish the Professional Fee Escrow Account in trust for the Professionals and fund such account with Cash equal to the Professional Fee Amount on the Effective Date.

        2.      <u>Professional Fee Escrow Account.</u>

On the Effective Date, the Post-Restructuring Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount, which shall be funded by the Post-Restructuring Debtors using Cash on hand. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors or the Post-Restructuring Debtors. The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Post-Restructuring Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. When such Allowed Professional Fee Claims have been paid in full, any remaining amount held in the Professional Fee Escrow Account shall promptly be paid to the Post-Restructuring Debtors without any further action or order of the Bankruptcy Court.

        3.      <u>Professional Fee Amount.</u>

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors as soon as reasonably practicable before the anticipated Effective Date, but in no event later than five days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of each Professional's final request for payment in the Chapter 11 Cases. If a Professional does not provide an estimate, the Debtors, Post-Restructuring Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

        4.      <u>Post-Effective Date Fees and Expenses.</u>

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors and, to the extent applicable, the Committee. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date

shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.       *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.       *Restructuring Expenses & Agent Fees.*

Subject to the provisions in Article II.C hereof, on the Effective Date, the Debtors or the Post-Restructuring Debtors shall pay in full in Cash any outstanding Restructuring Expenses and Agent Fees without the requirement for the filing of retention applications, fee applications, or any other applications in the Chapter 11 Cases and without any requirement for further notice or Bankruptcy Court review or approval.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.       *Classification of Claims and Interests.*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest fits within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest fits within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan and making distributions in accordance with the Plan in respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal Person, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Persons, or cause the transfer of any assets.  Except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Persons after the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below.  The Debtors shall be administratively consolidated solely for the purposes of voting on the Plan, tabulating the votes to determine which Class or Classes have accepted the Plan, confirming the Plan, and the resulting treatment of all Claims and Interests and Plan Distributions. All of the potential Classes for the Debtors are set forth herein.

34

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | First Lien Secured Claims | Impaired | Entitled to Vote |
| Class 4 | First Lien Deficiency Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 5 | Second Lien Deficiency Claims | Impaired | Entitled to Vote |
| Class 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class 9 | Existing Parent Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment of Claims and Interests.*

Except to the extent that a Holder of an Allowed Claim or Allowed Interest agrees in writing to less favorable treatment, in exchange for the full and final satisfaction, settlement, release, and discharge of its Claim or Interest, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Claim or Interest becomes an Allowed Claim or an Allowed Interest, as applicable, or as soon as reasonably practicable thereafter.

1.    Class 1 – Other Secured Claims

(a)    *Classification*:  Class 1 consists of all Other Secured Claims.

(b)    *Treatment*:  Each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor or Post-Restructuring Debtor (and in consultation with the Required Consenting First Lien Lenders): (i) payment in full in Cash; (ii) Reinstatement of such Claim; or (iii) such other treatment rendering such Claim Unimpaired.

(c)     *Voting*: Class 1 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.     Class 2 – Other Priority Claims

(a)     *Classification*:  Class 2 consists of all Other Priority Claims.

(b)     *Treatment*:  Each Holder of an Allowed Other Priority Claim shall receive, at the option of the applicable Debtor or Post-Restructuring Debtor, with the consent of the Required Consenting First Lien Lenders, (i) payment in full in Cash; or (ii) such other treatment rendering such Claim Unimpaired.

(c)     *Voting*: Class 2 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.     Class 3 – First Lien Secured Claims

(a)     *Classification*:  Class 3 consists of all First Lien Secured Claims.

(b)     *Allowance*:  The First Lien Secured Claims shall be Allowed in full, in the amount of $276,105,278 plus accrued interest and all other fees, costs, expenses, premiums, and other amounts provided for under the First Lien Credit Agreement, *less* the First Lien Deficiency Claims, without the need to file any Proofs of Claims against the Debtors, and will not be subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any Person or Entity.

(c)     *Treatment*:  Each Holder of an Allowed First Lien Secured Claim shall receive its Pro Rata share of (i) 3% of the New Class A Common Equity, subject to dilution on account of the MIP Interests and (ii) $124,213,836.00 of the Takeback Facility.

(d)     *Voting*: Class 3 is Impaired under the Plan.  Holders of First Lien Secured Claims are entitled to vote to accept or reject the Plan.

4.     Class 4 – First Lien Deficiency Claims

(a)     *Classification*:  Class 4 consists of all First Lien Deficiency Claims.

(b)     *Treatment:*  All First Lien Deficiency Claims shall, by agreement, be waived and deemed discharged and released, and each Holder of a First

Lien Deficiency Claim shall not receive or retain any distribution, property, or other value on account of its First Lien Deficiency Claim.

(c)   *Voting*:  Class 4 is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of First Lien Deficiency Claims are not entitled to vote to accept or reject the Plan.

5.    Class 5 – Second Lien Deficiency Claims

(a)   *Classification*:  Class 5 consists of all Second Lien Deficiency Claims.

(b)   *Allowance*:  The Second Lien Deficiency Claims shall be Allowed in full, in the amount of $115,901,041 plus accrued interest and all other fees, costs, expenses, premiums, and other amounts provided for under the Second Lien Credit Agreement up to the Petition Date, without the need to file any Proofs of Claim against the Debtors, and will not be subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any Person or Entity.

(c)   Treatment:  Each Holder of an Allowed Second Lien Deficiency Claim shall receive its Pro Rata share of the beneficial interests in the Liquidating Trust along with the Holders of Allowed General Unsecured Claims in Class 6. As of the Effective Date, the Debtors' liability for such Claims shall be (i) assumed by the Liquidating Trust without further act, deed, or Court order and (ii) administered and paid from the Liquidating Trust as set forth in the Liquidating Trust Agreement.

(d)   *Voting*:  Class 5 is Impaired under the Plan.  Holders of Second Lien Deficiency Claims are entitled to vote to accept or reject the Plan.

6.    Class 6 – General Unsecured Claims

(a)   *Classification*:  Class 6 consists of all General Unsecured Claims.

(b)   *Treatment*:  Each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the beneficial interests in the Liquidating Trust along with the Holders of Allowed Second Lien Deficiency Claims in Class 5. As of the Effective Date, the Debtors' liability for all General Unsecured Claims shall be (i) assumed by the Liquidating Trust without further act, deed, or Court order and (ii) administered and paid from the Liquidating Trust as set forth in the Liquidating Trust Agreement.

(c)   *Voting*:  Class 6 is Impaired under the Plan.  Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

7.  Class 7 – Intercompany Claims

(a)  *Classification*:  Class 7 consists of all Intercompany Claims.

(b)  *Treatment*:  Subject to the Restructuring Transactions Memorandum, each Allowed Intercompany Claim shall be Reinstated, distributed, contributed, set off, settled, cancelled and released, or otherwise addressed at the option of the Post-Restructuring Debtors or Liquidating Trust, as applicable (with the consent of Required Consenting First Lien Lenders); *provided* that no distributions shall be made on account of any Intercompany Claims.

(c)  *Voting*:  Class 7 is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

8.  Class 8 – Intercompany Interests

(a)  *Classification*:  Class 8 consists of all Intercompany Interests.

(b)  *Treatment*:  Subject to the Restructuring Transactions Memorandum, each Intercompany Interest shall be deemed Reinstated, distributed, contributed, set off, settled, cancelled and released, or otherwise addressed at the option of the Post-Restructuring Debtors or Liquidating Trust, as applicable (with the consent of Required Consenting First Lien Lenders); *provided*, that no distributions shall be made on account of any Intercompany Interests.

(c)  *Voting*:  Class 8 is conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

9.  Class 9 – Existing Parent Interests

(a)  *Classification*:  Class 9 consists of all Existing Parent Interests.

(b)  *Treatment*:  Without the need for any further corporate or limited liability company action or approval of any board of directors, board of managers, members, shareholders or officers of any Debtor or Post-Restructuring Debtor, as applicable, all Existing Parent Interests shall be deemed cancelled, released, and extinguished without any distribution, and will be of no further force or effect, and each Holder of an Existing Parent Interest shall not receive or retain any distribution, property, or other value on account of such Existing Parent Interest.

(c)  *Voting*:  Class 9 is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Existing Parent Interests are not entitled to vote to accept or reject the Plan.

38

10. <u>Class 10 – Section 510(b) Claims</u>

(a) *Classification*: Class 10 consists of all Section 510(b) Claims.

(b) *Treatment*: All Section 510(b) Claims shall be discharged and released, and each Holder of a Section 510(b) Claim shall not receive or retain any distribution, property, or other value on account of its Section 510(b) Claim.

(c) *Voting*: Class 10 is Impaired under the Plan and is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

C. *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing herein shall affect the Debtors', the Post-Restructuring Debtors', or the Liquidating Trust's, as applicable, rights regarding any Unimpaired Claim, including, all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim. Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D. *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E. *Intercompany Interests.*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the holders of New Common Equity, and in exchange for the Debtors', Post-Restructuring Debtors', and Liquidating Trust's, as applicable, agreement under the Plan to make certain distributions to the Holders of Allowed Claims.

F. *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more Classes of Impaired Claims. The Debtors may seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article XI hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the

39

treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

G.     *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

H.     *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Any such contractual, legal, or equitable subordination rights shall be settled, compromised, and released pursuant to the Plan.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.     *General Settlement of Claims and Interests.*

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.

The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates. Subject to Article VI hereof, all Plan Distributions made to Holders of Allowed Claims (as applicable) in any Class are intended to be and shall be final.

B.     *Restructuring Transactions.*

On or before the Effective Date, the Debtors or the Post-Restructuring Debtors and the Liquidating Trustee, as applicable, shall take all applicable actions set forth in the Restructuring Transactions Memorandum and may take any additional action as may be necessary or appropriate to effectuate the Restructuring Transactions, and any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions that are consistent with and pursuant to the terms and conditions of the Plan, Global Settlement Term Sheet, and the

Restructuring Transactions Memorandum, which transactions may include, as applicable: (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and the Restructuring Transactions Memorandum and that satisfy the applicable requirements of applicable law and any other terms to which the applicable parties may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and the Restructuring Transactions Memorandum and having other terms to which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other certificates or documentation pursuant to applicable law; (4) the issuance of the New Common Equity, including pursuant to the Equity Financing; (5) the issuance of the New Preferred Equity in connection with the Equity Financing; (6) the execution and delivery of the Takeback Facility Documents and any filing related thereto; (7) the execution and delivery of the New Organizational Documents of each Post-Restructuring Debtor; (8) the execution and delivery of the Liquidating Trust Agreement and any filing related thereto; (9) the transfer of the Liquidating Trust Assets to the Liquidating Trust, as applicable, and (10) all other actions that the applicable Post-Restructuring Debtors determine to be necessary or advisable, including making filings or recordings that may be required by applicable law in connection with the Plan. All Holders of Claims receiving distributions pursuant to the Plan and all other necessary parties in interest, including any and all agents thereof, shall prepare, execute, and deliver any agreements or documents, including any subscription agreements, and take any other actions as the Debtors determine are necessary or advisable to effectuate the provisions and intent of the Plan.

The Confirmation Order shall and shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions, including, for the avoidance of doubt, any and all actions required to be taken under applicable non-bankruptcy law.

C.    *Administrative Consolidation for Voting and Distribution Purposes Only.*

The Plan is premised on the administrative consolidation of the Debtors solely for the purposes of voting on the Plan, tabulating the votes to determine which Class or Classes have accepted the Plan, confirming the Plan, and the resulting treatment of all Claims and Interests and Plan Distributions, but shall not constitute a transfer of assets or liabilities between Debtors for any other purpose. Each Debtors shall continue to maintain its separate corporate existence for all purposes other than the treatment of Claims and Interests under the Plan. On the Effective Date, and except as otherwise expressly provided in the Plan, solely for voting, tabulation, confirmation, and distribution purposes with respect to each Class of Claims or Interests, (1) all Claims or Interests in each respective Class shall be deemed merged or consolidated and treated as Claims or Interests against the Debtors on a consolidated basis, (2) each Claim or Interest in each respective Class shall be deemed a single Claim against, or Interest in, the consolidated Debtors, (3) any Claim in a given Class based on a guaranty by any Debtors of the obligations of any other Debtors shall be deemed eliminated and extinguished, so that any Claim against any Debtor and

41

any guarantee thereof by any other Debtor, and any joint or several liability of any of the Debtors, shall be deemed to be one obligation of the consolidated Debtors, and (4) each Holder of any Allowed Claim or Interest in a given Class shall be entitled to a single recovery on account of such Claim or Interest, in accordance with the treatment provided under the Plan for such Class, regardless of whether such Holder filed Proofs of Claims against multiple Debtors or has Claims against multiple Debtors based on the same or similar debt.

The Plan's treatment shall not affect (1) any subordination provisions set forth in any agreement relating to any Claim or Interest, (2) the ability of the Post-Restructuring Debtors or the Liquidating Trustee, as applicable, to seek to have any Claim subordinated in accordance with section 510 of the Bankruptcy Code or other applicable law, (3) any aspects, rights, benefits, privileges, liens, security interests, or claims under the New Organizational Documents, Takeback Facility, New Common Equity, New Preferred Equity, or the legal and entity structure of the Debtors or Post-Restructuring Debtors, (4) any obligations under any contracts, licenses, or leases that were entered into during the Chapter 11 Cases or executory contracts or unexpired leases that have been or will be assumed pursuant to this Plan, (5) the vesting of assets in separate Post-Restructuring Debtors pursuant to Article IV.K of this Plan, or (6) guarantees that are required to be maintained after the Effective Date, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any of the Debtors' assets.

D.      *Sources of Consideration for Plan Distributions*

The Debtors shall fund Plan Distributions pursuant to the Restructuring Transactions, as applicable, with (1) the issuance of the New Common Equity, including through the Equity Financing, (2) the issuance of the New Preferred Equity in connection with the Equity Financing, (3) the issuance of the Takeback Facility, (4) the Liquidating Trust Assets, and (5) Cash on hand. Each distribution and issuance referred to in this Article IV shall be governed by the terms and conditions set forth in the Plan or the Liquidating Trust Agreement applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

On the Effective Date, Reorganized Wellpath shall issue the New Common Equity and the New Preferred Equity pursuant to the Equity Financing and the Plan. The issuance of the New Common Equity, including the New Class A Common Equity on account of the Commitment Premium and Backstop Premium, and the New Preferred Equity by the Post-Restructuring Debtors shall be authorized without (1) the need for any further corporate, limited liability company, partnership, or other governance action and without any action by the Holders of Claims, members, managers, directors, or officers of the Debtors or Post-Restructuring Debtors, as applicable, or other parties in interest, (2) notice to or order or other approval of the Bankruptcy Court, (3) act or omission under applicable law, regulation, order, or rule, or (4) vote, consent, authorization, or approval of any Person.

On the Effective Date, and in connection with the Equity Financing, Reorganized Wellpath shall issue to each Equity Financing Participant its Pro Rata share of the Equity Financing Securities in accordance with its allocable share of the Equity Financing Amount. The New

42

Preferred Equity shall have an aggregate liquidation preference equal to the Preferred Liquidation Preference and will rank senior to all New Common Equity. All distributions made by Reorganized Wellpath pursuant to the New Organizational Documents shall first be made Pro Rata to holders of New Preferred Equity until the aggregate Preferred Liquidation Preference is reduced to zero. Until payment of the Liquidating Trust Subsequent Funding in full, no cash distributions shall be made on account of the New Preferred Equity or the New Common Equity, including, without limitation, dividends with respect thereto.

All of the shares (or comparable units) of New Common Equity, including in connection with the Commitment Premium and the Backstop Premium, and the New Preferred Equity issued pursuant to the Equity Financing and the Plan shall be duly authorized, validly issued, fully paid, and non-assessable and deemed not to have been issued in violation of any preemptive rights, rights of first refusal or similar rights or any applicable law. Each distribution and issuance of New Common Equity and the New Preferred Equity shall be governed by the terms and conditions set forth in the Equity Financing Documents or the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than the applicable Post-Restructuring Debtor(s). Any Entity's acceptance of New Common Equity or New Preferred Equity shall be deemed to constitute its agreement to enter into, and the New Common Equity and the New Preferred Equity shall be subject to, the applicable New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their respective terms. Neither the New Common Equity nor the New Preferred Equity will be registered under the Securities Act nor listed on any exchange as of the Effective Date and neither will meet the eligibility requirements of the Depository Trust Company.

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Common Equity (other than the New Class A Common Equity offered in the Equity Financing, the Commitment Premium, and Backstop Premium) on account of the Allowed First Lien Secured Claims and to the Liquidating Trust on account of the Second Lien Deficiency Claims and the General Unsecured Claims, in each case in accordance with the terms of the Plan, shall be exempt from the registration and prospectus delivery requirements of the Securities Act and any other applicable federal, state, or local law requiring registration and/or delivery of prospectuses prior to the offering, issuance, distribution, and sale of a security. In addition, pursuant to section 4(a)(2) of the Securities Act, the offering, issuance, and distribution of Equity Financing Securities is exempt from the registration and prospectus delivery requirements of the Securities Act and any applicable federal, state, or local law requiring registration and/or delivery of prospectuses prior to the offering, issuance, distribution, and sale of a security. Such Equity Financing Securities issued under section 4(a)(2) of the Securities Act will be considered "restricted securities," will bear customary legends and transfer restrictions, and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act.

Confirmation of the Plan shall be deemed approval of (1) the Equity Financing and the Equity Financing Documents and (2) all transactions contemplated thereby, and all actions to be taken and undertakings to be made, and obligations to be incurred by the Post-Restructuring Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and

43

other payments provided for therein and authorization of the Post-Restructuring Debtors to enter into and execute the Equity Financing Documents, and such other documents as may be required to effectuate the Equity Financing.

On the Effective Date, the Post-Restructuring Debtors shall be authorized to execute, deliver, and enter into the Takeback Facility Documents without further (1) notice to or order or other approval of the Bankruptcy Court, (2) act or omission under applicable law, regulation, order, or rule, (3) vote, consent, authorization, or approval of any Person, or (4) action by the Holders of Claims.

Confirmation of the Plan shall be deemed approval of (1) the Takeback Facility and the Takeback Facility Documents and (2) all transactions contemplated thereby, and all actions to be taken and undertakings to be made, and obligations to be incurred by the Post-Restructuring Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the Post-Restructuring Debtors to enter into and execute the Takeback Facility Documents, and such other documents as may be required to effectuate the Takeback Facility.

On the Effective Date, all of the liens and security interests to be granted in accordance with the Takeback Facility Documents, (1) shall be deemed to be granted, (2) shall be legal, binding, and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Takeback Facility Documents, (3) shall be deemed automatically perfected on the Effective Date, subject only to such prior liens and security interests as may be permitted under the Takeback Facility Documents, and (4) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.

E.    *Equity Financing*

On the Effective Date, the Debtors shall consummate the Equity Financing, through which each Equity Financing Participant,  (a) shall be obligated to purchase New Class A Common Equity at the Per Share Purchase Price, subject to the terms and conditions set forth in the Plan and the Commitment Letter, and (b) shall receive its Pro Rata share of the New Preferred Equity in accordance with its allocable share of the Equity Financing Amount, subject to the terms and conditions set forth in the Plan.  Pursuant to the Commitment Letter, certain Equity Financing Participants shall receive their Pro Rata share of $786,164.00 of the Takeback Facility, in addition to the allocation of New Class A Common Equity offered and New Preferred Equity issued in connection with the Equity Financing, as consideration for such Backstop Party's payment of the Per Share Purchase Price.  Each Equity Financing Participant shall receive the Commitment Premium as consideration for providing its allocable share of the Equity Financing Amount.  The Per Share Purchase Price shall be payable in Cash.  On or prior to the Effective Date, the Equity Financing Participants will be required to fund into escrow with a bank, trust company, or other agent approved by the Debtors and the Required Consenting First Lien Lenders an amount equal

44

to the Price Per Share for such Equity Financing Participant's allocable share of the Equity Financing Amount.

The percentage ownership attributable to the New Class A Common Equity offered in the Equity Financing (subject to dilution by the Backstop Premium, Commitment Premium, and any MIP Interests) will be equal to 97% of the New Class A Common Equity.

The Equity Financing shall be backstopped by the Backstop Parties in accordance with the terms and subject to the conditions of the Commitment Letter. Subject to, and in accordance with the Commitment Letter, as consideration for the commitments of the Backstop Parties under the Commitment Letter, the Backstop Parties shall receive the Backstop Premium, which was fully earned upon entry by the Bankruptcy Court of the Final DIP Order, and the Commitment Premium. The commitments of the Backstop Parties under the Commitment Letter are several, not joint, obligations of the Backstop Parties, such that no Backstop Party shall be liable or otherwise responsible for the commitments of any other Backstop Party under the Commitment Letter. Any Backstop Party's rights, obligations or interests under the Commitment Letter may be freely assigned, delegated or transferred, in whole or in part, by such Backstop Party to (1) any other Backstop Party, (2) any Affiliate (as defined in the Restructuring Support Agreement) of a Backstop Party, or (3) any other Person that is approved in writing in accordance with the terms of the Commitment Letter prior to such assignment, delegation or transfer, and such approval shall be deemed to be provided if (a) the transferee has the financial wherewithal to fulfill its obligations with respect to the Backstop Commitments to be transferred, as determined in the Debtors' reasonable opinion after request by the Debtors to the transferee, and prompt delivery to the Debtors by the transferee, of proof of such financial wherewithal and (b) such transferee provides a written agreement to the Debtors under which it confirms the accuracy of the representations set forth on Exhibit C of the Commitment Letter as applied to the transferee.

On the Effective Date, the proceeds of the Equity Financing shall be used by the Post-Restructuring Debtors for working capital and general corporate purposes.

F. *Management Incentive Plan*

As soon as reasonably practicable following the Effective Date, the New Board shall adopt and implement the Management Incentive Plan, which will provide for the grants of equity and equity-based awards (*i.e.*, the MIP Interests) to employees, directors, consultants, and other service providers of the Post-Restructuring Debtors, as determined at the discretion of the New Board.

G. *Employee Matters*

Unless otherwise provided herein, and subject to Article V of the Plan, the Post-Restructuring Debtors, with the prior written consent (which consent may be given via email) of the Required Consenting First Lien Lenders, shall: (1) assume all Compensation and Benefit Programs; or (2) amend current or enter into new agreements with such Persons on terms and conditions acceptable to the Post-Restructuring Debtors, the Required Consenting First Lien Lenders, and such Person. All collective bargaining agreements that the Debtors are party to that are in place as of the Effective Date shall be assumed by the Post-Restructuring Debtors and shall remain in place as of the Effective Date. Notwithstanding the foregoing, pursuant to section

45

1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

A counterparty to any Compensation and Benefit Programs assumed pursuant to this Plan shall have the same rights under such Compensation and Benefit Programs as such counterparty had thereunder immediately prior to such assumption (unless otherwise agreed by such counterparty and the applicable Post-Restructuring Debtors); *provided, however,* that any assumption of Compensation and Benefit Programs pursuant to this Plan or any of the Restructuring Transactions shall not trigger or be deemed to trigger any change of control, change in control, immediate vesting, or similar provisions therein.

H.      *Corporate Existence*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement (including the Restructuring Transactions Memorandum), each Debtor, as Post-Restructuring Debtors, shall continue to exist on and after the Effective Date as a separate legal Entity with all the powers available to such Entity pursuant to the applicable Law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other organizational documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other organizational documents) are amended, amended and restated, or replaced under the Plan or otherwise, including pursuant to the New Organizational Documents, in each case, consistent with the Plan, and to the extent such documents are amended in accordance therewith, such documents are deemed to be amended, amended and restated, or replaced pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).  On or after the Effective Date, the respective certificate of incorporation and bylaws (or other organizational documents) of one or more of the Post-Restructuring Debtors may be amended or modified in accordance with the terms thereof without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  On or after the Effective Date, one or more of the Post-Restructuring Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

I.      *New Organizational Documents*

On or immediately prior to the Effective Date, the New Organizational Documents shall be automatically adopted by the applicable Post-Restructuring Debtors without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person (other than as may be expressly required by the New Organizational Documents).  To the extent required under the Plan or applicable non-bankruptcy law, each of the Post-Restructuring Debtors will file its New Organizational Documents with the applicable authorities in its respective jurisdiction of organization. The New Organizational Documents will prohibit the issuance of non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code.

On or after the Effective Date, the Post-Restructuring Debtors may amend and restate their respective New Organizational Documents in accordance with the terms thereof, and the Post-Restructuring Debtors may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of their respective jurisdictions of incorporation or formation and the New Organizational Documents.

J.      *Directors and Officers of the Post-Restructuring Debtors.*

As of the Effective Date, the terms of the current members of the board of directors of Wellpath Parent shall expire, and the new directors and officers of the Post-Restructuring Debtors shall be appointed.  Except to the extent that a current member of the board of directors of Wellpath Parent is designated to serve as a director, manager, or sole manager of a Post-Restructuring Debtor, as applicable, the current members of the board of directors of Wellpath Parent prior to the Effective Date, in their capacities as such, shall have no continuing obligations to Wellpath Parent on or after the Effective Date, and each such director shall be deemed to have resigned or shall otherwise cease to be a director of Wellpath Parent on the Effective Date.  Each of the directors, managers, sole managers, and officers of each of the Post-Restructuring Debtors shall serve pursuant to the terms of the applicable New Organizational Documents of such Post-Restructuring Debtor and may be designated, replaced, or removed in accordance with such New Organizational Documents.

K.      *Vesting of Assets in the Post-Restructuring Debtors*

Except as otherwise provided in the Confirmation Order or in the Plan (including the Restructuring Transactions Memorandum and Article IX hereof), on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan, except the Liquidating Trust Assets (other than the Liquidating Trust Subsequent Funding), shall vest in each respective Post-Restructuring Debtor, free and clear of all Liens, Claims, charges, other encumbrances, and interests.  On and after the Effective Date, except as otherwise provided in the Plan, including Article IX hereof, each Post-Restructuring Debtor may operate its business and may use, acquire, or dispose of property, enter into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business and execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.

L.      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX hereof or pursuant to a Final Order (including the Financing Order), each Post-Restructuring Debtor, as applicable, shall retain and may enforce all rights to commence, pursue, or settle as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and solely to the extent such Causes of Action are (a) set forth on the Schedule of Retained Causes of Action or (b) Go-Forward Causes of Action; *provided, however*, such actions shall not include (1)

47

any Causes of Action of any kind that were released pursuant to a Final Order of the Bankruptcy Court (including a Financing Order or the H.I.G. Settlement Order), (2) any Cause of Action against an Exculpated Party, (3) any Liquidating Trust Causes of Action, (4) the Causes of Action that were acquired by the Recovery Solutions Purchaser pursuant to the Recovery Solutions Stalking Horse, (5) any Cause of Action that has been acquired by the NBH Purchaser pursuant to the NBH Purchase Agreement, or (6) any Causes of Action of any kind against any officer, director, or manager of any Debtor to the extent that such officer, director, or manager serves as an officer, director, manager, or employee of a Post-Restructuring Debtor for a period of at least 60 days following the Effective Date (the "Retained Causes of Action").

The Post-Restructuring Debtors may pursue the Retained Causes of Action, as appropriate, in accordance with the best interests of the Post-Restructuring Debtors. **No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Post-Restructuring Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. Except as specifically released or as assigned or transferred under the Plan or pursuant to a Final Order (including the Financing Order), the Debtors and the Post-Restructuring Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article IX hereof or pursuant to a Final Order (including the Financing Order).** Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order (including the Financing Order), the Post-Restructuring Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Post-Restructuring Debtors reserve and shall retain the Retained Causes of Action of the Debtors notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The Post-Restructuring Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Retained Cause of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

M.    *Effectuating Documents; Further Transactions.*

Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Post-Restructuring Debtors or the Liquidating Trustee (as applicable), and their respective officers, directors, members, and managers (as applicable), are authorized to and may issue, execute, deliver, file, or record to the extent not inconsistent with any provision of this Plan such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Post-Restructuring Debtors or the Liquidating Trustee, without the need for any

48

approvals, authorizations, actions, notices or consents except for those expressly required pursuant to the Plan.

N.      *The Liquidating Trust.*

In accordance with the Plan, including Article VII hereof, and the Liquidating Trust Agreement, on and after the Effective Date, the Liquidating Trustee shall be the exclusive administrator of the Liquidating Trust Assets and shall make Plan Distributions to Holders of Allowed Claims to the extent provided herein.

1.      <u>Vesting of the Liquidating Trust Assets in the Liquidating Trust.</u>

Except as otherwise provided in the Plan (including the Restructuring Transactions Memorandum and Article IX hereof), the Confirmation Order, the Liquidating Trust Agreement, or any agreement, instrument, or other document incorporated herein or therein, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, the Debtors shall transfer or issue, as applicable, the Liquidating Trust Assets (other than the Liquidating Trust Subsequent Fundings or the Liquidating Trust H.I.G. Funding), and all such assets shall vest in the Liquidating Trust on such date, to be administered by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement. If the H.I.G. Settlement Motion is approved by Final Order, (a) the Debtors or the Post-Restructuring Debtors, as applicable, shall transfer the full amount of the H.I.G. Initial Payment to the Liquidating Trust and (b) upon entry of the Confirmation Order and the occurrence of the Effective Date, the H.I.G. Releasees shall direct their counsel to transfer the H.I.G. Final Settlement Funds to the Liquidating Trust on the first business day thereafter, and their counsel shall transfer such funds within three Business Days of receipt of wiring instructions from the Liquidating Trustee, and all such funding shall vest in the Liquidating Trust on such date, to be administered by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement. Notwithstanding anything to the contrary in this Plan, if (x) the H.I.G. Settlement Motion is not approved by Final Order, (y) the H.I.G. Settlement Agreement is terminated, or (z) the H.I.G. Releasees fail to timely make all payments required under the H.I.G. Settlement Agreement, then all H.I.G. Causes of Action shall be transferred to the Liquidating Trust. On the first Business Day on or after the first anniversary of the Effective Date, the Post-Restructuring Debtors shall transfer $2,000,000 of the Liquidating Trust Subsequent Funding to the Liquidating Trust, and all such funding shall vest in the Liquidating Trust on such date, to be administered by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement. On the first Business Day on or after the second anniversary of the Effective Date, the Post-Restructuring Debtors shall transfer $2,000,000 of the Liquidating Trust Subsequent Funding to the Liquidating Trust, and all such funding shall vest in the Liquidating Trust on such date, to be administered by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement. On the first Business Day on or  after the third anniversary of the Effective Date, the Post-Restructuring Debtors shall transfer the remaining $1,000,000 of the Liquidating Trust Subsequent Funding to the Liquidating Trust, and all such funding shall vest in the Liquidating Trust on such date, to be administered by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement. In the event that the Post-Restructuring Debtors fail to transfer any portion of (a) the Liquidating Trust Subsequent Funding to the Liquidating Trust that is due and owing to the Liquidating Trust on the first Business Day on or after the applicable anniversary of the Effective Date or (b) the H.I.G. Initial

49

Payment that is due and owing to the Liquidating Trust, the Liquidating Trust may transmit a written notice, in accordance with Article XIII.G hereof, to the Post-Restructuring Debtors of the failure to pay such portion of the Liquidating Trust Subsequent Funding or the H.I.G. Initial Payment (as applicable), and the Post-Restructuring Debtor shall have ten calendar days to pay the amount of Liquidating Trust Subsequent Funding or the H.I.G. Initial Payment (as applicable) that is due and owing. If payment of the outstanding portion of the Liquidating Trust Subsequent Funding or the H.I.G. Initial Payment (as applicable) is not made within ten calendar days of delivery of such written notice, such failure to pay shall be deemed an event of default under this Plan. Upon an event of default, the Liquidating Trust may, among other remedies, file a motion with the Bankruptcy Court seeking to enforce this Plan against the Post-Restructuring Debtors and to collect the amounts owed with interested accrued thereon at the Federal Judgment Rate. On and after the Effective Date, except as otherwise provided for in the Plan or the Confirmation Order, with respect to the Liquidating Trust Assets, the Liquidating Trust may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action that constitute Liquidating Trust Assets. The act of transferring the Liquidating Trust Assets, as authorized by this Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Liquidating Trust as if the asset or right was still held by the applicable Debtor.

2.    Assumption of General Unsecured Claims by the Liquidating Trust.

On the Effective Date, and without further action of any Person, the Liquidating Trust shall assume the liabilities, obligations, and responsibilities of the Debtors for all General Unsecured Claims as set forth in the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall implement procedures in accordance with the Liquidating Trust Agreement to reach resolution of General Unsecured Claims and determine the Liquidating Trust's liability for such Claims. Distributions in accordance with the Liquidating Trust Agreement and in accordance with the procedures contemplated therein shall be the sole source of recovery, if any, against the Debtors, their Estates, or the Post-Restructuring Debtors in respect of such General Unsecured Claims, and the Holders of such General Unsecured Claims shall have no other or further recourse to the Debtors, their Estates, or the Post-Restructuring Debtors. In furtherance of the foregoing, the Liquidating Trust, subject to and only to the extent provided in the Liquidating Trust Agreement, shall have all defenses, cross-claims, offsets, and recoupments regarding General Unsecured Claims that the Debtors, as applicable have, or would have had, under applicable law, but solely to the extent consistent with the Liquidating Trust Agreement and the Plan. For the avoidance of doubt, the foregoing shall not impair any person's or party's ability to pursue claims or causes of action against non-Debtors in the event such person or party opts out of the Third-Party Release; *provided*, that such claims or causes of action do not constitute property of the Debtors' Estates.

3.    Liquidating Trustee.

On or prior to the Effective Date, the Liquidating Trust shall be established in accordance with the Liquidating Trust Agreement for the purpose of being vested with and liquidating the Liquidating Trust Assets, reconciling General Unsecured Claims, and making certain Plan Distributions to Holders of Allowed Claims to the extent set forth in this Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall have the authority to administer, amend, modify, or supplement the Liquidating Trust Agreement and the procedures set forth therein in accordance

50

with the Liquidating Trust Agreement and the terms of this Plan. Subject to and to the extent set forth in this Plan, the Confirmation Order, the Liquidating Trust Agreement or any other order of the Bankruptcy Court entered in connection therewith, the Liquidating Trust and the Liquidating Trustee shall be empowered, without the need for Bankruptcy Court approval, to:

(a) perform all actions and execute all agreements, instruments, and other documents necessary to effectuate the purpose of the Liquidating Trust;

(b) establish, maintain, and administer trust accounts, which shall be segregated to the extent appropriate in accordance with this Plan;

(c) accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, abandon, supervise, prosecute, settle and protect, as applicable, the Liquidating Trust Assets in accordance with this Plan;

(d) except to the extent any other Claims have already been Allowed, control and effectuate the General Unsecured Claims allowance and reconciliation process with respect to General Unsecured Claims, including to object to, seek to subordinate, recharacterize, compromise or settle any and all such General Unsecured Claims against the Debtors, including the Disputed General Unsecured Claims, pursuant to the procedures prescribed in this Plan and the Liquidating Trust Agreement;

(e) pursue the Liquidating Trust Causes of Action, elect not to pursue any such Liquidating Trust Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Liquidating Trust Causes of Action, as is in the best interests of the beneficiaries of the Liquidating Trust;

(f) calculate and make Plan Distributions of the proceeds of the Liquidating Trust Assets to Holders of Allowed Claims, in accordance with the Plan and the Liquidating Trust Agreement;

(g) prepare and file appropriate tax returns and other reports on behalf of the Liquidating Trust and pay taxes or other obligations owed by the Liquidating Trust;

(h) retain, compensate, and employ professionals to represent the Liquidating Trust;

(i) exercise such other powers as may be vested in the Liquidating Trust under the Liquidating Trust Agreement and this Plan, or as are deemed by the Debtors or the Liquidating Trustee to be necessary and proper to implement the provisions of the Liquidating Trust Agreement and effectuate the purpose of the Liquidating Trust; and

(j) dissolve the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement.

Notwithstanding anything to the contrary in this Article IV.N.3, the Liquidating Trust's primary purpose is liquidating the Liquidating Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidating Trust's liquidating purpose and reasonably necessary to conserve and protect the Liquidating Trust Assets and provide for the orderly liquidation thereof.

    4.    <u>Preservation of Liquidating Trust Causes of Action.</u>

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX hereof, any applicable Final Order (including the Financing Order), the Liquidating Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Liquidating Trust Causes of Action, whether arising before or after the Petition Date, including any actions identified on the Schedule of Liquidating Trust Causes of Action, and the Liquidating Trust's rights to commence, prosecute, or settle such Liquidating Trust Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than pursuant to a Final Order (including the Financing Order), which, in each case, shall be deemed released and waived by the Debtors, the Liquidating Trust, and the Post-Restructuring Debtors as of the Effective Date. Notwithstanding anything to the contrary in Article IX of this Plan, the Debtors, the Post-Restructuring Debtors, Reorganized Wellpath, and their Estates shall not release the Liquidating Trust Causes of Action.

The Liquidating Trust may pursue the Liquidating Trust Causes of Action, as appropriate, in accordance with the best interests of the Liquidating Trust. **No Entity (other than the Persons or Entities provided releases by the Debtors under this Plan) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Liquidating Trust Cause of Action against it as any indication that the Liquidating Trust will not pursue any and all available Liquidating Trust Causes of Action of the Debtors against it. Except as specifically released under the Plan or pursuant to a Final Order (including the Financing Order), the Liquidating Trust expressly reserves all rights to prosecute any and all Liquidating Trust Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article IX hereof, the Liquidating Trust Agreement, or pursuant to a Final Order (including the Financing Order).** Unless any Liquidating Trust Cause of Action held against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order (including the Financing Order), the Liquidating Trust expressly reserves all Liquidating Trust Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Liquidating Trust Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Liquidating Trust reserves and shall retain such Liquidating Trust Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order (including the Financing Order), any Liquidating Trust Cause of Action held against any Entity shall vest in the Liquidating Trust, except as otherwise expressly provided in the Plan, including Article IX hereof. The Liquidating Trust, through its authorized

agents or representatives, shall retain and may exclusively enforce any and all such Liquidating Trust Causes of Action. The Liquidating Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Liquidating Trust Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

5.     Securities Exempt; Transferability.

The Liquidating Trust shall be structured so as not to be subject to the Securities Act, the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended. The interests in the Liquidating Trust, and any right to receive a distribution from the Liquidating Trust, shall not be evidenced by any certificate, security, receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee. The interests in the Liquidating Trust, and any rights to receive distributions from the Liquidating Trust, shall not constitute "securities" and shall not be registered pursuant to the Securities Act. If it is determined that such interests in the Liquidating Trust or rights constitute "securities," the exemption provisions of section 1145(a)(1) of the Bankruptcy Code would be satisfied and such securities would be exempt from registration. The interests in the Liquidating Trust may not be transferred (except under limited circumstances set forth in the Liquidating Trust Agreement) and shall be totally passive (except as otherwise provided in the Liquidating Trust Agreement).

O.     *Tax Matters.*

The terms of the Plan and the Restructuring Transactions shall be structured in accordance with the Restructuring Transactions Memorandum to minimize, to the extent practicable, the aggregate tax impact of the Restructuring Transactions on the Debtors and the Post-Restructuring Debtors, taking into account both the cash tax impact of the Restructuring Transactions on the Debtors in the tax year of the Restructuring Transactions and the tax liability of the Post-Restructuring Debtors in subsequent tax years.

The Debtors and the Required Consenting First Lien Lenders shall cooperate in good faith (and/or cause their Affiliates to cooperate in good faith) to structure the Restructuring Transactions in a tax efficient manner reasonably acceptable to the Required Consenting First Lien Lenders, the Committee, and as set forth in the Restructuring Transactions Memorandum.

P.     *Cancellation of Existing Securities and Agreements.*

On the Effective Date, except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise provided in this Plan and the Confirmation Order, all notes, instruments, certificates, credit agreements, indentures, Securities and other documents evidencing or governing Claims or Interests (other than those Claims or Interests Reinstated under the Plan) shall be cancelled and the rights of the Holders thereof and obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and

53

other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to this Plan or the Confirmation Order. Nothing contained herein shall be deemed to cancel, terminate, release or discharge the obligations of the Debtors or any of their counterparts under any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to a Final Order or hereunder. Notwithstanding the releases set forth in Article IX.D of the Plan, Confirmation or the occurrence of the Effective Date, any such agreement that governs the rights, claims, or remedies of the Holder of a Claim or Interest shall continue in effect solely for purposes of (1) enabling Holders of Allowed Claims to receive Plan Distributions as provided herein and subject to the terms and conditions of the applicable governing document or instrument as set forth therein, (2) allowing and preserving the rights of each of the applicable agents to (a) make or direct the Plan Distributions as provided herein and (b) assert or maintain any rights for indemnification or contribution the applicable agent may have against the Debtors or the applicable Lenders solely to the extent arising under, and due pursuant to the terms of, the applicable governing document or instrument, (3) preserving the Prepetition Agents' exercise of their rights, claims, causes of action, and interests as against any money or property distributable to the holders of Allowed Claims, (4) permitting the Prepetition Agents to enforce any obligation (if any) owed to them under the Plan, (5) permitting the Prepetition Agents to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court relating to the Prepetition Debt Documents in furtherance of the foregoing, and (6) permitting the Prepetition Agents to perform any functions that are necessary to effectuate the foregoing.

Q.    *Corporate Action.*

On the Effective Date, all actions contemplated under the Plan (including the Restructuring Transactions Memorandum) shall be deemed authorized and approved in all respects, including implementation of the Restructuring Transactions and all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate or organizational structure of the Debtors or the Post-Restructuring Debtors, and any corporate, partnership, limited liability company, or other governance action required by the Debtors or the Post-Restructuring Debtors, as applicable, in connection with the Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further notice to or order of the Bankruptcy Court or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the Holders of Claims, equityholders, members, directors, or officers of the Debtors or the Post-Restructuring Debtors, as applicable. Before, on, or after the Effective Date, as applicable, the appropriate officers of the Debtors or the Post-Restructuring Debtors, as applicable, shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Post-Restructuring Debtors without the need for any approvals, authorizations, actions, or consents of or from any Person or Entity. The

54

authorizations and approvals contemplated by this Article IV.Q shall be effective notwithstanding any requirements under non-bankruptcy Law.

R.      *Indemnification Obligations.*

Unless otherwise determined by the Debtors, in consultation with the Required Consenting First Lien Lenders, consistent with applicable law, all indemnification provisions in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, agents, and other professionals of the Debtors, as applicable, solely to the extent that such Person is a Released Party and is not a Non-Continuing D&O, shall (1) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order, (2) remain intact, in full force and effect, and irrevocable, (3) not be limited, reduced or terminated after the Effective Date, and (4) survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on, or after the Petition Date. All such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors (to the extent assumable) under the Plan and shall continue as obligations of the Post-Restructuring Debtors. Any Claim based on the Debtors' obligations under the Plan shall not be a Disputed Claim or subject to any objection, in either case, for any reason. For the avoidance of doubt, the Post-Restructuring Debtors shall not assume any indemnification provisions or obligations related to any Holder of Interests in the Debtors. Any indemnification provisions for any Non-Continuing D&O or any other Person or Entity against which a Liquidating Trust Cause of Action may be asserted, *provided, however*, that the foregoing shall not impact indemnification provisions in an assumed Executory Contract, other than any indemnification provision in an Executory Contract with a Professional Corporation that is assumed pursuant to this Plan, will be rejected and/or discharged by the Debtors on the Effective Date, provided that such rejection/discharge shall not affect the availability of insurance coverage for any Liquidating Trust Causes of Action.

S.      *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, any transfers (whether from a Debtor to a Post-Restructuring Debtor, the Liquidating Trust, or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Liquidating Trust, Debtors or the Post-Restructuring Debtors including issuance of the New Class B Common Equity to the Liquidating Trust; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in

55

connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the imposition or collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

T. *Director and Officer Liability Insurance.*

After the Effective Date, none of the Post-Restructuring Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all directors, officers, managers, and employees of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors, officers, managers, and employees remain in such positions after the Effective Date. With respect to any Liquidating Trust Cause of Action against any directors, officers, managers, or employees of the Debtors who are entitled to the benefits of any D&O Liability Insurance Policies, the Liquidating Trust shall seek to satisfy any obligations of such directors, officers, managers, or employees to the Liquidating Trust arising from a Liquidating Trust Cause of Action, *first*, from the proceeds of such policies. In no event shall Reorganized Wellpath or the Post-Restructuring Debtors have any obligation to satisfy or pay any deductible, retention, or other financial obligation under the D&O Liability Insurance Policies.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, including in Article IV.G, all Executory Contracts or Unexpired Leases will be deemed assumed by the applicable Post-Restructuring Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) are identified on the Rejected Executory Contracts and Unexpired Leases Schedule; (2) have been previously assumed or rejected by the Debtors pursuant to a Final Order; (3) is the subject of a motion to reject filed on or before the Confirmation Date; (4) are to be rejected by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with any sale transaction; or (5) are a contract,

56

instrument, release, indenture, or other agreement or document entered into in connection with the Plan.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Rejected Executory Contracts and Unexpired Leases Schedule, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Post-Restructuring Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Post-Restructuring Debtors.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan conditions, restricts or prevents, or purports to condition, restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease or allows the counterparty thereto to terminate, recapture, impose any penalty, declare a default, condition a renewal or extension, or modify any term or condition upon any assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in the Plan, the Debtors or the Post-Restructuring Debtors, as applicable, reserve the right to, at any time up to 45 days after the Effective Date, supplement the Rejected Executory Contracts and Unexpired Leases Schedule with any Executory Contract or Unexpired Lease subject to a dispute relating to the amount of a Cure Cost.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, and (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Post-Restructuring Debtors, the Estates, or their property without the need for any objection by the Post-Restructuring Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied,**

**released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B.6 of the Plan and may be objected to in accordance with the provisions of Article VIII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

During the course of the Chapter 11 Cases, as part of the sale process conducted by the Debtors in accordance with the Bidding Procedures, the Debtors Filed the Assumption Notice listing proposed Cure Costs with respect to their Executory Contracts and Unexpired Leases that may be assumed or assumed and assigned. In accordance therewith, the deadline to object to the proposed Cure Costs of each Executory Contract and Unexpired Lease listed on the Assumption Notice have expired. Only the rights of those parties who submitted an objection to the proposed Cure Costs of or in connection with their Executory Contract or Unexpired Lease prior to the objection deadline set forth in the Assumption Notice have been reserved (any objection timely submitted, an "*Assumption Dispute*"). No other party may dispute or object to the proposed Cure Costs of or in connection with their Executory Contract or Unexpired Lease. To the extent an Assumption Dispute relates solely to proposed Cure Costs, the applicable Post-Restructuring Debtor may assume or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of the Assumption Dispute; *provided*, that such Post-Restructuring Debtor reserves Cash in an amount sufficient to pay the full amount asserted as the required cure payment by the non-Debtor party to such Executory Contract or Unexpired Lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court). To the extent an Assumption Dispute is resolved or determined against the applicable Post-Restructuring Debtor, such Post-Restructuring Debtor may reject the applicable Executory Contract or Unexpired Lease after such determination, and the counterparty may thereafter File a Proof of Claim for any purported Rejection Damages in accordance with the Plan. Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease (excluding objections to the proposed Cure Costs) must be asserted by the Plan Objection Deadline.

As soon as reasonably practicable after the Effective Date (unless otherwise agreed by and between the Post-Restructuring Debtors and the counterparty to an Executory Contract or Unexpired Lease), the Post-Restructuring Debtors shall pay all outstanding and undisputed Cure Costs set forth in the Assumption Notice other than those relating to Executory Contracts or Unexpired Leases listed on the Rejected Executory Contracts and Unexpired Leases Schedule. Any Cure Cost shall be deemed fully satisfied and released upon payment by the Post-Restructuring Debtors of such Cure Cost; *provided, however*, that nothing herein shall prevent the Post-Restructuring Debtors from paying any Cure Cost despite the failure of the relevant counterparty to File such request for payment of such Cure Cost. The Post-Restructuring Debtors also may settle any Cure Cost without any further notice to or action, order, or approval of the Bankruptcy Court and Claims associated with such Cure Costs can be expunged from the Claims Register (including by the Claims and Solicitation Agent).

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and full payment of any applicable Cure Cost pursuant to this Article V.C, shall result

58

in the full release and satisfaction of any Cure Costs, other Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim, or Claims set forth on the Schedules, based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure Cost has been fully paid, shall be deemed Disallowed upon the later of entry of the Confirmation Order or such payment in full without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court and can be expunged from the Claims Register (including by the Claims and Solicitation Agent)**.**

D. *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Post-Restructuring Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Post-Restructuring Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

E. *Insurance Policies.*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as Executory Contracts hereunder. Unless otherwise provided in the Plan, on the Effective Date solely to the extent not provided in the Rejected Executory Contracts and Unexpired Leases Schedule, (1) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Post-Restructuring Debtors.

Nothing in this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other Final Order (including any other provision that purports to be preemptory or supervening), (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third party administrators have to pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors or draw on any collateral or security therefor. For the avoidance of doubt, insurers and third-party administrators shall not need to nor be required to file or serve a cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing cure amounts or Claims. Any obligation of the Debtors or the Post-Restructuring Debtors, as applicable, to satisfy any deductible, retention, or other financial obligation under any such insurance policy shall constitute a General Unsecured Claim under this Plan.

59

F. *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or is rejected under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G. *Reservation of Rights.*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Post-Restructuring Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Post-Restructuring Debtors, as applicable, shall have forty-five days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

H. *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I. *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Post-Restructuring Debtors in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A. *Distributions on Account of Claims Allowed as of the Effective Date.*

Except as otherwise provided herein, in a Final Order, or as otherwise agreed to by the Debtors or the Post-Restructuring Debtors, as the case may be, and the Holder of the applicable Allowed Claim on the first Distribution Date, the Post-Restructuring Debtors or the Liquidating Trust, as applicable, shall make initial distributions under the Plan on account of Claims Allowed

as of the Effective Date, subject to the Post-Restructuring Debtors' or the Liquidating Trust's, as applicable, right to object to Claims; *provided* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.D of the Plan, and (3) Allowed General Unsecured Claims shall be paid (if entitled to payment) in accordance with Article III.B.6 of the Plan. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business. Distribution Dates shall occur no less frequently than once in every ninety-day period, as necessary, in the Post-Restructuring Debtors' or Liquidating Trust's, as applicable, sole discretion.

B.    *Distribution Agent.*

All distributions under the Plan shall be made by the applicable Distribution Agent. The Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Distribution Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Post-Restructuring Debtors or Liquidating Trust, as applicable.

C.    *Rights and Powers of the Distribution Agent.*

1.    Powers of the Distribution Agent.

The Distribution Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred on or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent or the Prepetition Agents on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Distribution Agent or the Prepetition Agents, in each case directly related to distributions under the Plan, shall be paid in Cash by the Post-Restructuring Debtors (with respect to expense reimbursement claims of the Distribution Agent or the Prepetition Agents in connection with Claims other than the Second Lien Deficiency Claims or General Unsecured Claims) or Liquidating Trust, as applicable, in the ordinary course of business. In the event that the Post-Restructuring Debtors object to all or any portion of the amounts requested to be reimbursed in a Distribution Agent's invoice, the Post-

61

Restructuring Debtors and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses. In the event that the Post-Restructuring Debtors and Distribution Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

D. *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1. Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded Security, is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2. Delivery of Plan Distributions in General.

Except as otherwise provided herein, the Distribution Agent shall make Plan Distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the manner of such Plan Distributions shall be determined at the discretion of the Post-Restructuring Debtors or Liquidating Trust, as applicable.

All Plan Distributions to Holders of Allowed First Lien Secured Claims and Allowed Second Lien Deficiency Claims, as applicable, shall be deemed completed when made directly to the Holders of Allowed First Lien Secured Claims and Allowed Second Lien Deficiency Claims (in cooperation with the relevant Prepetition Agent). The Prepetition Agents shall not incur any liability whatsoever on account of any Plan Distributions except for gross negligence or willful misconduct. For the avoidance of doubt, all distributions referenced in this paragraph shall be subject to any exercise of the Prepetition Agents' rights, claims, causes of action, and interests as against any money or property distributable to the Holders of Allowed First Lien Secured Claims and Allowed Second Lien Deficiency Claims, as applicable. All transfers, issuances, or contributions to the Liquidating Trust by the Debtors or Post-Restructuring Debtors shall be subject to the terms of Article IV.N and Article VII.

At the option of the Distribution Agent, any Cash payment to be made hereunder may be made by check, wire transfer, automated clearing house, or credit card, or as otherwise required or provided in the applicable agreements.

3. Minimum Distributions.

No fractional shares of New Common Equity shall be distributed and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan (including the issuance of New Common Equity) on account of an Allowed Claim would otherwise

62

result in the issuance of a number of shares of New Common Equity that is not a whole number, the actual distribution of shares of New Common Equity shall be calculated to three decimal places and rounded up or down to the closest whole number of shares of New Common Equity (with a half-share of New Common Equity or greater rounded up and less than a half-share of New Common Equity rounded down). The total number of authorized shares of New Common Equity to be distributed to Holders of Allowed Claims hereunder shall be adjusted as necessary to account for the foregoing rounding. Neither the Post-Restructuring Debtors, Liquidating Trust, nor the Distribution Agent shall have any obligation to make a distribution that consists of less than one share of New Common Equity or is less than $100 to any Holder of an Allowed Claim.

4.      Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder of Allowed Claims is returned as undeliverable, no further distribution to such Holder shall be made unless and until the Distribution Agent is notified in writing of the then-current address of such Holder, at which time all currently-due, missed distributions shall be made to such Holder as soon as reasonably practicable thereafter without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Post-Restructuring Debtors or Liquidating Trust, as applicable, automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims to such property or interest in property shall be discharged and forever barred.

5.      Surrender of Cancelled Instruments or Securities.

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or an Interest that has been cancelled in accordance with Article IV.P hereof shall be deemed to have surrendered such certificate or instrument to the Distribution Agent. Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Interest, which shall continue in effect for purposes of allowing Holders to receive distributions under the Plan, charging liens, priority of payment, and indemnification rights. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Reinstated under this Plan.

E.      *Manner of Payment.*

1.      Except as otherwise set forth herein, all distributions of New Common Equity to Holders of the applicable Allowed Claims under the Plan, in addition to all issuances of Equity Financing Securities, shall be made by the Debtors on the Effective Date.

2.      All distributions of Cash to the Holders of the applicable Allowed Claims under the Plan shall be made by the Distribution Agent on behalf of the applicable Debtor or Post-Restructuring Debtor.

3.      At the option of the Distribution Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

F.      *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Debtors, Post-Restructuring Debtors, Distribution Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information or forms necessary to facilitate such distributions (including the determination of any withholding in connection therewith), or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors, Post-Restructuring Debtors, and Liquidating Trust, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

Any person entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the applicable Distribution Agent an appropriate IRS Form W-9 or (if the payee is a foreign Person) an appropriate IRS Form W-8.

G.      *Allocations.*

Plan Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for United States federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.      *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Final Order, as of the Effective Date, any Claim asserted in currency other than U.S.  dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

I.      *Setoffs and Recoupment.*

Except as expressly provided in the Financing Order and this Plan, including pursuant to Article IX hereof, each Post-Restructuring Debtor or the Liquidating Trust, as applicable, may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Post-Restructuring Debtor or the Liquidating Trust, as applicable, may hold

64

against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Post-Restructuring Debtor(s) or the Liquidating Trust, as applicable, and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Post-Restructuring Debtor or its successor of any and all claims, rights, and Causes of Action that such Post-Restructuring Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Causes of Action of the Debtors, the Post-Restructuring Debtors, or the Liquidating Trust, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XIII.G hereof on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.      *Claims Paid or Payable by Third Parties.*

     1.      Claims Paid by Third Parties.

Subject to the provisions of section 509 of the Bankruptcy Code, the Debtors, the Post-Restructuring Debtors, or the Liquidating Trust, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, a Post-Restructuring Debtor, or the Liquidating Trust. To the extent a Holder of a Claim receives a distribution on account of such Claim and thereafter receives payment from a party that is not a Debtor, a Post-Restructuring Debtor, or the Liquidating Trust, as applicable, on account of such Claim, such Holder shall, within fourteen days of receipt thereof, repay or return the distribution to the applicable Post-Restructuring Debtor or the Liquidating Trust, as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Post-Restructuring Debtor or the Liquidating Trust, as applicable, annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

     2.      Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Causes of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## THE LIQUIDATING TRUSTEE

The rights, powers, privileges, obligations, and compensation of the Liquidating Trustee shall be set forth in the Liquidating Trust Agreement, which shall be filed as part of the Plan Supplement.

A.      *Creation and Governance of the Liquidating Trust.*

On the Effective Date, (1) the Debtors shall irrevocably transfer all of their rights, title, and interests in all of the Liquidating Trust Assets and the Liquidating Trust Initial Funding to the Liquidating Trust and (2) the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement and take all steps necessary to establish the Liquidating Trust in accordance with the Plan and the beneficial interests therein.  In accordance with section 1141 of the Bankruptcy Code, the Liquidating Trust Assets, including the Liquidating Trust Takeback Debt, the New Class B Common Equity, the Liquidating Trust Initial Funding, any Liquidating Trust H.I.G Funding, and the Liquidating Trust Subsequent Funding (at the applicable time of transfer of such funding), shall automatically vest in the Liquidating Trust without further action by any Person or Entity, free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other Stamp or Similar Tax.  In the event of any conflict between the terms of the Plan and the terms of the Liquidating Trust Agreement, the terms of the Plan shall govern.  Upon completion of the transfer of the Liquidating Trust Assets, including the Liquidating Trust Takeback Debt, the New Class B Common Equity, the Liquidating Trust Initial Funding, any Liquidating Trust H.I.G Funding, and the Liquidating Trust Subsequent Funding (at the applicable time of transfer of such funding), to the Liquidating Trust, neither the Debtors nor the Post-Restructuring Debtors, as applicable, shall have any further interest in the Liquidating Trust Assets (including the Liquidating Trust Takeback Debt, the New Class B Common Equity, the Liquidating Trust Initial Funding, any Liquidating Trust H.I.G Funding, and the Liquidating Trust Subsequent Funding) or the Liquidating Trust.  The Liquidating Trustee shall be the exclusive administrator of the Liquidating Trust Assets.  The Liquidating Trust shall be governed by the Liquidating Trust Agreement and administered by the Liquidating Trustee. The powers, rights, and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this Article VII.A.  The Liquidating Trustee shall hold and distribute the Liquidating Trust Assets and any proceeds thereof in accordance with the provisions of the Plan and the Liquidating Trust Agreement. Other rights and duties of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement.

B.     *Liquidating Trustee and Liquidating Trust Agreement.*

The Liquidating Trust Agreement generally will provide for, among other things: (1) the irrevocable transfer of all of the Debtors' rights, title and interest in all of the Liquidating Trust Assets to the Liquidating Trust; (2) the payment of all expenses of the Liquidating Trust solely from the Liquidating Trust Assets, (for the avoidance of doubt, the Post-Restructuring Debtors shall not be obligated to pay any fees, costs, or expenses of the Liquidating Trust or the Liquidating Trustee); (3) procedures for the reconciliation and allowance of General Unsecured Claims as set forth in the Liquidating Trust Agreement; and (4) distributions under the Plan to Holders of Allowed Claims to the extent set forth herein and in the Liquidating Trust Agreement and pursuant to the procedures set forth therein.  The Liquidating Trust Agreement may include reasonable and customary provisions that allow for the limitation of liability of the Liquidating Trustee and its professionals, agents, and advisors, among others, and for indemnification of such Persons by the Liquidating Trust. Any such indemnification shall be the sole responsibility of the Liquidating Trust and payable solely from the Liquidating Trust Assets. The Liquidating Trustee shall be responsible for all decisions and duties with respect to the Liquidating Trust and the Liquidating Trust Assets, except as otherwise provided in the Liquidating Trust Agreement.

C.     *Tax Treatment.*

In furtherance of this Article VII.C, other than with respect to Liquidating Trust Assets that are subject to potential disputed claims of ownership or uncertain distributions (if any), (1) the Liquidating Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d) and in compliance with Rev. Proc. 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Tax Code with the beneficiaries of the Liquidating Trust treated as the grantors and owners of the Liquidating Trust; (2) the sole purpose of the Liquidating Trust shall be the liquidation and distribution of the Liquidating Trust Assets in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business; (3) all parties (including the Debtors, the Post-Restructuring Debtors, the Liquidating Trust Beneficiaries, and the Liquidating Trustee) shall report consistently with such treatment (including the deemed receipt of the underlying assets, subject to applicable liabilities and obligations, by the Holders of Allowed Claims, as applicable, followed by the deemed transfer of such assets to the Liquidating Trust); (4) all parties shall report consistently with the valuation of the Liquidating Trust Assets transferred to the Liquidating Trust as determined by the Liquidating Trustee (or its designee); (5) the Liquidating Trustee shall be responsible for filing returns for the Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a); and (6) the Liquidating Trustee shall annually send to each holder of an interest in the Liquidating Trust a separate statement regarding the receipts and expenditures of the trust as relevant for United States federal income tax purposes.

D.     *Dissolution of Liquidating Trust.*

The Liquidating Trustee and the Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as all distributions required to be made by the Liquidating Trustee under the Plan have been made.  Upon dissolution of the Liquidating Trust, any remaining Liquidating Trust Assets shall be distributed to the Liquidating Trust Beneficiaries in accordance with

67

the Liquidating Trust Agreement; *provided, however,* in no event shall the Liquidating Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING
## CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

This Article VIII shall not apply to the First Lien Claims and Second Lien Claims, which Claims shall be Allowed in full, without the need to file any Proofs of Claims against the Debtors, and will not be subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any Person or Entity.

A.      *Allowance of Claims.*

The Debtors, the Post-Restructuring Debtors, or the Liquidating Trustee (to the extent set forth in the Liquidating Trust Agreement with respect to General Unsecured Claims) as applicable, shall have the exclusive authority to determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed. Upon such determination, the Debtors, Post-Restructuring Debtors, or the Liquidating Trustee, as applicable, may update the Claims Register to reflect such Proofs of Claim as Allowed and, upon delivery of the applicable treatment for such Unimpaired Claims under Article III.B (including, for the avoidance of doubt, Reinstatement), to mark such Proofs of Claims as satisfied. The Debtors may determine, in consultation with the Required Consenting First Lien Lenders, to Reinstate a claim that would be an Unimpaired Claim under the Plan, even if no timely Proof of Claim is filed therefor.

B.      *Claims Administration Responsibilities.*

The Debtors, the Post-Restructuring Debtors, or the Liquidating Trustee (to the extent set forth in the Liquidating Trust Agreement with respect to General Unsecured Claims), as applicable, shall have the exclusive authority to (1) File, withdraw, or litigate to judgment any objections to Claims, (2) settle or compromise any such objections to Claims without further notice to or action, order, or approval of the Bankruptcy Court, and (3) administer and adjust the Claims Register to reflect such settlements or compromises without further notice to or action, order, or approval of the Bankruptcy Court. Except as otherwise provided herein, from and after the Effective Date, each Post-Restructuring Debtor or the Liquidating Trustee (to the extent set forth in the Liquidating Trust Agreement with respect to General Unsecured Claims), shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date, and the Post-Restructuring Debtors have after the Effective Date, with respect to any Claim (including

68

any Disputed Claim), including the Causes of Action retained pursuant to Articles IV.L and IV.N.3 of the Plan.

Any objections to Proofs of Claims (other than Administrative Claims) shall be served and Filed (1) on or before the date that is one hundred and eighty days following the later of (a) the Effective Date and (b) the date that a Proof of Claim is Filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a Holder of a Claim or (2) such later date as ordered by the Bankruptcy Court.

C.    *Disputed Claims Process.*

If the Debtors, Post-Restructuring Debtors, or the Liquidating Trustee (to the extent set forth in the Liquidating Trust Agreement with respect to General Unsecured Claims) dispute any Proof of Claim that is Filed on account of an Unimpaired Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced; *provided* that the Debtors, Post-Restructuring Debtors, or the Liquidating Trustee (to the extent set forth in the Liquidating Trust Agreement with respect to General Unsecured Claims), as applicable, or the Holder of such Claim may elect to have the validity or amount of any Claim adjudicated by the Bankruptcy Court instead. If such an election is made, the Bankruptcy Court shall apply the law that would have governed the dispute if the Chapter 11 Cases had not been filed.

If the Debtors, Post-Restructuring Debtors, or the Liquidating Trustee (to the extent set forth in the Liquidating Trust Agreement with respect to General Unsecured Claims), as applicable, dispute any Impaired Claim that is not Allowed as of the Effective Date pursuant to Article III.B or a Final Order entered by the Bankruptcy Court (which may include the Confirmation Order), the Debtors, Post-Restructuring Debtors, or the Liquidating Trustee (to the extent set forth in the Liquidating Trust Agreement with respect to General Unsecured Claims), as applicable, shall File an objection with, and the dispute shall be determined, resolved, or adjudicated before, the Bankruptcy Court.

D.    *Estimation of Claims.*

Before, on, or after the Effective Date, the Debtors, the Post-Restructuring Debtors, or the Liquidating Trustee (to the extent set forth in the Liquidating Trust Agreement with respect to General Unsecured Claims), as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under

69

the Plan (including for purposes of distributions), and the relevant Post-Restructuring Debtor or the Liquidating Trustee, to the extent set forth in the Liquidating Trust Agreement with respect to General Unsecured Claims, may elect to pursue any supplemental proceedings to object to the allowance of, or any ultimate distribution on, such Claim; *provided*, that, in accordance with 28 U.S.C. § 157(b)(2)(B), this Article VIII.D shall not apply to any contingent or unliquidated personal injury tort or wrongful death Claim against an Estate for purposes of distribution under the Plan.

E.      *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Post-Restructuring Debtors or the Liquidating Trustee, to the extent set forth in the Liquidating Trust Agreement with respect to General Unsecured Claims without the Post-Restructuring Debtors or the Liquidating Trustee having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *Disallowance of Claims.*

Except as otherwise expressly set forth herein or the Bar Date Order, and subject to the terms hereof, including Article IX, and the Financing Order, all Claims of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors, the Post-Restructuring Debtors, or the Liquidating Trustee, to the extent set forth in the Liquidating Trust Agreement (including acting on behalf of the Post-Restructuring Debtors) allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed disallowed if: (1) the Entity, on the one hand, and the Debtors, the Post-Restructuring Debtors, or the Liquidating Trustee, to the extent set forth in the Liquidating Trust Agreement (including acting on behalf of the Post-Restructuring Debtors), as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (2) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

**Except as otherwise provided herein, the Bar Date Order, any Final Order of the Bankruptcy Court, or as agreed to by the Post-Restructuring Debtors, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order**.

G.      *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim; *provided* that if only the Allowed amount of an otherwise valid Claim or Interest is Disputed, such Claim

70

shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

H.    *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court Allowing any Disputed Claim or Interest becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim or Interest the distributions (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

I.    *No Post-Petition Interest on Claims.*

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, including the Financing Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

J.    *Accrual of Dividends and Other Rights.*

For purposes of determining the accrual of distributions or other rights after the Effective Date, the applicable New Common Equity and New Preferred Equity shall be deemed distributed as of the Effective Date regardless of the date on which it is actually distributed; *provided*, *however*, that the Post-Restructuring Debtors shall not pay any such distributions or distribute such other rights, if any, until after distribution of the applicable New Common Equity and New Preferred Equity actually takes place.

## ARTICLE IX.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Discharge of Claims and Termination of Interests.*

The releases and discharges of Claims, Interests, and Causes of Action described in the Plan, including releases by the Debtors and by Holders, constitute good-faith compromises and settlements of the matters covered thereby and such releases are consensual.  Such compromises and settlements are made in exchange for consideration, are in the best interest of Holders, are fair, equitable, and reasonable, and are integral elements of the resolution of the Chapter 11 Cases in accordance with the Plan.

Each of the release, indemnification, discharge, and exculpation provisions set forth in the Plan or in the Confirmation Order (1) is within the jurisdiction of the Bankruptcy Court under sections 1334(a), 1334(b), and 1334(e) of title 28 of the United States Code, (2) is an essential means of implementing the Plan, (3) is an integral and non-severable element of the transactions

incorporated into the Plan, (4) confers a material benefit on, and is in the best interests of, the Debtors, their Estates, and their creditors, (5) is important to the overall objectives of the Plan to finally resolve all claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors, (6) is fair, equitable, and reasonable and in exchange for good and valuable consideration, and (7) is consistent with sections 105, 1123, 1129, 1141, and other applicable provisions of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the releases, stipulations, and exculpation provisions hereof are in addition to and do not replace, the release, stipulations, and other provisions of any Final Order of the Bankruptcy Court (including the Final DIP Order).

Pursuant to, and to the maximum extent provided by, section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services that employees of the Debtors have performed prior to the Effective Date, and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (3) the holder of such a Claim or Interest has accepted the Plan. The Confirmation Order, if applicable, shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

B.  ***Release of Liens.***

**Except as otherwise provided in the Plan, the Confirmation Order, or in any contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions or other treatment made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with this Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Restructuring Debtors and their successors and assigns, in each case without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Post-Restructuring Debtors. Any Holder of such Secured Claim (and the applicable agents for such Holder (including the First**

Lien Agent or Second Lien Agent)) shall be authorized and directed, at the sole cost and expense of the Post-Restructuring Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder (including the First Lien Agent or Second Lien Agent)), and to take such actions as may be reasonably requested by the Post-Restructuring Debtors to evidence the release of such Liens and/or security interests, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Post-Restructuring Debtors, at the sole cost and expense of the Post-Restructuring Debtors, that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Post-Restructuring Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

C.      *Releases by the Debtors.*

To the fullest extent permissible under applicable law, other than in the case of willful misconduct, gross negligence, or actual fraud (but not, for the avoidance of doubt, Avoidance Actions), each of the Debtors, the Post-Restructuring Debtors, Reorganized Wellpath, and their Estates, in each case in behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, directly or derivatively by, through, for, of because of the foregoing entities shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Released Party from any and all claims, interests, damages, remedies, causes of action, demands, rights, debts, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter existing, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, asserted or assertable, direct or derivative, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, Post-Restructuring Debtors, Reorganized Wellpath, or their Estates, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the debtors, the company (including the capital structure, management, ownership, equity sponsorship, or operation thereof), the business operations of the Debtors, actions taken by the Debtors' board of directors or board of managers, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the Post-Restructuring Debtors or Reorganized Wellpath, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan or

73

the Recovery Solutions Sale Order, the NBH Sale Order, the business or contractual arrangements between or among any of the Debtors and any Released Party, the Debtors' restructuring efforts, the ownership or operation of the Debtors by any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to claims asserted against the debtors), intercompany transactions (other than any intercompany claims that have been reinstated as contemplated above), the Restructuring Transactions, the Sale Transactions, entry into the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, the orders approving the Sale Transactions, the Term Sheets, the Bidding Procedures, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Equity Financing Documents, the DIP Documents, the Definitive Documents, or any other documents (including any legal opinion requested by any entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Recovery Solutions Sale Order, the NBH Sale Order, the Confirmation Order, or the Plan or the reliance by any Released Party on the Recovery Solutions Sale Order, the Plan, or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the orders approving the Sale Transactions, the Term Sheets, the Bidding Procedures, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Equity Financing Documents, or the DIP Documents, the administration and implementation of the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than any obligations of any Released Party arising under the Plan, any Definitive Documents, or any other document, instrument, or agreement executed to implement the Chapter 11 Cases.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Post-Restructuring Debtors, or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Debtor Release.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including any Claim or obligation arising under the Plan, (2) any Liquidating Trust Cause of Action, (3) any Retained Cause of Action, (4) if the H.I.G. Settlement Motion is not approved by a Final Order, H.I.G. Causes of Actions, or (5) any individual from any Claim

74

or Cause of Action related to an act or omission that constitutes actual fraud, willful misconduct, or gross negligence.

D.     *Releases by the Releasing Parties.*

To the fullest extent permissible under applicable law, other than in the case of willful misconduct, gross negligence, or actual fraud (but not, for the avoidance of doubt, Avoidance Actions), each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Released Party from any and all claims, interests, damages, remedies, causes of action, demands, rights, debts, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter existing, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, asserted or assertable, direct or derivative, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Releasing Parties or their Estates, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors and the TopCo Debtors  (including the capital structure, management, ownership, equity sponsorship, or operation thereof), the business operations of the Debtors, actions taken by the Debtors' Board of Directors or Board of Managers, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the Post-Restructuring Debtors or Reorganized Wellpath, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan or the Recovery Solutions Sale Order, the NBH Sale Order, the business or contractual arrangements between or among any of the Debtors and any Released Party, the Debtors' restructuring efforts, the ownership or operation of the Debtors by any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to claims asserted against the debtors), intercompany transactions (other than any intercompany claims that have been reinstated as contemplated above), the Restructuring Transactions, the Sale Transactions, entry into the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, the orders approving the sale transactions, the Term Sheets, the Bidding Procedures, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Equity Financing Documents, the DIP Documents, the Definitive Documents, or any other documents (including any legal opinion requested by any entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Recovery Solutions Sale Order, the NBH Sale Order, the Confirmation Order, or the Plan or the reliance by any Released Party on the Recovery Solutions Sale Order, the Plan, or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the orders approving the sale transactions, the Term Sheets, the Bidding Procedures, the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the Equity Financing Documents, or the DIP Documents, the administration and implementation of the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other

75

than any obligations of any released party arising under the Plan, any Definitive Documents, or any other document, instrument, or agreement executed to implement the Chapter 11 Cases. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Article IX.D do not release any lender under either the First Lien Credit Agreement or the Second Lien Credit Agreement from any indemnification or contribution claims of the applicable Prepetition Agent specifically provided for in the First Lien Credit Agreement or the Second Lien Credit Agreement, as applicable.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including any Claim or obligation arising under the Plan, (2) any Liquidating Trust Cause of Action, (3) any Retained Cause of Action, (4) if the H.I.G. Settlement Motion is not approved by a Final Order, H.I.G. Causes of Actions, (5) any Claims or Causes of Action against any Professional Corporation, or (6) any individual from any Claim or Cause of Action related to an act or omission that constitutes actual fraud, willful misconduct, or gross negligence.

E.     *Exculpation*.

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is exculpated from any Cause of Action or any claim arising from the Petition Date through the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable the Chapter 11 Cases, the Disclosure Statement, the Plan (including the Plan Supplement), the DIP Documents (including with respect to the DIP Facility and DIP Roll-Up Loans), the Restructuring Support Agreement, the Equity Financing Documents, the Takeback Facility Documents, the Liquidating Trust Agreement, the Bidding Procedures, the Purchase Agreement(s), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement

or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the marketing of the Corrections Business, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (excluding, for the avoidance of doubt, providing any legal opinion effective as of the Effective Date requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan), except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

F.      *Injunction*.

        Except as otherwise expressly provided in the Plan, or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Restructuring Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan; *provided*, that, for the avoidance of doubt, this Article IX.F shall not apply to parties that timely opt out of the Third-Party Release to preserve their claims against the Released Parties.

G.    *Gatekeeper Provision.*

No party may commence, continue, amend, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, a Claim or Cause of Action of any kind against any of the Exculpated Parties that arose or arises from or is related to any applicable Covered Claim without first (1) requesting a determination from the Bankruptcy Court, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim against an Exculpated Party and is not a Claim that was exculpated under the Plan, which request must attach the complaint or petition proposed to be filed by the requesting party and (2) obtaining from the Bankruptcy Court, in the form of a Final Order, specific authorization for such party to bring such Claim or Cause of Action against an Exculpated Party. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

H.    *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Post-Restructuring Debtors or the Liquidating Trustee (as applicable) or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Post-Restructuring Debtors or the Liquidating Trustee (as applicable), or another Entity with whom the Post-Restructuring Debtors or the Liquidating Trustee have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.    *Document Retention.*

On and after the Effective Date, the Post-Restructuring Debtors and the Liquidating Trustee may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Post-Restructuring Debtors.

J.    *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final

78

Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

K.     *Government Carve Out.*

Nothing in the Confirmation Order or the Plan shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including any claims arising under the Internal Revenue Code, the environmental laws, regulatory laws, or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws, regulatory laws, or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

## ARTICLE X.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.     *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.B hereof:

1. the Bankruptcy Court shall have entered the Confirmation Order, Filed in a manner consistent in all material respects with (a) the Plan (including finding that (y) section 1145 of the Bankruptcy Code fully applies to the New Class A Common Equity offered, issued, and distributed on account of the Allowed First Lien Secured Claims and the New Class B Common Equity offered, issued, or distributed to the Liquidating Trust and (z) section 4(a)(2) of the Securities Act fully applies, as applicable, to the Equity Financing Securities offered, issued, and distributed pursuant to the Equity Financing), (b) the Restructuring Support Agreement and Global Settlement Term Sheet and otherwise be in form and substance acceptable to the Required Consenting First Lien Lenders, the Debtors, and the Committee, and such order shall have become a Final Order;

2. the Plan and all documentation with respect to the Plan and Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto, shall be materially consistent with the terms and conditions described in the Restructuring Support Agreement and the Global Settlement Term Sheet;

3. the New Organizational Documents, which shall be acceptable to the Required Consenting First Lien Lenders and reasonably acceptable to the Debtors and the Committee, shall have become effective (or shall become effective concurrently with the effectiveness of the Plan);

4. the Restructuring Support Agreement shall not have been terminated (and no event shall have occurred that purports to terminate the Restructuring Support Agreement (even if such termination does not occur as a result of the automatic stay of section 362 of the Bankruptcy Code or otherwise)), and there shall not have occurred and be continuing any event, act, or omission that, but for the expiration of time, would permit any of the Required Consenting First Lien Lenders or the Debtors or TopCo Debtors to terminate the Restructuring Support Agreement in accordance with its terms upon the expiration of such time;

5. the Bankruptcy Court shall have entered the Interim DIP Order, the Final DIP Order, the Recovery Solutions Sale Order, the NBH Sale Order, the Disclosure Statement Order, and the Confirmation Order, each of which (a) shall be consistent with the Restructuring Support Agreement and Global Settlement Term Sheet and otherwise be in form and substance acceptable to the Required Consenting First Lien Lenders and the Debtors and, as it relates to the Confirmation Order, the Committee, and (b) shall not have been stayed, reversed, dismissed, or vacated; for the avoidance of doubt, no Cash Collateral Termination Event (as defined in the Final DIP Order) shall have occurred;

6. the Debtors shall have paid in full in Cash (or the Debtors shall pay in full in Cash substantially contemporaneously with consummation of the Restructuring Transactions) all Restructuring Expenses and Agent Fees;

7. the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

8. the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan;

9. all Professional Fee Amounts that require the approval of the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been funded into the Professional Fee Escrow Account pending the approval of such fees and expenses by the Bankruptcy Court;

10. no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Plan;

11. the Liquidating Trust shall be established, funded with the Liquidating Trust Initial Funding, and vested with the Liquidating Trust Assets (other than the Liquidating Trust Subsequent Fundings and the Liquidating Trust H.I.G. Funding), and the Liquidating Trustee shall have been appointed in accordance with the provisions of the Plan and the terms of the Liquidating Trust Agreement;

12. the New Common Equity and the New Preferred Equity shall have been issued by Reorganized Wellpath;

13. the following documents shall be in full force and effect substantially contemporaneous with the consummation of the Restructuring Transactions (including shall not be stayed, modified, revised, or vacated, or subject to any pending appeal), and shall not have been terminated prior to the Effective Date: (a) the New Organizational Documents; (b) such other motions, orders, agreements, and documentation necessary or desirable to consummate and document the transactions contemplated by this Plan; (c) the Equity Financing Documents; (d) the Takeback Facility Documents; (e) to the extent not included in the foregoing, all financing documents needed to effectuate the Restructuring Transactions; (f) the Liquidating Trust Agreement; and (g) all other material customary documents delivered in connection with transactions of this type (including any and all other documents implementing, achieving, contemplated by or relating to the Restructuring Transactions);

14. the closing and funding of the Equity Financing and the Takeback Facility shall have occurred;

15. the Debtors shall have otherwise substantially consummated the applicable Restructuring Transactions in a manner consistent in all respects with the Plan and Global Settlement Term Sheet; and

16. as of the Effective Date, no temporary restraining order, preliminary or permanent injunction, judgment, or other order preventing the Restructuring Transactions or any of the transactions contemplated by any of the Definitive Documents shall have been entered, issued, rendered, or made, nor shall any proceeding seeking any of the foregoing be commenced or pending; nor shall any proceeding seeking any of the foregoing be threatened by a governmental body; nor shall there be any law promulgated, enacted, entered, enforced, or deemed applicable to any of the parties which makes the consummation of the Restructuring Transactions or any of the transactions contemplated by any of the Definitive Documents illegal, void, or rescinded.

B. *Waiver of Conditions.*

Except as otherwise specified in this Plan, any one or more of the conditions to Consummation (or any component thereof) set forth in this Article X may be waived by the Debtors with the prior written consent of the Required Consenting First Lien Lenders (not to be withheld unreasonably), and, regarding only the conditions listed in Article X.A.1, 2, 3, 5, 8, 9, 10, 11, 12, 13, 14, 15, and 16 to the extent that such conditions affect the treatment of holders of General Unsecured Claims, the Committee (not to be unreasonably withheld) without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C. *Effect of Failure of Conditions.*

If Consummation does not occur as to any Debtor, the Plan shall be null and void in all respects as to such Debtor and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims or Liens by the Debtors, any Holders of Claims or

Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

D.     *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.     *Modification and Amendments.*

Except as otherwise specifically provided in this Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; *provided*, that any material modification to the Plan shall be subject to the consent of the Required Consenting First Lien Lenders and, only to the extent that modifications materially and adversely impact Holders of General Unsecured Claims, the Committee.  Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtors expressly reserve their right, in consultation with the Required Consenting First Lien Lenders, and, only to the extent that modifications materially and adversely impact Holders of General Unsecured Claims, the Committee, to revoke or withdraw, or to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.     *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.     *Revocation or Withdrawal of Plan.*

The Debtors reserve the right, in consultation with the Required Consenting First Lien Lenders and the Committee, to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization or liquidation. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests;

82

(b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or secured or unsecured status, or amount of any Claim or Interest, including with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Costs pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Post-Restructuring Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6. adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7. enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan or the Disclosure Statement;

83

8.  enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan including with respect to the Global Settlement Term Sheet;

10. issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

11. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.J hereof;

13. enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15. enter an order concluding or closing the Chapter 11 Cases;

16. adjudicate any and all disputes arising from or relating to distributions under the Plan;

17. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

84

21. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article IX hereof;

22. enforce all orders previously entered by the Bankruptcy Court; and

23. hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XII to the contrary, the New Organizational Documents and any documents related thereto shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain jurisdiction with respect thereto.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect.*

Subject to Article X.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Restructuring Debtors, any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests (1) are Impaired or Unimpaired, (2) have, or are deemed to have accepted the Plan, or (3) failed to vote to accept or reject the Plan),

All Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Post-Restructuring Debtors, the Liquidating Trust, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Payment of Statutory Fees.*

The Debtors shall file all monthly reports and pay all fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant

to section 1128 of the Bankruptcy Code or as agreed by the U.S. Trustee, for each quarter (including any fraction thereof) until the Effective Date.

On and after the Effective Date, the Post-Restructuring Debtors and Liquidating Trust shall file all quarterly reports and pay all fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing or as agreed by the U.S. Trustee, for each quarter (including any fraction thereof) until the earlier of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The Liquidating Trust Assets disbursed to the Liquidating Trust will not be included in the calculation of the statutory fees payable to the U.S. Trustee by the Debtors and the Post-Restructuring Debtors for the quarter in which such disbursement occurs.

D.      *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except with respect to (1) final fee applications of the Professionals asserting Professional Fee Claims, including any appeals in connection therewith, or (2) for purposes of participating in any appeals of the Confirmation Order or the H.I.G. Settlement Order.  The Post-Restructuring Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date except with respect to (1) final fee applications of the Professionals asserting Professional Fee Claims, including any appeals in connection therewith, or (2) for purposes of participating in any appeals of the Confirmation Order or the H.I.G. Settlement Order.

E.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be

deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Debtors | Counsel to the Debtors |
|---|---|
| Wellpath Holdings, Inc.<br>3340 Perimeter Hill Drive<br>Nashville, TN 37211<br>Attention:  Chief Executive Officer<br>　　　　　　Interim Chief Financial Officer<br>　　　　　　Chief Legal Officer | McDermott Will & Emery LLP<br>444 West Lake Street, Suite 4000<br>Chicago, IL 60606<br>Attention:  Felicia Perlman,<br>　　　　　　Bradley Thomas Giordano,<br>　　　　　　Jake Jumbeck,<br>　　　　　　Carole Wurzelbacher, and<br>　　　　　　Carmen Dingman<br>Email:　　fperlman@mwe.com<br>　　　　　　bgiordano@mwe.com<br>　　　　　　jjumbeck@mwe.com<br>　　　　　　cwurzelbacher@mwe.com<br>　　　　　　cdingman@mwe.com<br>　　　and<br><br>McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, NY 10017-3852<br>Attention:  Steven Z. Szanzer<br>Email:　　sszanzer@mwe.com<br><br>　　　and<br><br>McDermott Will & Emery LLP<br>2501 North Harwood Street, Suite 1900<br>Dallas, TX 75201-1664<br>Attention:  Marcus A. Helt<br>Email:　　mhelt@mwe.com |
| **United States Trustee** | **Counsel to the DIP Lenders<br>and Ad Hoc Group** |
| Office of The United States Trustee<br>515 Rusk Street, Suite 3516<br>Houston, TX 77002 | Akin Gump Strauss Hauer & Feld LLP<br>2001 K Street, N.W.<br>Washington, D.C. 20006<br>Attention: Scott Alberino<br>　　　　　　Kate Doorley<br>Email:　　salberino@akingump.com<br>　　　　　　kdoorley@akingump.com |

| Counsel to the Unsecured Creditors' Committee | |
|---|---|
| Stinson LLP<br>1201 Walnut, Suite 2900<br>Kansas City, MO 64106<br>Attention: Nicholas Zluticky<br>　　　　　　Zachary Hemenway<br>Email:　　nicholas.zluticky@stinson.com<br>　　　　　　zachary.hemenway@stinson.com<br><br>　　and<br><br>Stinson LLP<br>1144 Fifteenth St., Suite 2400<br>Denver, Colorado 80202<br>Attention: Lucas Schneider<br>Email:　　lucas.schneider@stinson.com | Proskauer Rose LLP<br>Eleven Times Square<br>New York, NY 10036-8299<br>Attention: Brian S. Rosen<br>　　　　　　Ehud Barak<br>　　　　　　Daniel Desatnik<br>Email:　　brosen@proskauer.com<br>　　　　　　ebarak@proskauer.com<br>　　　　　　ddesatnik@proksauer.com<br><br>　　and<br><br>Proskauer Rose LLP<br>70 West Madison, Suite 3800<br>Chicago, IL 60602-4342<br>Attention: Paul V. Possinger<br>Email:　　ppossinger@proskauer.com |

H.　　*Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.　　*Entire Agreement.*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.　　*Plan Supplement.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http://dm.epiq11.com/Wellpath or the Bankruptcy Court's website at www.txs.uscourts.gov/bankruptcy. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.    *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' or Post-Restructuring Debtors' consent, as applicable; and (3) except as otherwise provided in this Article XIII.K, nonseverable and mutually dependent.

L.    *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with section 1125(g) of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Post-Restructuring Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.    *Closing of Chapter 11 Cases.*

The Post-Restructuring Debtors or the Liquidating Trustee, as applicable, shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.    *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.      *Creditor Default.*

An act or omission by a Holder of a Claim or an Interest in contravention of the provisions of this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Post-Restructuring Debtors may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Post-Restructuring Debtors in remedying such default. Upon the finding of such a default by a creditor, the Bankruptcy Court may: (1) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (2) enforce the Plan by order of specific performance; (3) award judgment against such defaulting creditor in favor of the Post-Restructuring Debtors in an amount, including interest, to compensate the Post-Restructuring Debtors for the damages caused by such default; and (4) make such other order as may be equitable that does not materially alter the terms of the Plan.

Dated:  April 30, 2025

*/s/ Timothy J. Dragelin*

Wellpath Holdings, Inc.
CCS-CMGC Intermediate Holdings, Inc.
CCS-CMGC Intermediate Holdings 2, Inc.
Wellpath CFMG, Inc.
WHC, LLC
Wellpath Community Care Centers of Virginia, LLC
CHC Companies, LLC
Conmed Healthcare Management, LLC
WPMed, LLC
Correct Care Holdings, LLC
Wellpath Group Holdings, LLC
Wellpath, LLC
Correctional Healthcare Companies, LLC
Correctional Healthcare Holding Company, LLC
Wellpath Management, Inc.
Wellpath Education, LLC
HCS Correctional Management, LLC
Jessamine Healthcare, LLC
Wellpath Community Care Management, LLC
Alpine CA Behavioral Health HoldCo, LLC
Wellpath Hospital Holding Company, LLC
Wellpath Community Care Holdings, LLC
Justice Served Health Holdings, LLC
Physicians Network Association, Inc.
Healthcare Professionals, LLC
Missouri JSH HoldCo, LLC
Missouri JSH Manager, Inc.
Wellpath SF HoldCo, LLC
Perimeter Hill RPA, LLC
Zenova Telehealth, LLC
Zenova Management, LLC

# Exhibit B

United States Bankruptcy Court
Southern District of Texas
**ENTERED**
June 04, 2025
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| WELLPATH HOLDINGS, INC., *et al*., [1] | Case No. 24-90533 (ARP) |
| Post-Restructuring Debtors. | (Jointly Administered) |

## GENERAL FORM OF ORDER REGARDING LIFT STAY MOTIONS

The Court having:

a. entered the *Findings of Fact, Conclusions of Law, and Order (I) Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis* [Docket No. 2596] (the "Confirmation Order") on May 1, 2025; and

b. entered the *Order (I) Further Extending the Automatic Stay to the Non- Debtor Defendants and (II) Granting Related Relief* [Docket No. 2599] (the "Extension Order");[2]

**IT IS HEREBY FOUND, ORDERED, AND ADJUDGED THAT:**

1. The Plan became effective and was substantially consummated on **May 9, 2025** (the "Effective Date") as set forth in the *Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) Administrative Claims Bar Date* [Docket No. 2680].

2. As set forth in Article XIII.H of the Plan and the Extension Order, the automatic stay no longer remains in effect against the Debtors or the Non-Debtor Defendants. Except in such instances where third-party insurance proceeds are available, holders of Claims' rights to proceed

---

[1] A complete list of the Post-Restructuring Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Wellpath. The Post-Restructuring Debtors' service address for these chapter 11 cases is 3340 Perimeter Hill Drive, Nashville, Tennessee 37211.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Confirmation Order, the Extension Order, or the *First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of its Debtor Affiliates (with Technical Modifications)* (as modified, amended, or supplemented from time to time, the "Plan"), a copy of which is attached as Exhibit A to the Confirmation Order. The rules of interpretation set forth in Article I.B of the Plan shall apply hereto. For the avoidance of doubt, unless otherwise specified, all references herein to "Articles" refer to articles of the Plan.

1

against the Debtors are limited by the injunction resulting from the discharge outlined in paragraph 3 below as well as the injunction outlined in Article IX.F. of the Plan. To the extent holders of Claims did not or do not timely elect to opt out of the third-party releases contained in the Plan, the injunction outlined in Article IX.F applies to claims against Non-Debtor Defendants who meet the definition of "Released Parties" in the Plan.

3. As set forth in Article IX.A of the Plan, all Claims and Causes of Action of any nature whatsoever against the Debtors are discharged. The distributions, rights, and treatment that are provided in the Plan are in complete satisfaction of such Claims and Causes of Action.

4. Holders of personal injury tort and wrongful death Claims against the Debtors are subject to the Trust Distribution Procedures ("TDPs"), including the non-binding alternative dispute resolution process set forth therein to determine, if necessary, the allowed amount for their Claim. Such holders of personal injury tort and wrongful death claims may also seek determinations of the Debtors' liability by the appropriate civil court pursuant to 28 U.S.C. § 157(b)(5) with the Liquidating Trust as a nominal party (a) to the extent such inclusion is necessary to recover against available third-party insurance proceeds or an unreleased Non-Debtor Defendant, or (b) to establish or liquidate the amount of their claim for distribution under the Plan from the Liquidating Trust; *provided*, *however*, outside of the Pro Rata distribution from the Liquidating Trust as well as recovery from any applicable insurance plan, the Holders of such claims may not seek satisfaction of, and are permanently enjoined from seeking payment of, any judgment, award, settlement, claim, distribution, indemnification right, or any other payment amount resulting from their lawsuit from, or in connection with, the Debtors, the Debtors' estates, or the Post-Restructuring Debtors.

5. Holders of Claims or Interests that affirmatively elected to opt out of the Plan's Third-Party Release may bring or continue to pursue claims against all Non-Debtor Defendants, including employees of the Debtors and/or Post-Restructuring Debtors. Such holders of Claims and Interests remain enjoined from enforcing recovery from the Debtors, the Debtors' estates, or the Post-Restructuring Debtors with respect to any indemnification obligations for such employees; provided, that nothing shall prevent the Post-Restructuring Debtors from electing to honor such indemnification rights pursuant to the provisions of the Plan.

6. Pursuant to Article IX of the Plan, each Holder of a Claim or Interest that did not affirmatively elect to opt out of the Plan's Third-Party Release may not bring Claims that arose prior to the Petition Date (*i.e.*, before November 11, 2024) against the non-Debtor Released Parties (including, the Debtors' past and present directors, officers, and employees (to the extent that they were acting within the scope of their employment) and H.I.G. Capital, LLC and its affiliates, directors, officers, and employees); *provided*, pursuant to paragraph 43 of the Confirmation Order, each Holder of a Claim that is or was an incarcerated individual has until **11:59 p.m. (prevailing Central Time) on July 30 , 2025** (*i.e.*, 90 days after the Confirmation Date) to opt out from the Third-Party Release set forth in Article IX.D of the Plan. For the avoidance of doubt, the deadline has already passed for all other parties to opt out of the Third-Party Release.

7. Nothing in this Order shall prevent a party from requesting a hearing with this Court by contacting the Court's case manager by email at Tyler_Laws@txs.uscourts.gov or by phone at (713) 250-5421.

8. For the avoidance of doubt, cases filed before the Petition Date against the Professional Corporations, the Professional Corporations' current and former employees, and the

3

Debtors' customers and clients may now proceed because these parties were not released under the Plan and the automatic stay no longer remains in effect as to the Non-Debtor Defendants.

9.      No disposition or, or determination of any question of fact or law in the course of the disposition of, any claim against a non-Debtor or in any proceeding nominally against one or more Debtor but limited solely to such Debtor(s)' insurance coverage (collectively, a "Non-Bankruptcy Proceeding"), shall dispose of, constitute *res judicata* in respect of, estop the creditor from asserting any basis of allowance, estop the Liquidating Trust from asserting any basis of disallowance of, or in itself form all or part of the basis for excusable neglect for the failure to file, any Claim arising from the same or related alleged acts or omissions.

10.     To the extent any inconsistency may exist between paragraphs 3-6 of this Order and the Plan, the Plan shall govern in all respects.

Signed: June 04, 2025

Alfredo R Pérez
United States Bankruptcy Judge

4

# Exhibit C

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

January 26, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATED BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 24-90566** |
| **WELLPATH SF HOLDCO, LLC,** | § | |
| Debtors. | § | **Jointly Administered** |
| | § | **CHAPTER 11** |

**REVISED AND AMENDED CLARIFYING ORDER ENFORCING (A)
THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION OF WELLPATH HOLDINGS, INC. AND
CERTAIN OF ITS DEBTOR AFFILIATES, AND (B) THE
<u>TRUST DISTRIBUTION PROCEDURES</u>
<u>(Relates to ECF No. 690)</u>**

Upon the *Wellpath Liquidating Trust's Motion for Clarifying Order Enforcing (A) the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates and (B) the Trust Distribution Procedures (ECF No. 690)* (the "<u>Motion</u>")[1] of the Wellpath Liquidating Trust (the "<u>Trust</u>"), for entry of an order (this "<u>Order</u>") clarifying and enforcing process, status, and rights provided for under the Plan (Case No. 24-90533, ECF No. 2596) and Trust Distribution Procedures ("TDPs") (Case No. 24-90533, ECF No. 2679, pages 344 to 374); and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.); and this Court finding this to be a core proceeding pursuant to 28 U.S.C. § 157; and this Court having considered the Motion and having determined that the legal and factual basis set forth in the Motion establish just cause for the relief granted herein; and this Court having found that the relief requested in the Motion is in the best interest of parties in interest; and

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Motion.

after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.     In accordance with Article IV.J of the TDPs, Holders of General Unsecured Claims arising from alleged pre-petition personal injury tort or wrongful death may "proceed in the appropriate civil court and litigate such claim with the [Trust] included as a _nominal defendant_." (emphasis added).  As a nominal defendant, the Trust is not required to file answers, participate in discovery or hearings, or take an active role in any such litigation; _provided, however,_ that nothing herein or in the Plan or TDPs shall prevent the Trust from participating in any such case at the direction of the Trustee or engaging in settlement discussions for purposes of determining stipulated Allowed Claim Amounts at the discretion of the Trustee.

2.     The Plan does not permit any party to proceed against the Post-Restructuring Debtors or any Debtor, including but not limited to Wellpath LLC, in any capacity, including as a nominal defendant.[2] Pursuant to the Plan, the Court will permit parties to proceed with pre-petition claims (_i.e._, before November 11, 2024) against a Debtor only where such inclusion is necessary for the party to seek or maintain insurance coverage for their claim.  Any motion filed by a Holder of an Unsecured Claim seeking an order of this Court to proceed against a Debtor for purposes of pursuing insurance proceeds must provide sufficient evidence to this Court that (a) insurance coverage exists for such claims and (b) either (i) there is no applicable SIR or (ii) such claim will exceed the applicable SIR.

3.     To the extent a Holder of General Unsecured Claims arising from alleged personal injury tort or wrongful death has, as of the

---

[2] Nothing in this Order impacts or negates the Agreed Proposed Order this Court entered at ECF No. 238, regarding the Hirsch litigation in Hirsch v. Will County, et al., 19 CV 7398, currently pending in the Northern District of Illinois, Eastern Division, including the entry of judgment.

2 / 5

date of this Order, filed such claims against the Post-Restructuring Debtor or any Debtor, including but not limited to Wellpath LLC, and (a) no insurance coverage exists for such claims or (b) (i) there is an applicable SIR and (ii) such claim will not exceed the applicable SIR, that Holder must substitute the Liquidating Trust as a nominal defendant in place of the Post-Restructuring Debtor in that litigation. Substitution of the Trust as a nominal defendant is procedural only and shall not alter the relevance of the Debtor's conduct, policies, or actions, nor the scope of discovery reasonably necessary to liquidate a claim or determine liability or apportionment. The Trust may be substituted as a nominal defendant in any dispositive motion currently pending in any such litigation against the Post-Restructuring Debtor or any Debtor.

4.      To the extent a Holder of General Unsecured Claims attempts to pursue pre-petition claims against any Debtor, including but not limited to Wellpath LLC, or to pursue such claims against the Trust in any capacity other than proceeding against the Trust as a nominal defendant, all such attempts are contrary to the Plan and barred by the injunction as set forth in the Plan and/or the discharge injunction under Bankruptcy Code § 524(a)(2). *See* Plan, Case No. 24-90533, Docket No. 2596, Exhibit A, Article IX.F (page 134 of the PDF); 11 U.S.C. § 524(a)(2).

5.      A party that proceeds in violation of the Plan, which incorporates the TDPs, as clarified and enforced by this Order, shall be subject to the jurisdiction of this Court, and the Trust or the Post-Restructuring Debtors may seek any and all remedies available under the Bankruptcy Code against such a party for interference with the Plan including, but not limited to, monetary sanctions. To the extent any such monetary remedies are awarded, those amounts shall, to the extent not already paid, be otherwise debited from monies or property.

6.      To the extent a Holder of General Unsecured Claims obtains a judgment resulting from or relating to actions inconsistent

with the Plan, TDPs, or this Order, said judgment will not be considered in determining the Holder's Allowed Claim Amount.

7. Notwithstanding anything to the contrary in this Order, a court of appropriate jurisdiction may determine the responsibility of or liability of any Debtor if necessary for determining the liability of or judgment against any other person, provided that no Post-Restructuring Debtor shall be required to participate in any manner (other than through appropriate third-party discovery) in such litigation or be personally liable to the plaintiff on account of such determination of the Debtor's responsibility or liability. For the avoidance of doubt, the extent to which the Post-Restructuring Debtors or any Debtor need not participate in any such litigation, as described in this Order, does not affect the Post-Restructuring Debtors' or any Debtors' obligation to otherwise comply with subpoenas, requests for production of documents or ESI, depositions including those under Fed. R. Civ. P. 30(b)(6), identification of custodians or witnesses, or other discovery pursuant to Fed. R. Civ. P. 45 and its state equivalents reasonably necessary to determine responsibility, liability, or apportionment.

8. This Court remains the sole forum, subject only to appeals, to which the party may be entitled, for the resolution of disputes concerning General Unsecured Claims which do not arise from alleged bodily injury or wrongful death.

9. For the avoidance of doubt, nothing in this Order or the Plan imposes any restrictions upon a party's right or ability to seek third-party discovery from any person or entity, including, but not limited to, the Post-Restructuring Debtors, pursuant to Fed. R. Civ. P. 45 and its state equivalents. The removal or substitution of Wellpath as a party defendant shall not, by itself, be a basis to stay, deny, or limit third-party discovery.

10. Nothing in this Order impacts, alters, amends or otherwise modifies any insurance policies issued to or covering the Debtors, nor

4 / 5

any treatment of such policies contained in the Plan or the Confirmation Order.

11. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12. The Trust is authorized to take all necessary and appropriate action to further and effectuate relief granted pursuant to this Order and in accordance with the Motion.

13. The Court retains jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order, and exclusive jurisdiction with respect to any relief from the injunctions set forth in the Plan.

SIGNED 01/25/2026

Alfredo R Pérez
United States Bankruptcy Judge